UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| LAWRENCE P. ORGAN | ) |
| Plaintiff, | ) |
| vs. | ) No. 05 C 2317 |
| MARC BYRON, BEN KAAK, and CATHERINE BARBARO | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

The Plaintiff's complaint is defective and must be dismissed for improper venue because he failed to bring it in Delaware – as he is required to do by contract. It is well-settled that, absent extraordinary circumstances, contractual forum selection clauses "are *prima facie* valid and should be enforced." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972). Here, the Plaintiff, a sophisticated businessman represented by counsel and financial advisers, executed a Merger Agreement providing that all "[l]egal proceedings relating to that Agreement" may be commenced "*only* in the state or federal courts in Delaware," and that Delaware would have "exclusive jurisdiction" over such claims. Notwithstanding this clear and unambiguous contractual mandate, Plaintiff has asked this Court to adjudicate a dispute "relating to" the merger and Merger Agreement – which repeatedly is referenced in and is central to the complaint – while ignoring the Merger Agreement's binding provision vesting in Delaware exclusive jurisdiction over this and similar disputes. Accordingly, as a matter of contract and settled law, venue for this matter rests exclusively in Delaware and the case must be dismissed under Fed. R. Civ. P. 12(b)(3). *See Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-607

(7th Cir. 2003) ("A lack of venue challenge, based upon a forum selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss").

## I. BACKGROUND FACTS

Plaintiff Lawrence Organ was the Chief Executive Officer and a majority interest owner of Custom Offers LLC ("Custom Offers"), a limited liability company engaged in interstate commerce. (Complaint, ¶ 2). Beginning in November 2001, Custom Offers engaged in merger discussions with Mosaic Group, Inc. ("Mosaic"), a corporation organized under the laws of the Province of Ontario, Canada. *Id.* at ¶¶ 3, 4, 17-20, 24-28. In connection with these discussions, the Plaintiff and the Defendants, directors and/or officers of Mosaic, were represented by counsel. *Id.* at ¶¶ 5-7, 17-20. On January 21, 2002, after a series of negotiations and discussions between the parties and their respective counsel and financial advisers, the parties entered into a comprehensive Merger Agreement under which Organ and the other Custom Offers interest holders exchanged their Custom Offers shares for shares of Mosaic. *Id.* at ¶¶ 3, 17-20, 24-28, 36; (A copy of the Merger Agreement is attached as Exhibit A to the Defendants' Motion to Dismiss).[1] In accordance with the Merger Agreement, two Delaware corporations were established to effectuate the merger, and the merger was conducted pursuant to Delaware law. Merger Agreement, p. 1, 59.

The Merger Agreement, signed by Organ individually and in his capacity as CEO of Custom Offers, contains a binding forum selection clause. (Merger Agreement, p. 59). Specifically, Article XII, Section 12.2 of the Merger Agreement states:

---

[1] "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the Plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v Assoc Ins Cos Inc*, 29 F.3d 1244, 1248 (7th Cir. 1994). *See also Chambers v Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (court may consider document on motion to dismiss that is referred to or is integral in allegations of the complaint); *Shulman v CRS Fin Servs, Inc.*, 2003 WL 22400211, at *1 (N.D. Ill. Oct. 21, 2003) (considering contracts referred to in complaint in deciding Rule 12(b)(3) motion to dismiss).

-2-

all aspects of this Agreement will be governed by the internal laws of the State of Delaware. *Legal proceedings relating to this Agreement*, the agreements executed in connection with this Agreement *or the transactions contemplated hereby or thereby may be commenced only in the State or Federal courts in Delaware. Each of the parties hereby consents to the exclusive jurisdiction of such courts* (and of the appropriate appellate courts) *in any such action and waives any objection to venue laid therein*. (Emphasis added.)

In addition, Section 12.1 of the Merger Agreement contains an integration clause, providing that the Agreement "supercedes all prior agreements, negotiations, correspondence, undertakings and communications of the parties, whether oral or written, respecting that subject matter." *Id.*

Over three years after the signing the Merger Agreement and agreeing to bring any proceedings related to the merger in Delaware, Organ filed this suit against the within named Mosaic officers and/or directors seeking rescission of the Merger Agreement and money damages resulting from the merger. Specifically, Organ maintains that the Defendants engaged in a course of conduct with regard to the merger that was "deceptive and created a misleading picture of Mosaic's business condition and financial performance." Complaint, at ¶¶ 21, 24-28. Organ further maintains that he relied on the Defendants' allegedly false representations in agreeing to execute the Merger Agreement and sell his Custom Offers' ownership interest to Mosaic. *Id.* at ¶¶ 21-52. As a result of this alleged reliance, Organ maintains that he would not have proceeded with the merger and signed the Merger Agreement had any of the Defendants disclosed certain facts of which he was allegedly unaware at the time of the merger transaction.[2] *Id.* at ¶ 48.

---

[2] Although it is irrelevant to the present motion, the Defendants deny that they made any misrepresentations to the Plaintiff or omitted any material facts. To the contrary, each and every alleged "omission" cited by the Plaintiff was discussed with him in detail prior to his execution of the Merger Agreement. In addition, numerous publicly available documents reflect that the allegedly omitted information was known to the Plaintiff and his counsel. Mr. Organ's baseless allegations aside, he has not alleged, because he cannot, that the forum selection clause was not reviewed and understood by him and his legal and financial advisers at the time he executed the Merger Agreement, or that there is any basis whatsoever to proceed anywhere other than Delaware.

- 3 -

## II.   ARGUMENT

"The enforceability of forum selection clauses in international agreements is governed by the Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)." *Bonny v. Society of Lloyds*, 3 F.3d 156, 159 (7th Cir. 1993). Under *Bremen*, such clauses are *prima facie* valid and may be overturned only under very limited circumstances not present here. *Id.* As reasoned by the Supreme Court:

> the expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.... We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.

*Bremen*, 407 U.S. at 9. Indeed, "the elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an *indispensable* element in international trade, commerce, and contracting." *Id.* at 13-14 (emphasis added). This is especially true where – as here – the parties to the transaction are undeniably sophisticated and represented by counsel. *See Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (a sophisticated party "who agrees to terms in writing without understanding or investigating those terms does so at his own peril"); *Meridian Rail Prods. Corp. v. Ronsco*, No. 03 C 1930, 2003 WL 21466955, at *1 (N.D. Ill. June 25, 2003) ("Forum selection clauses in commercial contracts between sophisticated businesses are ordinarily honored in accordance with their terms").

By executing the Merger Agreement, the Plaintiff clearly agreed to resolve any disputes relating to the merger or the Merger Agreement *only* and *exclusively* in the state or federal courts in Delaware.[3] The parties' agreement to place venue in Delaware for any future disputes relating

---

[3] The terms "only" and "exclusive" contained in the forum selection clause in Section 12.2 of the Merger Agreement clearly indicate that this clause is mandatory and not permissive. *See, e.g., Torres v. Wellness International Network, Ltd*, 2004 WL 3119021, at *2 (N.D. Ill. Dec. 2, 2004) (term "only" contained in forum selection clause rendered clause mandatory); *Baosteel America, Inc. v. M/V Ocean Lord*, 257 F.Supp.2d 687, 689 (S.D.N.Y. 2003) (noting that use of the terms "only" and "exclusive" create a mandatory forum selection clause); *Bentley v. Mutual*

-4-

to the merger agreement was entirely reasonable, given that the merger and Merger Agreement were governed by Delaware law, and two of the corporate entities established to effectuate the merger were formed under and operated pursuant to Delaware law. Accordingly, Plaintiff cannot meet the heavy burden required to overturn an otherwise valid forum selection clause negotiated at arms length by sophisticated parties represented by counsel. *See Bonny*, 3 F.3d at 160 (plaintiffs failed to meet burden of demonstrating that choice of the United Kingdom was so inconvenient that it would deprive the party of its day in court); *Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336, 1338 (9th Cir. 1998) (plaintiff failed to meet "heavy burden of proof" that selection of Korea was unreasonable); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (party could not meet "heavy burden" where he could not show that Mexico was so difficult and inconvenient that he would effectively be denied a meaningful day in court). Certainly, if courts routinely uphold forum selections clauses designating foreign jurisdictions such as England, Korea and Mexico, the parties' mutual decision to resolve their disputes in Delaware is entirely reasonable and should be enforced. *E.g., Sarmiento v. BMG Entertainment*, 326 F.Supp.2d 1108, 1110-11 (C.D. Cal. 2003) (finding that New York was not inconvenient).

Underscoring the presumptive validity of freely negotiated contractual forum selection provisions, the Seventh Circuit has routinely rejected challenges to forum selection clauses based on allegations of "fraud" or "fraudulent inducement." In *American Patriot Ins. Agency, Inc. v. Mutual Risk Mgt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004), for example, Judge Posner stated: "As for the fact that the defendants are charged with fraud rather than breach of contract, this can get the plaintiff nowhere in its efforts to get out from under the forum selection clause." Specifically, the Court held that an allegation of fraud or fraudulent inducement "does not make

---

*Benefits Corp*, 237 F.Supp.2d 699, 701 n.5 (S.D. Miss. 2002) (use of the term "only" in forum selection clause was mandatory).

-5-

the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the dispute than the one they had selected to resolve their contractual disputes." *Id.* *See also Penn, LLC v. New Edge Network, Inc.*, 2003 WL 22284207, at *3 (N.D. Ill. Oct. 3, 2003) (holding that fraud claims were subject to contractual forum selection clause).[4]

Similarly, courts have posited a broad and strong presumption in favor of enforcing forum selection clauses, rejecting attempts by plaintiffs to artfully plead around the forum to which they contractually agreed. *See American Patriot Ins.*, 364 F.3d at 889 ("And as for the plaintiff's argument that the word 'concerning' in the Shareholder Agreement's forum selection clause is narrower than the more common term 'arising out of,' this is semantic quibbling") (citing *Robey v. Corporation of Lloyd's*, 996 F.2d 1353, 1360-61 (2d Cir. 1993)); *Shulman v. CRS Fin. Servs., Inc.*, 2003 WL 22400211, at *2 (N.D. Ill. Oct. 21, 2003) (rejecting plaintiff's argument that tort claims fell outside of forum selection clause); *Sompo Japan Ins. Inc. v. Alarm Detection Sys., Inc.*, 2003 WL 21877615 (N.D. Ill. Aug. 6, 2003) (rejecting argument that tort and consumer fraud claims were not subject to forum selection clause).

In his complaint, the Plaintiff again ignores the terms of his own Merger Agreement, and alleges that the defendants failed to disclose certain material facts regarding Mosaic's business

---

[4] Echoing the Seventh Circuit's reasoning in *American Patriot Ins.*, courts have uniformly held that a plaintiff may not invalidate a forum selection clause by arguing that the underlying agreement was procured through fraud. Rather, the plaintiff must demonstrate that the alleged fraud relates specifically to the forum selection clause. *See, e.g., Marrone v. Meecorp Capital Markets, LLC*, 2004 WL 2677175, at *3 (E.D. Pa. Nov. 19, 2004) (plaintiff cannot contest the validity of the forum selection clause by questioning the enforceability of the entire contract but must show the clause itself was the product of fraud and coercion); *Liafail, Inc. v. Learning 2000, Inc.*, 2001 WL 1555308, at *2 (W.D. Ky. Aug. 29, 2001) (notwithstanding claims of fraud generally, forum selection clauses routinely upheld); *Marra v. Papandreou*, 59 F.Supp.2d 65, 70 n.3 (D.D.C. 1999) (even if allegation that underlying contract was product of fraud, "that would not show that the forum selection clause specifically was the product of fraud"); *J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, 37 F Supp 2d 186, 191 (E.D.N.Y. 1998) (fraud in inducement of agreement is insufficient to defeat forum selection clause); *Stamm v. Barclays Bank of New York*, 960 F. Supp 724, 729 (S.D.N.Y. 1997) (claim of fraud in the inducement of entire contract is insufficient to invalidate forum selection clause found in the contract).

and financial condition prior to the closing of the merger and execution of the Merger Agreement. The Merger Agreement, however, specifically provides in Article XII, Section 12.1 that it *supercedes* all prior communications among the parties, including the communications alleged in the Plaintiff's complaint. In addition, Article V of the Merger Agreement provides for the specific representations and warranties given by Mosaic to the Plaintiff. Thus, the Merger Agreement is central to the claims and defenses in this case. *See Penn, LLC*, 2003 WL 22284207, at *2 (N.D. Ill. Oct. 3, 2003) ("if enforcement of a provision in the [agreement] is clearly a defense to a claim, that claim involves a right or remedy under the contract and should fall within the scope of the forum selection clause") (citing *Omron Healthcare, Inc. v. Maclaran Exps., Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994) (holding that agreements should be read broadly when determining scope of forum selection clauses).[5]

Because the forum selection clause in the Merger Agreement was freely negotiated by sophisticated parties at arms length, and because the claims asserted by the Plaintiff clearly relate to and are inextricably intertwined with the merger and the Merger Agreement, venue does not lie in this district and the case should be dismissed under Fed. R. Civ. P. 12(b)(3).[6]

---

[5] Similarly, a plaintiff cannot avoid the reach of a valid forum selection clause by naming only employees of the corporation, rather than the corporation itself. *See American Patriot Ins.*, 364 F.3d at 889 ("Nor is a forum selection clause to be defeated by suing an affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates") (citing *Frietsch v. Refco, Inc.*, 56 F.3d 825, 827-28 (7th Cir. 1995) (forum selection clauses enforceable in favor of non-parties that are closely related to a signatory)). *See also Monarch Gems v. Malca-Amit USA, LLC*, 2005 WL 1206426 (N.D. Ill. May 4, 2005) (plaintiff cannot avoid forum selection clause by suing an affiliate); *Fasti USA v. Fasti Farrag & Stipsits GMBH*, 2003 WL 1581472, at *2 (Mar. 26, 2003) (same). Here, each of the defendants were employees of Mosaic at the time of the merger, and defendant Ben Kaak personally signed the Merger Agreement.

[6] In *Continental Ins. Co. v. M/V Orsula*, the Seventh Circuit affirmed this Court's dismissal of the plaintiffs' claims pursuant to Rule 12(b)(3). In deciding to dismiss the case rather than transfer the case under 28 U.S.C. § 1406(a), this Court reasoned that "in a case in which all parties are commercially sophisticated and familiar with the forms of litigation in which they engage," a transfer in the interests of justice is not justified when "[t]here is nothing obscure" about the proper forum. 354 F.3d at 608 (quoting this Court's opinion). Affirming, the Seventh Circuit held that "Dismissal was proper; filing in the Northern District of Illinois was an obvious mistake made by a sophisticated party with representation." *Id.* This case is no different, warranting dismissal rather then transfer. *See also Greater New York Automobile Dealers Assn v. Environmental Systems Testing, Inc.*, 211 F.R.D. 71, 86 (E.D.N.Y. 2002) (dismissing rather than transferring case).

## IV. CONCLUSION

For all of the foregoing reasons, the Defendants respectfully request that this Court dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

                Respectfully submitted,

                SEYFARTH SHAW LLP

                Robert B. Lovett
                Christopher F. Robertson
                SEYFARTH SHAW LLP
                World Trade Center East
                Two Seaport Lane, Suite 300
                Boston, MA 02210-2028
                Telephone: (617) 946-4800
                Facsimile: (617) 946-4801

J. Scott Humphrey
SEYFARTH SHAW LLP
55 East Monroe Street
Suite 4200
Chicago, Illinois 60603
Telephone: (312) 346-8000
Facsimile: (312) 346-8869

- 8 -