# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LAWRENCE P. ORGAN         )

            Plaintiff,         )

            vs.                 )     No. 05 C 2317

                               )

MARC BYRON, BEN KAAK, and   )     Judge James B. Zagel

CATHERINE BARBARO        )

                               )

         Defendants.      )

## NOTICE OF FILING

To:    Jack L. Haan
        James J. Eccleston
        Henry N. Novoselsky
        20 North Wacker Drive – Suite 2900
        Chicago, IL 60606

      PLEASE TAKE NOTICE that on August 23, 2005, we filed Defendants' Reply Brief in Support of Their Motion to Dismiss in the United States District Court, Northern District of Illinois, Eastern Division, copies of which are attached and hereby served upon you.

                         MARC BYRON, BEN KAAK, and
                         CATHERINE BARBARO

              By:                                
                                   One of Their Attorneys

J. Scott Humphrey
SEYFARTH SHAW LLP
55 East Monroe Street, Suite 4200
Chicago, Illinois 60603
(312) 346-8000

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

J.N FILED
AUG 23 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| LAWRENCE P. ORGAN | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 05 C 2317 |
| MARC BYRON, BEN KAAK, and CATHERINE BARBARO | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants, MARC BYRON, BEN KAAK, and CATHERINE BARBARO ("Defendants") by and through their attorneys, Robert B. Lovett, Christopher F. Robertson, and J. Scott Humphrey of Seyfarth Shaw, LLP, hereby state as follows for their Reply Brief in Support of Their Motion to Dismiss:

## PRELIMINARY STATEMENT

Ignoring controlling Seventh Circuit authority, Plaintiff advances a myriad of inapposite arguments in an effort to avoid dismissal for improper venue. In succession, Plaintiff argues that he can avoid the forum selection clause in the Merger Agreement because the chosen Defendants are non-signatories, the claims are non-contractual, and there is non-mutuality of obligation among the parties. As the Seventh Circuit held in rejecting these exact same arguments in *American Patriot Insurance Agency v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004) (Posner, J.):

> These are really the same argument, and amount to saying that a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal

theories to press, and of defendants to name in the suit. If this were true, such
clauses would be empty. It is not true.

Plaintiff makes no attempt to distinguish this controlling authority because he cannot do so. It is

undisputed that he signed an agreement providing that all disputes relating to the merger and

Merger Agreement could be brought only in Delaware. Under settled principles of equitable

estoppel, Plaintiff cannot avoid this clear obligation through artful pleading.

Plaintiff's arguments regarding the signatory status of Defendants,[1] or some claimed lack

of mutuality of obligation are of no avail. It is well-settled that officers and directors of

corporations acting in their official capacities are "closely related" to the corporation for

purposes of enforcing a forum-selection provision executed by the corporation. While it might

be true that an wholly unrelated cause of action brought against one of these Defendants in their

individual or personal capacities might avoid the reach of the forum selection provision in the

Merger Agreement, that is simply not the case here. Rather, all of the conduct alleged against

these Defendants occurred solely in their respective capacities as officers of Mosaic and relates

entirely to the merger and Merger Agreement. As such, the forum for these claims resides

exclusively in Delaware.

There is nothing obscure about the proper forum in this case, nor is there any question

that controlling Seventh Circuit authority eviscerates each and every one of Plaintiff's arguments

to the contrary. Plaintiff is a sophisticated businessperson who was represented by counsel in

connection with the merger and the present litigation. Plaintiff executed the Merger Agreement

knowing that it contained a forum selection clause requiring him to resolve disputes related to

---

[1] Although plaintiff ignores this fact as well, defendant Ben Kaak is a signatory of the Merger Agreement, having executed the agreement on behalf of Mosaic as the company's Chief Financial Officer.

2

the merger exclusively in Delaware. As such, this action should be dismissed for improper

venue.

## **ARGUMENT**

**I.    Plaintiff Is Equitably Estopped From Avoiding
        The Forum Selection Clause In the Merger Agreement**

In *American Patriot*, Judge Posner made clear that a forum selection clause cannot "be

defeated by suing an affiliate or affiliates of the party to the contract in which the clause appears,

or employees of the affiliates." 364 F.3d at 889. Nonetheless, Plaintiff argues that the non-

signatory status of Defendants in this case somehow provides an exception to this rule. Plaintiff

is wrong. Under principles of equitable estoppel, Plaintiff – who did sign the Merger

Agreement and agreed to litigate all claims related to the merger exclusively in Delaware –

cannot avoid that obligation by suing non-signatory officers and directors of the corporation as

opposed to the corporation itself.[2] *Id. See Freitsch v. Refco*, 56 F.3d 825, 827 (7th Cir. 1995)

("courts in this country enforce forum selection clauses in favor of non-parties 'closely-related'

to a signatory"); *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993) (finding

that non-signatory officer of corporation was "closely-related" for purposes of enforcement of

forum selection clause against signatory).

Whether cast as a lack of "standing," "mutuality," or otherwise, Plaintiff's argument fails

to recognize that he – as a signatory to the Merger Agreement – is suing the individual officers of

---

[2] This critical distinction between a non-signatory seeking to *avoid* a forum-selection clause, as opposed to seeking to *enforce* the clause, was highlighted in *Sparks Tune-Up Centers, Inc. v. Strong*, 1994 WL 188211 (N.D. Ill. May 12, 1994), cited by Plaintiff. In that case, the court recognized that "a common factor in the cases [upholding the forum selection clause] was that the nonparty actually sought, rather than resisted, application of the forum selection clause." *Id.*, at *5. Attempting to turn this distinction on its head, Plaintiff argues that the inability of a signatory to compel a non-signatory to litigate in a particular forum should apply equally in favor of the signatory under some concept of "mutuality." This argument ignores the principal of equitable estoppel, which provides that the signatory – in this case Plaintiff – may *not* avoid his bargained-for obligation through artful pleading or sophistry. *American Patriot*, 364 F.3d at 888 (plaintiff cannot avoid forum selection clause by naming non-signatory defendants closely related to signatory).

3

Mosaic solely for acts allegedly undertaken in their official corporate capacities in connection with a corporate transaction. In *McCarthy v. Azure*, 22 F.3d 351, 359 (1st Cir. 1994), for example, upon which Plaintiff relies, the First Circuit specifically recognized that the distinction between a corporate officer acting in his or her personal or individual capacity, as opposed to representative or official capacity, possessed "decretory significance." *See also Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3d Cir. 1993)(non-signatory corporate officer being sued for acts undertaken in official capacity may enforce forum selection clause); *Tague v. Hurd*, 2005 WL 1563350, at *2 (E.D. Pa. June 30, 2005) (enforcing forum selection clause on behalf of non-signatory corporate officers, where all of the claims "arise from the defendants' conduct during the negotiations and the sale of the plaintiff's interest in MES, formalized by the Agreement"); *Paramedics Electromedicina Comercial LTDA v. GE Medical Systems Information Techs., Inc.*, 2003 WL 23641529, at *10 (S.D.N.Y. June 4, 2003)(recognizing for purposes of enforcement of forum selection clauses that non-signatory corporate officers acting in their official capacities are "closely-related" to the corporate signatory).[3]

Here, there is no dispute that each of the individual Defendants is being sued for actions taken in their official capacities as officers of Mosaic. Moreover, Plaintiff's claims all relate to the conduct of these Defendants in connection with the merger negotiations that resulted in the execution of the Merger Agreement by Plaintiff.[4] Thus, Plaintiff's argument that the non-

---

[3] *See also Hirschfeld Productions, Inc. v. Mirvish*, 673 N.E.2d 1232 (N.Y. 1996) (noting that federal courts have consistently afforded agents the benefit of forum selection provisions entered into by their principals "to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation").

[4] *See also Alternative Delivery Solutions, Inc. v. R.R. Donnelly & Sons Co.*, 2005 WL 1862631, at *15 (W.D. Tex. July 8, 2005)(holding that non-signatory may enforce forum selection clause where defendant was closely related to signatory and claims were dependent upon underlying agreement).

signatory status of these Defendants somehow divests them of "standing" or "mutuality" ignores

the settled caselaw of the Seventh Circuit holding that the only relevant inquiry concerning

enforcement of the forum selection clause is whether the non-signatories are "closely-related" to

the signatory.[5] *Hugel*, 999 F.2d at 209. Without question, corporate officers acting in their

official capacities are "closely-related" to the corporation. *See, e.g., Marano Enters. v. Z-Teca

Restaurants, L.P.*, 254 F.3d 753, 757 (8th Cir. 2001)(officer and director of corporation is

"without question" closely related to the disputes arising out of the agreements); *Nanopierce

Techs., Inc. v. Southridge Capital Mgmt LLC*, 2003 WL 22882137, at *6 (S.D.N.Y. Dec. 4,

2003)(chief financial officer was "closely related" to corporation that signed agreement), citing

*Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993).[6]

## II.    The Present Dispute Falls Within The Forum Selection Clause

Plaintiff's final argument for avoiding the forum selection clause in the Merger

Agreement is the assertion that Plaintiff's claims do not fall within the scope of the clause.

Plaintiff argues that because he has brought a claim under the Illinois Securities Law – alleging

that Defendants fraudulently induced him to enter into the merger transaction – this claim

somehow is sufficiently removed from the Merger Agreement to avoid the forum selection

clause. Once again, Plaintiff's argument was squarely addressed and rejected by Judge Posner in

*American Patriot*:

---

[5] In support of his argument that a lack of mutuality should defeat enforcement of the forum selection clause, Plaintiff cites *Frietsch v. Refko, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995) and *Lamson v. LFG*, 2000 WL 33539382 (N.D. Ill. June 22, 2000). In both of these cases, however, the courts *enforced* the forum selection clause, finding that a closely related non-signatory could enforce the clause against a signatory plaintiff. The same conclusion is warranted here.

[6] As these cases make clear, characterizing the contract as a "service" contract is entirely irrelevant. *See, e.g., Nanopierce Techs.*, 2003 WL 22882137, at **1, 6 (applying "closely related" analysis to stock purchase agreement and claims brought under state securities laws); *see also Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) ("a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses"), citing *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984).

5

> As for the fact that the defendants are charged with fraud rather than breach of contract, this can get the plaintiff nowhere in its efforts to get out from under the forum-selection clause. Not only does the clause refer to disputes concerning the contractual relationship between the parties, however those disputes are characterized. More important, a dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance.

364 F.3d at 889, citing *Sphere Drake Ins. Ltd. v. All American Ins. Co.*, 256 F.3d 587, 590 (7th Cir. 2001). *See also Tague v. Hurd*, 2005 WL 1563350, at *2 (where contract provided that disputes "relating to" the agreement would be subject to forum selection clause, allegations concerning defendants' "conduct during the negotiations and sale of the plaintiff's interest" in the company fell within scope of agreement); *Nanopierce Techs.*, 2003 WL 22882137, at *6 (where securities claim was integrally related to the allegations that individual defendant fraudulently induced plaintiff to enter a Purchase Agreement, securities claim fell within scope of forum selection provision).

Further undermining Plaintiff's argument that he can avoid the forum selection clause in the Merger Agreement by alleging violations of Illinois statutory law, the Seventh Circuit in *Hugel* stated unequivocally that "[i]t defies reason to suggest that a plaintiff may circumvent forum selection merely by stating claims under laws not recognized by the forum selected in the agreement." 999 F.2d at 211. Adopting the Second Circuit's reasoning in *Roby*, the Seventh Circuit "refuse[d] to allow a party's solemn promise to be defeated by artful pleading," and held that an agreement to submit disputes to another forum must be enforced "even if that agreement tacitly includes the forfeiture of some claims that could have been brought in a different forum." *Hugel*, 999 F.2d at 211, quoting *Roby*, 996 F.2d at 1363. *See Bowmont Corp. v. Krombacher Brauerei Bernhard GMBH & Co.*, 2003 WL 22205615, at *4 (D. Conn. Sept. 8, 2003) (rejecting argument that assertion of Connecticut statutory and common-law claims could overcome forum selection clause designating out-of-state forum); *Europe & Overseas Commodities Traders, S.A.*

6

*v. Banque Paribas London*, 940 F. Supp. 528, 539 (S.D.N.Y. 1996)(rejecting argument that assertion of United States securities claims defeated English forum selection clause).

Finally, Plaintiff admits in his opposition that the existence of claims or defenses that would necessarily implicate an interpretation of the Merger Agreement require application of the forum selection clause in the Agreement, regardless of the theory of liability asserted by Plaintiff. *See* Plaintiff's Opp. Brief, at 6, citing *Manetti-Farrow, Inc.*, 858 F.2d at 514. Here, there is no question that resolution of the claims and defenses in this case centrally involves and requires interpretation of the Merger Agreement. *See Penn, LLC v. New Edge Network, Inc.*, 2003 WL 22284207, at *2 (N.D. Ill. Oct. 3, 2203) (where reference to the agreement is required in connection with both the claims asserted and the defenses thereto, the claims are subject to the forum selection provision in the agreement), citing *Omron Healthcare v. Maclaren Exps., Ltd.*, 28 F.3d 600, 603 (7ᵗʰ Cir. 1994).

In short, none of the arguments advanced by Plaintiff to avoid the forum selection clause in the Merger Agreement can survive scrutiny under controlling Seventh Circuit authority. As such, the Complaint must be dismissed for improper venue.[7] *See Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 608 (7th Cir. 2003) (affirming dismissal of case for improper venue where there was nothing "obscure" about the proper forum in which to bring the claims); *Vladoff v.*

---

[7] Contrary to the representations in his Opposition Brief, Plaintiff has engaged in forum shopping in this matter. Although not disclosed to the Court, he originally brought an action in Canada alleging virtually identical claims in connection with the merger and Merger Agreement. After these claims were shown to be defective under Canadian law, the claims were withdrawn. Only then did he file the present action in this Court, in contravention of the clear choice of forum provision in the Merger Agreement. This Court should disregard any argument by Plaintiff, a sophisticated businessman represented by teams of lawyers in the subject transaction and in this case, that he has not blatantly disregarded his prior agreement to litigate these claims exclusively in Delaware. Unlike the cases cited by Plaintiff, his choice of Illinois was an "obvious mistake" and quite possibly was made in bad faith to harass these defendants, who have already been named once as defendants in Canada, and now again here. *M/V Orsula*, 354 F.3d at 608. Moreover, despite arguing that a transfer might be appropriate, Plaintiff has made no such cross-motion, nor is such relief requested in the conclusion to his Opposition Brief. *See, e.g., Hunter Distributing Co., Inc. v. Pure Beverage Partners*, 820 F. Supp. 284 (N.D. Miss. 1993) (because "no motion to transfer has been made and because the court is of the opinion that the forum selection clause should be enforced, this case is hereby dismissed without prejudice rather than transferred").

7

*Chaplin*, 2005 WL 1651172, at *2 (N.D. Ill. July 1, 2005) (when error in laying venue is obvious, dismissal is appropriate).[8]

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

Respectfully submitted,

SEYFARTH SHAW LLP

J. Scott Humphrey
SEYFARTH SHAW LLP
55 East Monroe Street
Suite 4200
Chicago, Illinois 60603
Telephone: (312) 346-8000
Facsimile: (312)346-8869

and

Robert B. Lovett
Christopher F. Robertson
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

---

[8] In *Greater New York Automobile Dealers Ass'n v. Environmental Systems Testing, Inc.*, 211 F.R.D. 71 (E.D.N.Y. 2002), cited by Plaintiff, the court enforced a forum selection clause and dismissed the action. In deciding to dismiss the case rather than transfer it, the court noted that the forum selection clause did not specify whether the action was to be brought in state or federal court. Because the relevant forum selection clauses left the plaintiff "with the choice of filing in either the state or federal courts of the respective states," the Court found that dismissal of the claims "properly preserves the plaintiff's decision regarding in which court to re-file." *Id.* at 86. The same is true here. The forum selection clause in the Merger Agreement provides that Plaintiff may bring his claim in either "the State or Federal Courts in Delaware." Merger Agreement, Article XII, Section 12.2. Thus, under the same reasoning as in *Greater New York Automobile Dealers Ass'n*, dismissal is warranted.

8

EXHIBIT A

# Westlaw.

Slip Copy                                                    Page 1
Slip Copy, 2005 WL 1563350 (E.D.Pa.)
**(Cite as: 2005 WL 1563350 (E.D.Pa.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Michael TAGUE, Plaintiff
v.
Jane HURD and Stephen Biale, Defendants
**No. Civ.A.04-5958.**

June 30, 2005.

Andrew K. Stutzman, Stradley Ronon Stevens &
Young LLP, Philadelphia, PA, for Plaintiff.

Everett W. Jack, Jr., Scott E. Warnick, Davis Wright
Tremaine LLP, Portland, OR, Thomas J. McGarrigle,
Philadelphia, PA, for Defendants.

*MEMORANDUM OPINION AND ORDER*

RUFE, J.

*1 Plaintiff Michael Tague brought this diversity
action for damages arising out of the sale of his one-
third interest in Medical Education Solutions, LLC
("MES") to Defendants Jane Hurd and Stephen Biale,
the other two partners in MES. The Complaint
alleges that Defendants pressured Plaintiff to sell his
share in MES and misrepresented MES' value by,
among other things, failing to disclose their
negotiations to sell MES to Grey Healthcare Group.
Defendants' fraudulent misrepresentations allegedly
induced Plaintiff to enter into the sale. Shortly after
Plaintiff sold his interest in MES to Defendants, Grey
Healthcare Group acquired MES for a cash payment
that greatly exceeded the value Defendants placed on
MES during their negotiations with Plaintiff.

Presently pending before the Court are Defendants'
Motion to Dismiss or in the Alternative to Stay the
Proceedings Pending Arbitration Pursuant to the
Federal Arbitration Act ("FAA") [FN1] and
Defendants' Motion to Strike. Defendants argue that
this dispute is subject to arbitration pursuant to the
Redemption Agreement between Tague and MES
members (the "Agreement"), signed by the parties in
connection with the sale of Tague's interest in MES.
The Agreement contains a Dispute Resolution clause,

providing for binding arbitration of "any dispute
relating to this Agreement" in New York, New York.

> FN1. 9 U.S.C. § § 1-16.

Federal law applies to Defendants' Motions. [FN2]
"[W]hether the parties have submitted a particular
dispute to arbitration, i.e., the *question of
arbitrability,* is an issue for judicial determination
unless the parties clearly and unmistakably provide
otherwise. This approach is guided by a 'presumption
of arbitrability,' and a motion to compel arbitration
should not be denied unless it may be said with
positive assurance that the arbitration clause is not
susceptible of an interpretation that covers the
asserted dispute. The district court is to determine
what is most consistent with the parties' intentions."
[FN3]

> FN2. *Pritzker v. Merrill, Lynch, Pierce,
> Fenner & Smith, Inc.,* 7 F.3d 1110, 1114 (3d
> Cir.1993) (applying federal law to a motion
> to compel arbitration under the FAA).

> FN3. *Glah v. Mass. Mut. Life Ins. Co.,* No.
> Civ. A. 03-2407, 2003 WL 22872037, at *2
> (E.D.Pa. Dec.3, 2000) (internal citations
> omitted).

Defendants argue that the broad language of the
Agreement's arbitration clause covers Plaintiff's
claims against them because the claims are directly
tied to the negotiation and sale of his interest in MES,
i.e. the matters covered by the Agreement.
Defendants believe they have standing to enforce the
arbitration provision compelling Plaintiff to arbitrate,
even though MES, and not Defendants, is the
signatory to the Agreement. Relying on the Third
Circuit decision in *Pritzker,* Defendants argue that
they may compel arbitration of the Agreement
because they are agents of MES.

In *Pritzker,* the Third Circuit enunciated a broad
"agency" rule, stating that where "a principal is
bound under the terms of a valid arbitration clause,
its agents, employees, and representatives are also
covered under [its] terms.... Where the parties to [a
valid arbitration] clause unmistakably intend to
arbitrate all controversies which might arise between
them, their agreement should be applied to claims
against agents or entities related to signatories."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1563350 (E.D.Pa.)
(Cite as: 2005 WL 1563350 (E.D.Pa.))

[FN4] "In keeping with the federal policy favoring arbitration," the plaintiffs were required to arbitrate their claims against all of the defendants pursuant to their agreement with the defendant principal, extending enforcement of the arbitration clause to a non-signatory employee (deemed an agent of the principal corporation), and to the principal's subsidiary. [FN5]

FN4. *Pritzker,* 7 F.3d at 1121-1122.

FN5. *Id.*

**\*2** Plaintiff argues that presumption of arbitrability does not extend to claims by or against non-signatories. Citing to the Third Circuit's decision in *Kaplan v. First Options of Chicago,* 19 F.3d 1503 (3d Cir.1994), Plaintiff states that a corporate officer who signs an agreement for the purchase or the sale of assets, in his capacity as an agent for a disclosed principal, cannot compel a signatory to submit to arbitration pursuant to the agreement. Plaintiff attempts to distinguish Defendants' "agency" theory, articulated in *Pritzker,* on several grounds, and argues that *Kaplan* controls this case. Plaintiff further states that Defendants did not reserve a right to compel arbitration of claims against them individually in the Agreement.

Plaintiff's reliance on *Kaplan* is misplaced. In *Kaplan,* the Third Circuit found that a corporate officer's signature in his official capacity on an agreement containing an arbitration clause did not require him to arbitrate his individual responsibility for the company's obligations. [FN6] "As a matter of contract, no party can be forced to arbitrate unless that party has entered into an agreement to do so," but "doubts about the intended scope of an agreement to arbitrate are resolved in favor of arbitration." [FN7] The deal in question involved four documents, only one of which had an arbitration clause. The officer signed another document in his individual capacity, assuming certain limited and precisely defined obligations. That document did not contain an arbitration clause. The four documents, read together as one contract, negated any consent by the officer to arbitrate his individual responsibility for all obligations assumed by the company. The Third Circuit distinguished *Pritzker* on several grounds. In *Kaplan,* the officer's obligation to arbitrate depended on contract, not on agency or participation with the company in a wrongful act, and there was no "community of interest" between the officer and the company. [FN8]

FN6. *Kaplan,* 19 F.3d at 1512.

FN7. *Id.*

FN8. *Id.* at 1515.

The facts in this action are quite different. Here, the non-signatories are the ones seeking to compel the signatory to arbitrate his claims against them, making this case akin to *Pritzker* and not *Kaplan.* The issue before the Court is whether Plaintiff, in signing the Agreement, agreed to arbitrate his claims against Defendants, i.e. the scope of the Agreement's arbitration clause. [FN9]

FN9. *See Bel-Ray Co. v. Chemrite (Pty) Ltd.,* 181 F.3d 435, 444-45 (3d Cir.1999) (distinguishing *Pritzker* and *Kaplan* ). Plaintiff cites to decisions by other circuits which criticize *Pritzker'* s broad approach or distinguish it on the facts. *See Westmoreland v. Sadoux,* 299 F.3d 462, 466 (5th Cir.2002) (finding *Pritzker* to conflict with decisions of the First and Ninth Circuits); *McCarthy v. Azure,* 22 F.3d 351, 356-59 (1st Cir.1994) (declining to apply holdings of cases allowing non-signatories to compel arbitration). These non-controlling cases are distinguishable from this case factually and legally. In any event, *Pritzker* remains the controlling law of this Circuit.

The parties do not dispute the existence of a valid arbitration clause in the Agreement. All of Plaintiff's claims arise from Defendants' conduct during the negotiations and the sale of Plaintiff's interest in MES, formalized by the Agreement. Defendants acted as agents of MES during the negotiations and the sale. [FN10] As in *Pritzker,* the result here depends on the scope of the arbitration clause in the Agreement. The parties agreed to arbitrate *"any dispute relating to* this Agreement" (emphasis added). Such language has been construed by the courts very broadly, to include claims against agents of the signatory party. [FN11] Plaintiff's claims relate to the negotiation and sale of his interest in MES, memorialized in the Agreement. Defendants are the only remaining MES partners and there is a clear community of interest between them and the company. Accordingly, all of Plaintiff's claims against Defendants are within the scope of the arbitration clause in the Agreement. Plaintiff, by signing the Agreement, made a contractual commitment to arbitrate, which Defendants are entitled to enforce. For these reasons, the Court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1563350 (E.D.Pa.)
**(Cite as: 2005 WL 1563350 (E.D.Pa.))**

grants Defendants' motion to stay the proceedings before it pending the results of arbitration.

> FN10. *See Pritzker,* 7 F.3d at 1122 ("an entity such as [defendant] Merrill Lynch can only act through its employees, and an arbitration agreement would be of little value if it didn't extend to them") (citations omitted).

> FN11. *Id.* (such an arbitration clause covered "all controversies which may arise between" the parties); *Letizia v. Pridential Bache Secs.,* 802 F.2d 1185 (9th Cir.1986) (extending arbitration agreement to non-signatory brokers where the signatories agreed to arbitrate disputes "arising out of or relating to" the plaintiff's account with the signatory principal); *see also Bel-Ray,* 181 F.3d at 444.

**\*3** An appropriate Order follows.

### ORDER

AND NOW, this 30th day of June, 2005, upon consideration of Defendants' Motion to Dismiss or in the Alternative to Stay the Proceedings and Motion to Strike [Doc. # 6], Plaintiff's Response Opposition thereto [Doc. # 12], Defendants' Reply [Doc. # 16], Plaintiff's Sur-Reply, and the record, it is hereby ORDERED that Defendants' Motion is GRANTED IN PART and DENIED IN PART It is specifically ORDERED as follows:

1. Defendants' Motion to Stay is GRANTED;

2. Defendants' Motion to Dismiss and to Strike are DENIED WITHOUT PREJUDICE;

3. Plaintiff's Motion for Leave to File a Sur-Reply [Doc. # 17] is GRANTED;  [FN12]

> FN12. The Court considered Plaintiff's arguments in the Sur-Reply in its analysis above.

4. The Clerk of the Court is directed to place this matter on the civil SUSPENSE docket;

5. Defendants' counsel shall notify the Court of the status of the arbitration proceedings by August 30, 2005, or as soon as the arbitration proceedings terminate, whichever occurs first.

It is so ORDERED.

Slip Copy, 2005 WL 1563350 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 3122934 (Trial Pleading) Complaint (2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B

## Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23641529 (S.D.N.Y.)
**(Cite as: 2003 WL 23641529 (S.D.N.Y.))**

Page 1

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
PARAMEDICS ELECTROMEDICINA
COMERCIAL LTDA., Plaintiff,
v.
GE MEDICAL SYSTEMS INFORMATION
TECHNOLOGIES, INC., Defendant.
**No. 02 Civ. 9369(DFE).**

June 4, 2003.
William G. O'Donnell, Jr., O'Donnell & Fox, P.C.,
New York, NY, for plaintiff.

Jose I. Astigarraga, Edward M. Mullins, Paul A.
Capua, Astigarraga Davis Mullins & Grossman, P.A.,
Miami, FL, Michael Luskin, Howard Schiff, Scott A.
Burr, Luskin, Stern & Eisler, L.L.P., New York, NY,
for defendant.

ORDER: A) DENYING PLAINTIFF'S MOTION
FOR JUDGMENT ON THE PLEADINGS
SEEKING TO
STAY ARBITRATION, B) GRANTING
DEFENDANT'S MOTION TO COMPEL
ARBITRATION, C)
GRANTING DEFENDANT'S MOTION FOR
PRELIMINARY INJUNCTION, AND D)
INCLUDING
FINDINGS OF FACT AND CONCLUSIONS OF
LAW

EATON, Magistrate J.

**\*1** This matter came before this Court on May 22,
2003 for hearing on the Motion of Plaintiff
Paramedics Electromedicina Comercial Ltda. for
Judgment on the Pleadings Seeking To Stay
Arbitration (Docket No. 10) and Defendant GE
Medical Systems Information Technologies, Inc.'s
Motion to Compel Arbitration (Docket No. 15) and
Motion for Preliminary Injunction Enjoining
Tecnimed from Prosecuting the Brazilian Action
(Docket No. 16). This Court has considered the
motions, supporting memoranda and exhibits and the

rest of the record as well as the oral arguments.

*FINDINGS OF FACT*
The parties have each filed affidavits and exhibits.
On the material issues, the facts are not in dispute.
Accordingly, being fully advised in the premises, the
Court makes the following findings of fact.

1. Plaintiff Paramedics Electromedicina Comercial
Ltda. ("Tecnimed") is a Brazilian company that
markets, sells, and services medical products and
equipment in Brazil.

2. Defendant GE Medical Systems Information
Technologies, Inc. ("GEMS-IT") is a Wisconsin
corporation, with its principal place of business in
Milwaukee, Wisconsin. It manufactures and sells,
among other things, medical products and equipment
in Brazil and elsewhere. GEMS-IT was formerly
known as GE Marquette Medical Systems.

3. In 1999, Tecnimed negotiated and entered into an
International Distribution Agreement (sometimes
denominated the "Distribution Agreement") and an
International Sales and Service Representative
Agreement (sometimes denominated the
"Representative Agreement") (collectively "the
Agreements"), for the distribution, sale and service of
GEMS-IT's medical equipment and products in
Brazil. According to the Agreements, Tecnimed
became a GEMS-IT authorized, distributor and sales
and service representative in Brazil.

4. The Agreements were for a term of two years,
from May 1, 1999 to May 1, 2001. Sales made after
the expiration of the Agreements are, nevertheless,
expressly to be governed by the terms of the
Agreements.

5. The International Distribution Agreement contains
an arbitration clause that provides that any and all
disputes pertaining to the Agreement would be
resolved by binding arbitration before the IACAC:
   24.1 This Agreement shall be governed by, and in
   accordance with, the internal laws of the State of
   New York, USA, without giving effect to the
   conflict of laws principles hereof.
   24.2 The Parties agree that any controversy, claim
   or dispute between the Parties arising out of or
   relating in any way to this Agreement which the
   Parties are unable to resolve by mutual negotiation

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-06076-JF   Document 22-19   Filed 08/22/2005   Page 16 of 33

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 23641529 (S.D.N.Y.)
**(Cite as: 2003 WL 23641529 (S.D.N.Y.))**

will be submitted to good faith, non-binding mediation before a qualified mediator in Miami, Florida, USA....

24.3 In the event of any controversy, dispute or difference between the Parties hereto, with respect to the interpretation of the provisions of this Agreement or to the breach or termination thereof or the determination of the rights and obligations of the Parties hereunder, either party may give notice to the other in writing of the existence of such controversy, dispute or difference specifying its nature and the points at issue. If the same shall not be amicably resolved by negotiation or mediation within thirty (30) days from the receipt of such notice, either party shall be entitled to have such controversy, dispute or difference finally settled by arbitration, in accordance with the rules of the Inter-American Commercial Arbitration Commission in effect on the date of this Agreement. The arbitration shall be conducted in Miami, Florida, USA ...

**\*2** Emphasis added.

6. The International Sales and Service Representative Agreement contains a similar provision in Article 19, which states in relevant part:

19.2 The Parties agree that any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement which the Parties are unable to resolve by mutual negotiation will be submitted to good faith, non-binding mediation before a qualified mediator in Miami, Florida, USA ...

19.3 In the event of any such controversy, claim or dispute, either Party may give notice to the other in writing of the existence of such controversy, claim or dispute specifying its nature and the points at issue. If the same shall not be amicably resolved by negotiation or mediation within thirty (30) days from the receipt of such notice, either party shall be entitled to have such controversy, dispute or difference finally settled by arbitration, in accordance with the rules of the Inter-American Commercial Arbitration Commission in effect on the date of this Agreement. The arbitration shall be conducted in Miami, Florida, USA ...

Emphasis added.

7. GEMS-IT alleges that during the term of the Agreements, GEMS-IT sold and delivered medical equipment to Tecnimed, which Tecnimed accepted. By March 2000, Tecnimed allegedly had stopped paying GEMS-IT's invoices when they became due, as required under the International Distribution Agreement. GEMS-IT claims that in reliance upon

Tecnimed's assurance that it would pay GEMS-IT's outstanding invoices, it continued to deliver additional goods to Tecnimed and, pursuant to the terms of the Agreements, continued to do so even after the expiration of the terms of the Agreements in May 2001. Tecnimed allegedly owes GEMS-IT an amount in excess of $1 million and has refused to make payment.

8. Before the expiration of the term in May 2001, GEMS-IT attempted to negotiate with Tecnimed to obtain payment of Tecnimed's past due debt. By letter of December 8, 2000, Tecnimed wrote to GEMS-IT informing GEMS-IT that Tecnimed was "directing all [its] attention and disposition to find a solution attending to the best interest of GE and Tecnimed" and proposing "some possibilities to diminish [Tecnimed's] debt."

9. During 2001, GEMS-IT and Tecnimed met and communicated on several occasions to discuss and negotiate repayment of Tecnimed's outstanding debt to GEMS-IT, which debt by then had allegedly reached approximately $1.2 million. As part of these discussions, Tecnimed allegedly repeatedly assured GEMS-IT that it would become current on all outstanding payments, causing GEMS-IT to further deliver goods to Tecnimed.

10. By letter of October 24, 2001, Tecnimed informed GEMS-IT that it would not pay its debt and, instead, enumerated a series of expenses that it had allegedly incurred to be able to market GEMS-IT's products and claimed $3,640,000 in damages. By letter of November 21, 2001, GEMS-IT informed Tecnimed that it rejected Tecnimed's demands.

**\*3** 11. On March 18, 2002, GEMS-IT sent a letter to Tecnimed requesting mediation of its claim as well as Tecnimed's claims. This letter requested that all these disputes "be submitted to a qualified mediator in Miami, Florida" and cited the articles quoted above (Article 24.2 and Article 19.2). On or about March 25, 2002, Tecnimed sent a letter to GEMS-IT rejecting mediation and demanding damages. Tecnimed's letter did not remotely suggest that Tecnimed was asking for further negotiation, to be followed (if unsuccessful) by mediation. Instead, Tecnimed's letter made seven points, including:

1. We do not agree with the date you suggested.
2. We do not agree with the way established for the mediation, foreseen in the contract, by lack of equilibrium in the contract, between the parties[.]
3. We do not accept an indication of a mediator[.]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23641529 (S.D.N.Y.)
(Cite as: 2003 WL 23641529 (S.D.N.Y.))

12. On March 28, 2002, Tecnimed served GEMS-IT with an "Extrajudicial Notice" in anticipation of filing a lawsuit in Brazil.

13. On April 22, 2002, GEMS-IT filed a Request for Arbitration with the Inter-American Commercial Arbitration Commission ("IACAC") pursuant to Article 3 of the IACAC Rules of Procedure and the applicable provisions of the Agreements (the "IACAC Arbitration").

14. On May 2, 2002, GEMS-IT and Tecnimed representatives met in Miami, Florida to negotiate further. The parties, however, were unable to reach any agreement.

15. In response to GEMS-IT's Request for Arbitration, Tecnimed informed the IACAC that it would not participate in arbitration.

16. Thereafter, GEMS-IT named an American attorney as its party-appointed arbitrator, the IACAC appointed a Brazilian attorney as the second arbitrator in view of Tecnimed's failure to designate an arbitrator, and the IACAC appointed a Canadian attorney as the Chair (hereafter the three arbitrators are referred to as the "IACAC Arbitral Tribunal").

17. On May 23, 2002, Tecnimed filed a complaint in the Tenth Civil Circuit Court of Porto Alegre, Brazil (the "Brazil Court"), entitled *Tecnimed Paramedics Eletromedicina Comercial Ltda v. GE Marguette Medical Systems and General Eletric do Brasil* (the "Brazil Action"). As mentioned earlier, GEMS-IT was formerly known as GE Marquette Medical Systems. General Eletric do Brasil ("GE Brasil") is an affiliate of GEMS-IT. In the Brazil Action, Tenimed's complaint asserts seven (7) principal claims against GEMS-IT and GE Brasil ("the GE Defendants"), which this Court has examined. The claims include:

(a) A request that the Brazil court void the International Sales and Service Representative Agreement and International Distribution Agreement because these Agreements allegedly lacked "contractual equilibrium" and are, therefore, "abusive."

(b) A request that the Brazil court declare that Tecnimed is not bound to arbitrate its dispute with GEMS-IT in Miami, Florida, pursuant to the arbitration clauses contained in the International Sales and Service Representative Agreement and the International Distribution Agreement, because those

agreements expired and are, therefore, not enforceable.

*4 (c) A request that the Brazil court declare that the non-exclusive distributorship relationship agreed upon by the parties in Article 2 of the International Distribution Agreement was modified so that Tecnimed became the exclusive distributor of GEMS-IT's line of medical products and equipment in Brazil.

(d) A claim that GEMS-IT wrongfully terminated the International Sales and Service Representative Agreement and the International Distribution Agreement, allegedly causing the loss of profits that should be awarded to Tecnimed.

(e) A claim for "declaration of non-existence of debt" to the GE Defendants for the medical products and equipment Tecnimed purchased from GEMS-IT under the Agreements.

18. On August 19, 2002, the GE Defendants responded to the Complaint in the Brazil Action and opposed the action on the basis that the claims asserted by Tecnimed are subject to the mandatory arbitration provisions of the Agreements. On August 29, 2002, Tecnimed filed its Reply to GEMS-IT's defenses.

19. No material ruling has been issued in the Brazil Action.

20. On November 13, 2002, Tecnimed filed, in the Supreme Court of the State of New York in the County of New York, a Verified Petition for a Permanent Stay of the [IACAC] Arbitration. [FN1]

> FN1. In its pending petition in the IACAC Arbitration, GEMS-IT seeks essentially the following relief: (a) a declaration that Tecnimed has breached the Distribution Agreement and the Sales Agreement; (b) a finding that Tecnimed is liable to GEMS-IT for breach of the Distribution Agreement and an award ordering Tecnimed to pay for goods sold and delivered in the amount of U.S. $1,159,129.61 plus agreed upon interest of 12%, costs, legal fees and damages for Tecnimed's failure to provide services and other support as required by the Agreements; (c) a declaration that the disputes asserted by Tecnimed in the Brazil Action are arbitrable under the terms of the Agreements and may not be prosecuted in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Brazilian Courts; (d) a declaration that GEMS-IT has fully complied with its obligations and is not liable to Tecnimed; and (e) a finding that Tecnimed's claims are in any event barred by the terms of the Agreements limiting the liability of GEMS-IT.

21. On November 22, 2002, GEMS-IT removed Tecnimed's Verified Petition to this Court (hereinafter the "New York Action"). Jurisdiction of the New York action is based on (a) federal question jurisdiction pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (known as the "New York Convention") and its implementing legislation. 9 U.S.C. § § 201 et seq., and the Inter-American Convention on International Commercial Arbitration (known as the "Inter-American Convention"), and its implementing legislation, 9 U.S.C. § 301 et seq.; and (b) diversity of citizenship, pursuant to 28 U.S.C. § 1332.

22. On November 27, 2002, GEMS-IT filed its Answer to the Verified Petition and asserted its counterclaims for (a) an order to compel arbitration and for (b) an anti-suit injunction to enjoin Tecnimed from proceeding with the Brazil Action.

23. On December 20, 2002, Tecnimed filed its Reply to the counterclaim and a motion for judgment on the pleadings, seeking to stay the IACAC Arbitration.

24. On January 3, 2003, GEMS-IT filed (a) a motion to compel arbitration of the claims Tecnimed is advancing in the Brazil Action and memorandum of law in support of that motion and (b) a motion for a preliminary injunction enjoining Tecnimed from prosecuting the Brazil action.

25. Tecnimed elected not to participate in the IACAC Arbitration. It did, however, file with the IACAC Arbitral Tribunal a copy of the memoranda and motions filed in this case, including the memoranda asserting that the IACAC Arbitral Tribunal lacked jurisdiction and the IACAC Arbitration should be stayed.

26. On April 4, 2003, the IACAC Arbitral Tribunal entered an award ("Award") ruling that: (a) the arbitration clauses in the two agreements between Tecnimed and GEMS-IT are valid and binding on Tecnimed; (b) the disputes submitted by GEMS-IT are within the scope of the arbitral clauses and are arbitrable; and (c) the alleged conditions precedent to arbitration (good faith negotiation, mediation, etc.)

have been met and the Tribunal may proceed to adjudicate the disputes before it.

*5 27. On May 14, 2003, the parties consented to proceed before the undersigned United States Magistrate Judge Douglas F. Eaton, pursuant to 28 U.S.C. § 636(c).

28. On May 22, 2003, this Court heard oral argument on Tecnimed's Motion for Judgment on the Pleadings Seeking To Stay Arbitration (Docket No. 10) and GEMS-IT's Motion to Compel Arbitration (Docket No. 15) and GEMS-IT's Motion for Preliminary Injunction Enjoining Tecnimed from Prosecuting the Brazilian Action (Docket No. 16).

### CONCLUSIONS OF LAW

Tecnimed has moved for an order, pursuant to Fed.R.Civ.P. 12(c), granting it a judgment on its pleading--specifically, the Verified Petition Tecnimed filed in this action--and a stay of the arbitration of all claims by GEMS-IT against Tecnimed, on the basis that the arbitration agreements are invalid and that GEMS-IT has failed to comply with the conditions precedent for initiating an arbitration against Tecnimed under the International Distribution Agreement and the international Sales and Service Representative Agreement, which provide for arbitration.

GEMS-IT has moved to compel arbitration of the claims that Tecnimed is attempting to litigate in the Brazil Court and to enjoin Tecnimed from prosecuting such suit.

Essentially, the same legal principles apply to Tecnimed's motion and to GEMS-IT's motion to compel arbitration.

### I. The Federal Arbitration Act and Case Law.

The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), in conjunction with the inter-American Convention, implemented by 9 U.S.C. § 301. provides the Court with subject matter jurisdiction. [FN2] The federal arbitral laws are divided into three chapters: Chapter One, 9 U.S.C. § § 1-16, contains the general provisions; Chapter Two, 9 U.S.C. § § 201-208, implements the provisions of the New York Convention; and Chapter Three, 9 U.S.C. § § 301-307, implements the provisions of the Inter-American Convention.

> FN2. In addition, the Court has subject matter jurisdiction by virtue of the diversity

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the citizenships of Tecnimed, a citizen of Brazil, a foreign state, and GEMS-IT, a citizen of a state of the United States. 28 U.S.C. § 1332.

Because the parties are from the United States and Brazil, and both countries are signatories to the Inter-American Convention, *see* 9 U.S.C. § 301, this case involves both Chapter One, the general provisions, and Chapter Three, implementing the Inter-American Convention. *See* 9 U.S.C. § 305.

Section 307 of Chapter Three provides that the provisions of Chapter One, 9 U.S.C. §§ 1-16, apply to actions and proceedings brought pursuant to Chapter Three to the extent that the two chapters do not conflict with each other. Section 4 of Chapter One provides, in pertinent part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition ... for an order directing that such arbitration proceed in the manner provided for in such agreement ... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

*6 9 U.S.C. § 4 (emphasis added).

Thus, under Federal law, where the facts presented to the Court establish that (a) an arbitration agreement exists, and (b) that a party to such agreement is not in compliance with it, an order compelling arbitration without holding further proceedings may issue. *Evans & Sutherland Computer Corp. v. Thomson Training & Simulation Ltd.*, 1994 WL 593808, *3 (S.D.N.Y. Oct.28, 1994).

**II.** *Tecnimed's Motion For Judgment on The Pleadings and To Stay the IACAC Arbitration.*

**A.** *Federal Policy Favors Arbitration.*

"Federal policy strongly favors arbitration as an alternative dispute resolution process." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir.1991). While parties are not required to arbitrate when they have not agreed to, *see Volt information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), they are bound by provisions to which they have agreed. *See Genesco, Inc. v. T. Kaiuchi & Co., Ltd*, 815 F.2d 840, 845 (2d Cir.1987). In accordance with that policy, courts should "construe arbitration clauses as broadly as possible." *Threlkeld, 923 F.2d at 250* (internal quotation and citation omitted), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 625-26, 105 S.Ct. 3346, 87 L.Ed.2d 444(1985).

The federal policy in favor of arbitration is even stronger in the context of international business transactions. *Mitsubishi Motors Corp.*, 473 U.S. at 629-31; *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516-18, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). Enforcement of international arbitral agreements promotes the smooth flow of international transactions by removing the threats and uncertainty of time-consuming and expensive litigation. The parties may agree in advance as to how their disputes will be resolved should their business relationship sour. *See Scherk*, 417 U.S. at 516-17. Thus, a district court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that it covers the asserted dispute ." *Threlkeld, 923 F.2d at 250.*

**B.** *The Arbitration Provisions Are Valid.*

Against that backdrop, the arbitration provisions contained in the Agreements are valid and enforceable. In *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court instructed that an arbitration clause is to be treated as conceptually "separable" from the rest of the agreement, and that under the FAA, the role of the court is to consider only issues relating to the making and performance of an agreement to arbitrate and not issues relating to the enforceability of the contract generally. *Id;* *see also Belship Navigation, Inc. v. Sealift, Inc.*, 1995 WL 447656 at *5 (S.D.N.Y.1995) (citing cases).

*7 The validity of the arbitration provisions is governed by 9 U.S.C. § 2, entitled "Validity, irrevocability and enforcement of agreements to arbitrate." Section 2, although contained in Chapter One of Title 9, is incorporated by reference under Chapter Three, which implements the Inter-American

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Convention. See 9 U.S.C. § 302. Section 2 provides:
   A written provision in any ... contract evidencing a
   transaction involving commerce to settle by
   arbitration a controversy thereafter arising out of
   such contract or transaction, or the refusal to
   perform the whole or any part thereof, or an
   agreement in writing to submit to arbitration an
   existing controversy arising out of such a contract,
   transaction, or refusal, shall be valid, irrevocable,
   and enforceable, save upon such grounds as exist at
   law or in equity for the revocation of any contract.

The Distribution Agreement and the Representative
Agreement clearly contain written provisions to the
effect that "any controversy, dispute or difference
between the Parties" as to the "interpretation of the
provisions of th[e] Agreement or to the breach or
termination thereof or the determination of the rights
and obligations of the Parties hereunder" shall be
settled by arbitration. Accordingly, the issue for
determination is whether Tecnimed agreed to the
written arbitration provisions contained in the
Agreements. See, e.g., Siderurgica Del Orinoco,
C.A., v. Linea Naviera De Cabotaje, C.A., 1999 WL
632870 at *5 (S.D.N.Y. Aug.19, 1999); Ocean
Products, Inc. v. Molinaos Rio De La Plata, S.A.,
1999 WL 239692, *2 (S.D.N.Y. April 22, 1999).

In determining whether parties have agreed to
arbitrate, the Court must apply accepted principles of
contract law. Progressive Casualty Ins. Co. v. C.A.
Reaseguradora Nacional De Venezuela, 991 F.2d 42,
46 (2d Cir.1993); Genesco, 815 F.2d at 844-45.
Under New York law, which governs the
Agreements, "[w]here the contract is unambiguous,
courts must effectuate its plain language." Seabury
Const. Corp. v. Jeffrey Chain Corp., 289 F.3d 63, 68
(2d Cir.2002). "It is the primary rule of construction
of contracts that when the terms of a written contract
are clear and unambiguous, the intent of the parties
must be found within the four corners of the contract,
giving a practical interpretation to the language
employed and the parties' reasonable expectations."
Marshall v. Marshall, 264 A.D.2d 826, 695 N.Y.S.2d
595, 596 (2d Dept.1999) (citations omitted).

A party who signs a contract in the absence of fraud
or other wrongful acts on the part of another
contracting party is presumed as a matter of law to
know its contents and to have assented to them.
Progressive Casualty Ins. Co., 991 F.2d at 46;
DeGaetano v. Smith Barney, Inc., No. 95 Civ.
1613(DLC), 1996 WL 44226, *7-8 (S.D.N.Y. Feb.5
1996). There is no suggestion that the arbitration
provisions were procured by fraud or that the

arbitration provisions were hidden or kept from
Tecnimed. Accordingly, this Court concludes that the
arbitration agreements are valid and binding upon
Tecnimed. [FN3]

   FN3.   Tecnimed   contends   that   the
   Agreements expired and are therefore not
   binding upon it. The issue of whether or not
   the Agreements expired as Tecnimed
   asserts, voiding the obligation to arbitrate,
   involves interpretation of the Agreements,
   termination of the Agreements, and the
   parties' obligations under the Agreements,
   and therefore is arbitrable. This Court notes
   that a court may compel arbitration of a
   dispute that arose after the expiration of the
   arbitration provision. See e.g. Litton Fin.
   Printing v. NLRB, 501 U.S. 190, 206, 111
   S.Ct. 2215, 115 L.Ed.2d 177 (1991); Fleck
   v. E.F. Hutton, 891 F.2d 1047, 1052-53 (2d
   Cir.1989); see also CPR, Inc. v. Spray, 187
   F.3d 245, 254 (2d Cir.1999). Moreover, as
   held by the Arbitral Tribunal, the arbitral
   clauses are deemed to constitute agreements
   separate from the terms of the main
   agreements, and the expiration of the main
   agreements do not operate to extinguish the
   arbitral clauses. See Award ¶ 78, Ex. 19;
   see Sphere Drake Ins. Ltd. v. Clarendon
   Natl. Ins., 263 F.3d 26, 30-32 (2d Cir.2001),
   citing, Prim a Paint Corp. v. Food &
   Conklin Mfg. Co., 388 U.S. 395, 402-04, 87
   S.Ct. 1801, 18 L.Ed.2d 1270 (1967). An
   arbitration claim survives after the contract's
   expiration "where it involves facts and
   occurrences that arose before expiration,
   where an action laken after expiration
   infringes a right that accrued or vested under
   the agreement, or where normal principles
   of contract interpretation, the disputed
   contractual right survives expiration of the
   agreement." Gordon v. New York Times
   Employees Fed. Credit Union, 2001 WL
   1142174, *2 (S.D.N.Y. Sept.26, 2001). The
   determination of whether a contract
   containing an arbitration clause has expired
   is for the arbitrator to decide. 4200 Avenue
   KLLC v. Fishman, 164 F.Supp.2d 339, 342
   (S.D.N.Y.2001). Fishman v. Towers, 2001
   WL 1338897, *4n. 8 (S.D.N.Y. Oct. 31,
   2001).

C. The Condition Precedent Was Excused

**\*8** GEMS-IT argues that once this Court determines

that the arbitration provisions are valid, this Court's work is finished, because the parties agreed to submit the issue or the arbitrability of claims to the IACAC Arbitral Tribunal, and thus that there is no need for this Court to determine whether GEMS-IT has complied with conditions precedent for the arbitration. As well, GEMS-IT has argued that the IACAC Arbitral Tribunal has already ruled upon the issue finding that any condition precedent to arbitration has been excused.

In contrast, Tecnimed argues that the determination of whether the conditions precedent to arbitration have been satisfied is the province of this Court, not the arbitrators.

Assuming without deciding that it is for the Court and not the arbitrators to determine compliance with conditions precedent to arbitration, this Court concludes that such conditions have been excused.

The Distribution Agreement provides, *inter alia:*

24.2 The Parties agree that any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement which the Parties are unable to resolve by mutual negotiation will be submitted to good faith, non-binding mediation before a qualified mediator in Miami, Florida, USA....

This Court does not regard the mention of "mutual negotiation" in the Distribution Agreement or the Representative Agreement as creating a condition precedent to arbitration but rather regards this as descriptive language setting the stage for a mediation. In any event, to the extent that such language were to create a condition precedent, the record is clear that any such condition was more than satisfied as the parties had extensive mutual negotiations within the meaning of the Agreements.

This Court does, however, regard the requirement of a "good faith, non-binding mediation before a qualified mediator in Miami, Florida, USA" to constitute a condition precedent to arbitration. It is undisputed that a mediation was not held. However, this does not end the inquiry.

It is an elemental principle of contract law that "[a] party cannot insist upon a condition precedent, when its non-performance has been caused by himself". *Rochester Community Individual Practice Ass'n, Inc. v. Finger Lakes Health Ins. Co., Inc.,* 281 A.D.2d 977, 722 N.Y.S.2d 663, 666 (N.Y.A.D.2001); *Roberts v. H. Gin Realty Co.,* 185 A.D.2d 209, 586

N.Y.S.2d 264 (N.Y.A.D.1992) ("[i]t is a familiar principle that one who frustrates the other party's fulfillment of a condition precedent by unilateral termination cannot avail himself of that condition precedent as a defense").

The record is clear that once the negotiations reached an impasse, Tecnimed refused to participate in mediation. By letter dated March 18, 2002, GEMS-IT requested that Tecnimed mediate and even suggested dates and location. Beyond that, GEMS-IT expressed that it was open to Tecnimed's suggestions for how the mediation should proceed, including any dates for the mediation that would be convenient for Tecnimed. Although GEMS-IT "rejected" Tecnimed's claims in the letter, GEMS-IT expressly stated that Tecnimed's claims as well as GEMS-IT's claims would be the subject of the mediation. Exhibit E. Affidavit of Eva Reynoso. Tecnimed, however, refused to participate, instead, sending a letter demanding damages, and in no way indicating any desire to mediate. See above. Finding of Fact ¶ 11.

\*9 Tecnimed cannot now use its own refusal to mediate to avoid arbitration. *See, e.g., Glover v. St. Louis-san Francisco Railway,* 393 U.S. 324, 329-30, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969) (employees not required to exhaust grievance procedure "where the effort to proceed formally with contractual or administrative remedies would be wholly futile"); *Welborne Clinic v. MedQuist, Inc.,* 301 F.3d 634, 638 (7th Cir.2002) ("a party cannot avoid arbitration because of the other party's failure to comply with the negotiation steps of a grievance procedure."); *Local 744, Int'l Bhd. Of Teamsters v. Skokie Valley Beverage Co.,* 213, 218 (N.D.Ill.1986) (employer precluded from raising as defense to arbitration Union's failure to fulfill contractual prerequisites to arbitration when employer "has refused from the outset to process" the grievance).

Accordingly, this Court concludes that any condition precedent to arbitration has been excused by Tecnimed's conduct.

### D. *Arbitrability of GEMS-IT's Claims*

Assuming without deciding that this Court is the proper forum to determine the arbitrability of the claims that GEMS-IT has asserted in the IACAC Arbitration, this Court concludes that such claims are arbitrable, and accordingly, that Tecnimed's motion for judgment on the pleadings must be denied.

The Agreements entered into by Tecnimed with

Case 1:05-cv-03081-JF    Document 22-19    Filed 08/22/2005    Page 22 of 33

Not Reported in F.Supp.2d                                                                Page 8
Not Reported in F.Supp.2d, 2003 WL 23641529 (S.D.N.Y.)
**(Cite as: 2003 WL 23641529 (S.D.N.Y.))**

GEMS-IT provide for mandatory arbitration of disputes between the parties arising out of or relating to the Agreements, including "any controversy, dispute or difference between the Parties hereto, with respect to the interpretation of the provisions of this Agreement or to the breach or termination thereof or the determination of the rights and obligations of the Parties hereunder...." GEMS-IT's arbitral claims against Tecnimed relate to the interpretation of, the breach of, the termination of, and the obligations of the parties under, the Agreements. Accordingly, GEMS-IT's claims all fall within the scope of the arbitration provisions of the Agreements, and Tecnimed's motion for judgment on the pleadings and to stay the IACAC Arbitration must be denied.

III. *The Arbitrability of Tecnimed's Claims*

GEMS-IT has moved to compel the arbitration of the claims that Tecnimed is prosecuting in the Brazil court. As noted, the Federal Arbitration Act provides in pertinent part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement .....

9 U.S.C. § 4 (emphasis added).

Federal law instructs that:

Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability.

**\*10** *Progressive Casualty Ins. Co.,* 991 F.2d at 48, quoting *Mitsubishi Motors Corp.,* 473 U.S. at 626. "Indeed, unless it can be said 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,' the dispute should be submitted to arbitration." [FN4] *Progressive Casualty Ins. Co.,* 991 F.2d at 48. "Whether a particular claim falls within the scope of the parties' arbitration agreement, [the court] focus[es] on the factual allegations in the complaint

rather than the legal causes of action asserted. If the allegations underlying the claims "touch matters' covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Smith/Enron Cogeneration Limited Partnership, Inc. v. Smith Cogeneration International Inc.,* 198 F.3d 88, 99 (2d Cir.1999).

> FN4. Paragraphs 19 and 24 of the Agreements, respectively, provide that the "Agreement" shall be "governed by and interpreted in accordance with" New York law. Tecnimed has argued that New York law of arbitration should govern by virtue of such language. In *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 60-64, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), the Supreme Court ruled that the mere inclusion of a choice-of-law provision in an arbitration provision does not thereby incorporate state arbitration law. *Accord National Union Fire Ins. Co. v. Belco Petroleum Corp.,* 88 F.3d 129, 134-35 (2d Cir.1996); *cf. Coleman & Co. Securities, Inc. v. Giaguinto Family Trust,* No. 00 Civ. 1632, 2000 WL 1683450, at \*3 (S.D.N.Y. Nov.9, 2000) (holding that provision for "agreement and its enforcement" to be governed by New York law did not evidence parties' intent to be bound by New York arbitration law).

In this Court's view, a review of Tecnimed's claims asserted in the Brazil Action against GEMS-IT and GE Brasil indicates that they are within the scope of the arbitral clauses of the Agreements. Accordingly, the Court grants GEMS-IT's motion to compel Tecnimed to arbitrate the claims that Tecnimed is prosecuting in the Brazil Court.

A. *Tecnimed's Joinder of GE Brasil in the Brazil Action Does Not Alter the Result.*

Tecnimed has sued not only GEMS-IT in its Brazilian lawsuit but also a related corporation, GE Brasil. The claims against GE Brasil, however, are intertwined with and indistinct from the claims that Tecnimed has asserted against GEMS-IT. Under the law, if non-signatories to a forum selection clause are "closely related" to one of the contracting parties, then all such parties can be encompassed by the clause. "[C]losely related" is broadly defined to encompass those non-signatory, parties whose enforcement of the clause is foreseeable. *See e.g., Direct Mail Prod. Servs. Ltd. v. MBNA Corp.,* 2000 WL 1277597 (S.D.N.Y.2000) (non-party to an

agreement containing a forum selection clause may invoke such a clause if "the relationship between the non-party and the signatory [is] sufficiently close that the non-party's enforcement of the forum selection clause is 'foreseeable' by virtue of the relationship between the signatory and the party sought to be bound"); *Scher v. Bear Steams & Co., Inc.,* 723 F.Supp. 211 (S.D.N.Y.1989) (non-signatory agent of principal who was party to arbitration clause was bound thereby); *Puerto Rico v. Airborne Group PLC,* 882 F.Supp. 1212, 1216 (D.P.R.1995) (forum clause in contract benefited defendants other than signatories to the contract where such parties were related thereto as agent or parent or sister company); *Hirschfeld Productions, Inc. v. Mirvish,* 88 N.Y.2d 1054, 651 N.Y.S.2d 5, 673 N.E.2d 1232 (N.Y.1996) (noting that "[f]ederal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation").

**\*11** Here, Tecnimed's claims are substantially identical with respect to each defendant. Tecnimed has sued both defendants together in each claim. The claims alleged against them arise directly out of their relationship with each other. Tecnimed alleges that GE Brasil was acting as GEMS-IT's agent. Thus, it was clearly foreseeable to Tecnimed that GEMS-IT's alleged agent would seek to enforce the arbitration provision at issue. Based upon Tecnimed's allegations, both GE defendants are equally entitled to enforce the arbitration provision. [FN5]

> FN5. Even if the claims asserted against GE Brasil were sufficiently separate from the claims asserted against GEMS-IT as to be non-arbitrable, then, at a minimum, this Court would enjoin Tecnimed from litigating in Brazil Court its claims against GE Brasil pending the arbitration of the GEMS-IT/Tecnimed dispute. *See WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 76 (2d Cir.1997), citing with approval *IDS Life Ins. Co. v. Sun America, Inc.,* 103 F.3d 524 (7th Cir.1996); *Societe Nationale Pour La Recherche,* 430 F.Supp. 1332, 196 (S.D.N.Y.1977). in *IDS,* Chief Judge Posner noted that where a party to an arbitration agreement attempts to avoid that agreement by suing a related party with which it has no arbitration agreement in the hope that that claim will be adjudicated first and have preclusive effect in the arbitration, "[s]uch a

maneuver should not be allowed to succeed, [and] ... is blocked ... by the principles of parallel-proceeding abstention, which ... require the court to stay the proceedings before it and let the arbitration go forward unimpeded." 103 F.3d at 530.

## IV. *GEMS-IT's Motion and Petition For Anti-Suit Injunction*

GEMS-IT additionally moved for an anti-suit injunction enjoining Tecnimed from prosecuting the Brazilian lawsuit. In its Memorandum of Law in Support of its Verified Petition at page 19, Tecnimed stated that it intends to pursue the Brazil Action "no matter what happens in the Arbitration and with this Petition." To assure compliance with the Court's order compelling arbitration, GEMS-IT's motion for injunction is hereby granted as set forth below.

### A. *Applicable Legal Standards*

#### 1. *Preliminary Injunction*

To obtain a preliminary injunction, the moving party must show: (a) irreparable harm and (b) either (1) the likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief. *Beal v. Steam,* 184 F.3d 117, 122 (2d Cir.1999); *International Fashion Products. B.V., v. Calvin Klein, Inc.,* 1995 WL 92321 (S.D.N.Y. March 7, 1995) (granting preliminary injunction enjoining plaintiff from prosecuting its injunction application in the Netherlands), *citing Citibank. N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985); *Alvenus Shipping Co., Ltd. v. Delta Petroleum (U.S.A.) Ltd.,* 876 F.Supp. 482, 487 (S.D.N.Y.1994) (granting preliminary injunction in aid of arbitration).

#### 2. *Anti-Foreign Suit Injunction*

"The power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well-established." *China Trade & Development Corp. v. M.V. Choong Yong,* 837 F.2d 33, 35-36 (2d Cir.1987); *see also United States v. Davis,* 767 F.2d 1025, 1038 (2d Cir.1985); *Laker Airways Ltd. v. Sabena Belgian World Airlines,* 731 F.2d 909, 926 (D.C.Cir.1984). [FN6] Such injunctions operate directly on the parties themselves, rather than on a foreign court. *Mastercard Int'l Inc. v. Argencard Sociedad Anonima,* 2002 WL 432379, \*9 (S.D.N.Y. March 20, 2002), *citing Laker Airways,* 731 F.2d at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-08082-3JF Document 22-19 Filed 08/22/2005 Page 24 of 33

Not Reported in F.Supp.2d                                                                    Page 10
Not Reported in F.Supp.2d, 2003 WL 23641529 (S.D.N.Y.)
**(Cite as: 2003 WL 23641529 (S.D.N.Y.))**

926.

> FN6. When a party seeks affirmative relief from a court, as Tecnimed has done, it submits itself to the jurisdiction of the court with respect to the adjudication of the claims arising from the same subject matter. *Paine Webber Inc. v. The Chase Manhattan Private Bank*, 260 F.3d 453, 460 (5th Cir.2001); *Bel Ray Co. Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 436, 443 (3d Cir.1999).

In order to obtain an anti-foreign-suit injunction, the moving party must first make two threshold showings: first, that the parties to both suits are substantially the same, and second, that "the resolution of the case before the enjoining court would be dispositive of the enjoined action." *China Trade*, 837 F.2d at 36. If these requirements are established, the court should then consider: (1) whether the foreign litigation poses a threat to the enjoining court's jurisdiction; (2) whether the foreign litigation would frustrate important United States policies; (3) whether the foreign action is vexatious; (4) whether adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment; and (5) other equitable considerations, including the possibility of prejudice to either party if the foreign action were to proceed. *Id.*

**\*12** GEMS-IT meets the *China Trade* requirements for injunctive relief.

**B.** *GEMS-IT Will Suffer Irreparable Harm If Tecnimed is Not Enjoined From Prosecuting the Brazil Action.*

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuonon*, 175 F.3d 227, 233-34 (2d Cir.1999); *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990). Irreparable harm is an "injury for which a monetary award cannot be adequate compensation." *Jayaral v. Scappini*, 66 F.3d 36, 39 (2d Cir.1995). Further, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or speculative." *Reuters*, 903 F.2d at 907. A federal court has the power to enjoin a party before it from prosecuting similar litigation in a foreign tribunal where the foreign action presents a threat of irreparable harm to the party seeking injunctive relief. *International Fashion Products, B.V., 1995 WL 92321* at \*2; *National Trust Co. v. American Home Assurance Co., 1987 WL 5837, \*6 (S.D.N.Y. Jan.22, 1987).*

GEMS-IT will be irreparably harmed if a preliminary injunction is not entered enjoining Tecnimed from continuing the Brazil Action. First, GEMS-IT will be required to litigate claims relating to the Agreements, both here and in Brazil, in contravention of agreed-to forum selection provisions calling for arbitration before the IACAC in Miami, Florida.

The deprivation of GEMS-IT's contractual right to arbitrate its claims, a right protected by international, federal, and state law, constitutes irreparable harm. *See Reliance Nat., Ins. Co. v. Seismic Risk Ins. Service, Inc., 962 F.Supp. 385, 391 (S.D.N.Y.1997), citing Olde Discount Corp. v. Tupman, 805 F.Supp. 1130, 1135 (D.Del.1992), aff'd, 1 F.3d 202 (3d Cir.1993), cert. denied, 510 U.S. 1065, 114 S.Ct. 741, 126 L.Ed.2d 704 (1994)* ("loss of [plaintiff's] federal substantive right to arbitrate, should injunctive relief be denied, constitutes irreparable harm clearly distinguishable from purely economic loss"); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 482 F.Supp. 788, 792 (D.Fla.1980), rev'd on other grounds, 677 F.2d 391 (4th Cir.1982)* (risk of engaging in discovery and going to trial "over a controversy for which this court ordered arbitration" constitutes irreparable harm); *see also Borden, Inc. v. Meiji Milk Prods. Co., 919 F.2d 822, 826 (2d 1990)* (New York Convention does not preclude injunction in aid of arbitration).

Tecnimed has submitted the issue of arbitrability to this Court. This Court has ruled on and rejected Tecnimed's contention. If Tecnimed is permitted to proceed in the Brazil Action, the possibility exists of conflicting judgments as to arbitrability. In addition, GEMS-IT faces the prospect of conflicting judgments on the merits from the IACAC Arbitral Tribunal and the Brazilian court. *See International Fashion Products, B.V., 1995 WL 92321* at \*2 (court finding irreparable harm where CKI was "compelled to litigate on two continents and may be subject to inconsistent rulings"); *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc., 1993 WL 171359, \*5 (N.D.Ill.1993)* (court finding irreparable harm on basis that plaintiffs will not have had an opportunity to litigate the arson issue fully in a French court, and if French court reaches merits of the claims first, the French judgment will have a *res judicata* effect).

**\*13** Accordingly, GEMS-IT will be irreparably harmed if a preliminary injunction is not entered

Case 1:05-cv-08632-JF    Document 22-19    Filed 08/22/05    Page 25 of 33

Not Reported in F.Supp.2d                                                                    Page 11
Not Reported in F.Supp.2d, 2003 WL 23641529 (S.D.N.Y.)
(Cite as: 2003 WL 23641529 (S.D.N.Y.))

enjoining Tecnimed from prosecuting the Brazil Action.

C. *GEMS-IT Has Demonstrated That Tecnimed Should Be Enjoined From Prosecuting the Brazil Action.*

The two *China Trade* threshold requirements and both of the *China Trade* specific circumstances that warrant an injunction against prosecution of a foreign litigation are met.

1. *The Parties to the Brazil Action Are Sufficiently Similar To the Parties in this Action.*

GEMS-IT and Tecnimed are parties in both this action and the Brazil Action. Although General Electric Company's subsidiary, GE Brasil, has been named in the Brazil Action, the claims made by Tecnimed against GEMS-IT and GE Brasil relate to the contractual relationship between GEMS-IT and Tecnimed. Tecnimed has alleged no independent claim against GE Brasil. Furthermore, as noted earlier, Tecnimed alleges GE Brasil acted as GEMS-IT's agent in GEMS-IT's dealings with Tecnimed.

Finally, GE Brasil is entitled to the benefit of GEMS-IT's arbitration agreements where its alleged misconduct relates to its behavior as an alleged agent of GEMS-IT. *See Campaniello Imports, Ltd v. Saporiti Italia,* 117 F.3d 665, 668 (2d Cir.1997); *Thomas v. A.R. Baron & Co., Inc.,* 967 F.Supp. 785, 788 (S.D.N.Y.1997); *Hirschfeld Productions, Inc. v. Miryish,* 88 N.Y.2d 1054, 651 N.Y.S.2d 5, 6, 673 N.E.2d 1232 (N.Y.1996) (cases applying arbitration agreements to non-signatories who served as agents to signatories).

Accordingly, the present cases are sufficiently similar in terms of parties to meet the first threshold criterion for an anti-foreign-suit injunction against Tecnimed. *Mastercard Int'l Inc.,* 2002 WL 432379 at *10; *Farrell Lines Inc. v. Columbus Cello-Poly-Corp.,* 32 F.Supp.2d 118, 130 (S.D.N.Y.1997), aff'd 161 F.3d 115 (2d Cir.1998).

2. *An Order in this Action Compelling Arbitration Would Be Dispositive of the Brazil Action.*

The second threshold criterion is "whether the resolution of the case before this Court would be dispositive of the enjoined action. *China Trade,* 837 F.2d at 36. A comparison of GEMS-IT's Statement of Claim in the arbitration with Tecnimed's Brazilian Complaint shows that they raise the same issues.

As noted previously, in the IACAC Arbitration GEMS-IT seeks a ruling that its claims are arbitrable and an award ruling that: (a) Tecnimed has breached the International Distribution Agreement and the International Sales and Service Representative Agreement; (b) Tecnimed is liable to GEMS-IT for breach of the Distributorship Agreement in the amount of $1,159,129.61, for goods sold and delivered; (c) the disputes asserted by Tecnimed in the Brazil Action are arbitrable under the terms of the Agreements and may not be prosecuted in the Brazilian courts; (d) GEMS-IT has fully complied with its obligations and is not liable to Tecnimed; and (e) any claims of Tecnimed are in any event barred by the terms of the Agreements limiting the liability of GEMS-IT.

*14 In the Brazil Action, Tecnimed seeks (a) a declaration that GEMS-IT's claim for indebtedness is not subject to the arbitration requirements set forth in the Agreements, (b) money damages for the termination of the Agreements, (c) the revision of the contractual clauses of the terminated Agreements, and (d) a declaration that it owes nothing to GEMS-IT.

Thus, in both actions, GEMS-IT and Tecnimed both seek rulings regarding the (a) arbitrability or non-arbitrability of their claims, (b) monetary damages for alleged breaches of the Agreements, and (c) declarations of no liability of indebtedness as to the other party. Similarly, in this New York Action, Tecnimed seeks an adjudication of the arbitrability or non-arbitrability of GEMS-IT's claims and GEMS-IT seeks to compel arbitration of Tecnimed's claims.

Accordingly, the resolution of this action and the arbitration before the IACAC will resolve the Brazil Action. Therefore, the second threshold requirement is met

3. *Tecnimed's Prosecution of the Brazil Action Also Violates Two Additional Factors Required For An Anti-suit Injunction.*

GEMS-IT also meets the additional factors required by *China Trade* for an injunction: (a) Tecnimed's Brazil Action threatens this Court's jurisdiction, and (b) Tecnimed's Brazil Action violates a public policy of this forum. *See Mastercard Int'l Inc.,* 2002 WL 432379 at *10, citing *China Trade,* 837 F.2d at 36.

a. *Tecnimed's Brazil Action Threatens the Court's Jurisdiction Over The Matters at Issue.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23641529 (S.D.N.Y.)
(Cite as: 2003 WL 23641529 (S.D.N.Y.))

"Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full and fair justice to litigants." *Laker Airways Ltd. V. Sabena Belgian World Airlines,* 731 F.2d 909, 927 (D.C.Cir.1984); *see also China Trade,* 837 F.2d at 37. "[W]hen the action of a litigant in another forum threatens to paralyze the jurisdiction of the court, the court may consider the effectiveness and propriety of issuing an injunction against the litigant's participation in the foreign proceeding." *Laker Airways,* 731 F.2d at 927. Moreover, "[w]hen the availability of the domestic courts is necessary to a full and fair adjudication of the plaintiff's claims, a court should preserve that forum." *Id.* at 931-32.

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* and the IACAC Rules of Procedure [Ex. 6], a court of law and an arbitral tribunal may not have concurrent jurisdiction over a cause of action; only one of the forums may have jurisdiction. *See Paine Webber v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990) ("if a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside the substantive scope of the agreement, it is obliged to enjoin arbitration. If, on the other hand, the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute"); IACAC Rules, Articles 21, Ex. 4 (provides that the Arbitral Tribunal shall have the power to determine whether the parties agreed to arbitrate); *accord, Laitasalo,* 196 B.R. at 925 ("Since, I now find that Kansa General is bound by that arbitration agreement, Kansa General must arbitrate this dispute in the U.S. and not litigate in Finland...."); *Smoothline,* 2002 WL 273301 at *6 (court stating that "neither Smoothline nor Greatsino may continue the Liechtenstein action in so far as they seek to challenge in that suit the validity of the obligations encompassed by their respective agreements to arbitrate").

**\*15** Tecnimed has submitted the issue of arbitrability to this Court. But Tecnimed has also asked the Brazilian court to declare that the Agreements are unenforceable and it is not required to arbitrate. [Ex. 9 at 11-15]. This Court has determined that Tecnimed did agree to arbitrate. Accordingly, once this Court has ruled, jurisdiction over such claims lies with this Court, and hereafter with the IACAC Arbitral Tribunal. Any decision to the contrary in the Brazilian court would undermine the jurisdiction of this Court and the IACAC Arbitration Tribunal.

Upon referral to arbitration, this Court will retain jurisdiction to enforce its order. *Satcom Intern. Group v. Orbcomm International Partners, L.P.,* 49 F.Supp.2d 331, 336 (S.D.N.Y.1999), *citing Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,* 156 F.3d 310, 316 (2d Cir.1998).

Accordingly, Tecnimed's continued prosecution of the Brazil Action Imperils this Court's jurisdiction (and the jurisdiction of the IACAC Arbitral Tribunal) and its order compelling arbitration.

   b. *Tecnimed's Brazil Action Violates United States Policy Favoring Enforcement of Forum Selection Clauses.*

"An anti-suit injunction may ... be appropriate when a party seeks to evade important policies of the forum by litigating before a foreign court." *China Trade,* 837 F.2d at 37; *see also Laker Airways Ltd.,* 731 F.2d at 931 n. 73 ("An impermissible evasion is much more likely to be found when the party attempts to elude compliance with a statute of specific applicability upon which the party seeking an injunction may have relied, and which is designed to effectuate important state policies.").

The United States has a well-established public policy of enforcing forum selection agreements and, in particular, arbitration agreements, and mandating the speedy removal of arbitral disputes from the courts. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *M/S Bremen v. Zapata Off-Shore Co. .,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 510-11, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Moses H. Cone Memorial Hosp. V. Mercury Construction Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218-20, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 233, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Vimar Seguros v Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 537-39, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); *International Fashion Products, B.V. v. Calvin Klein, Inc.,* 1995 WL 92321, *2 (S.D.N.Y. March 7, 1995); *Babcock & Wilcox Co. v. Control Components, Inc.,* 161 Misc.2d 636, 641, 614 N.Y.S.2d 678, 681 (Sup.Ct.N.Y.Co.1993).

Tecnimed does not deny that it filed the Brazil Action to avoid arbitral agreements. In paragraphs 16 through 20 of the Verified Petition, Tecnimed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

acknowledges that it filed the Brazil Action only after receiving notice of GEMS-IT's intent to submit its dispute to arbitration before the IACAC in Miami, Florida, USA:

> 16. Upon receiving GE's [March 18, 2002] letter, Tecnimed feared that just as GE was trying to proceed prematurely to mediation, it would next try to force arbitration on Tecnimed without taking the steps called for by the Rep Document or the Distribution Document. Tecnimed also knew it had uniquely Brazilian law claims against GE which were best heard by a Brazilian court. Thus, Tecnimed promptly sent GE an Extrajudicial Notice. Under Brazilian law, this event (on March 28, 2002) is the first step in filing suit....
>
> *16 17.... GE's response, on April 22, 2002, was to begin the Arbitration, filing the Notice in Manhattan....
>
> 19. On May 19, 2002, Tecnimed wrote the IACAC in Manhattan (and GE), stating that the Arbitration was invaild, and it would not participate, and would keep pursuing its remedies under Brazilian law and in Brazil....
>
> 20. On May 23, 2002, Tecnimed filed a Complaint in the Tenth Circuit Court of Porto Alegre, seeking, *inter alia,* declaratory relief and damages....

In addition, Paulo Werlang, president of Tecnimed, states at paragraph 15 of his Affidavit in support of the Verified Petition, that Tecnimed filed its Extrajudicial Notice "to avoid being dragged into an arbitration process that GE had no right to force upon it."

Judges in our Court have enjoined parties from proceeding in foreign lawsuits that were filed in violation of agreed-upon forum selection clauses, as here. *See Farrell Lines Inc., 32 F.Supp.2d at 130-31* (issuing anti-suit injunction against insurers from prosecuting lawsuit in Italy where parties were bound by forum selection clause in bill of lading to litigate in New York); *International Fashion Prods., B.V. v. Calvin Klein. Inc., 1995 WL 92321, *2 (S.D.N.Y. March 7, 1995)* (issuing anti-suit injunction against distributor from prosecuting an injunction application in the District Court of Amsterdam, The Netherlands where parties were bound by forum selection clause in distribution agreement to litigate in New York).

Judges in our Court have enjoined parties from proceeding in foreign actions where the parties have agreed to *arbitrate* their disputes in a particular forum. *See Smith/Enron Cogeneration Limited Partnership, Inc., 198 F.3d 88, 99 (2d Cir.1999)* (affirming issuance of anti-suit injunction against SCI from prosecuting Dominican lawsuit where bound by

arbitration agreement to arbitrate in New York); *Smoothline Ltd., 2002 WL 273301 at *6* (issuing anti-suit injunction against Smoothline and Greatsino from proceeding against NAFT in Princely Court of Liechtenstein seeking damages for NAFT's alleged failure to pay its share of Smoothline's tooling costs and a declaration of "non-liability" that Smoothline and Greatsino had no obligation to repair or replace CRUs where NAFT was bound by arbitration agreement to arbitrate in New York); *In re Laitasalo,* 196 B.R. at 924 (issuing anti-suit injunction against Kansa General from prosecuting in Helsinki, Finland District Court action seeking return of Letter of Credit where Kansa General is bound by arbitration agreement to arbitrate dispute in United States).

The issuance of a preliminary injunction here to preserve the *status quo,* pending arbitration, therefore, will fulfill this Court's obligation under the FAA and the Inter-American Convention to enforce a valid agreement to arbitrate. *Blumental,* 910 F.2d at 1054. In *Blumental,* the Second Circuit held that preliminary injunctions are appropriate whenever they are necessary to protect the integrity of a pending arbitration: "Arbitration can become a hollow formality if parties are able to alter irreversibly the *status quo* before the arbitrators are able to render a decision in the dispute. A district court must ensure that the parties get what they bargained for--a meaningful arbitration of the dispute." 910 F.2d at 1053.

*17 Since Tecnimed agreed to arbitrate "any controversy, dispute, or difference" between the Parties arising out of or relating to the Agreements, GEMS-IT is entitled to enjoin Tecnimed from prosecuting the Brazil Action.

### D. *Permanent Injunction*

GEMS-IT moved for a preliminary injunction pending this Court's ruling on its motion to compel arbitration, and in its counterclaim, GEMS-IT requested a permanent injunction barring Tecnimed from prosecuting the Brazil Action. As noted, to obtain a preliminary injunction (setting aside for the moment the question of whether the standards for anti-suit injunction are different), "[t]he moving party must show (1) irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking the injunctive relief." *Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992); *see also Richard Feiner & Co., Inc. v. Turner Entertainment Co.,* 98 F.3d 33, 34 (2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23641529 (S.D.N.Y.)
**(Cite as: 2003 WL 23641529 (S.D.N.Y.))**

Cir.1996). The standard for a permanent injunction is "essentially the same" as for a preliminary injunction with the exception that the plaintiff must actually succeed as to the merits rather than merely make a showing that such success is likely in a future proceeding. *See Rodriguez v. DeBuono*, 44 F.Supp.2d 601, 606 (S.D.N.Y.1999); *National Helicopter Corp. of America v. City of New York*, 952 F.Supp. 1011, 1018 (S.D.N.Y.1997).

This Court has the discretion to consolidate the motion for a preliminary injunction with the request for permanent injunctive relief with the result that "the papers submitted and oral argument shall constitute the full trial on the merits." *American Train Dispatchers Assoc. v. Metro-North Commuter Railroad Co.*, 698 F.Supp. 1102, 1107 (S.D.N.Y.1988); *see also Rodriguez v. DeBuono*, 162 F.3d 56, 62 n. 9 (2d Cir.1998). Rule 65(a)(2) of the Federal Rules of Civil Procedure expressly permits the Court to order consolidation of trial on the merits with a hearing on an application for a preliminary injunction "(b)efore or after the commencement of the hearing" on the application. *Reese Publishing Co., Inc. v. Hampton Int'l Communications, Inc.*, 620 F.2d 7, 12 (2d Cir.1980). Although notice of intent to consolidate is ordinarily required, that requirement may be excused when no prejudice to the parties would result. *Id.* (holding that district court did not err in providing notice of consolidation at the close of preliminary injunction proceedings because the parties were not prejudiced); *Holly Sugar Corp. v. Goshen County Coop. Beet Growers Ass'n*, 725 F.2d 564, 568 (10th Cir.1984) (district court's notice of its intent to consolidate on the second day of testimony was not error where the adverse party failed to ask for a continuance to present additional evidence and admitted in oral argument that it would not have significantly changed the presentation of evidence even if it had received more timely notice).

**\*18** At the hearing on the subject motions, this Court inquired of the parties whether there was anything further to be considered, and specifically questioned Tecnimed through its counsel about any other matters that would bear on this Court's rulings on the pending motions. The parties did not indicate that any other matters would be needed to dispose of the merits of this proceeding, as the motions in fact frame and present the substance of the dispute. Once this Court compels arbitration of the Tecnimed claims in the Brazil Action, and denies Tecnimed's motion to stay the IACAC Arbitration, nothing remains for this Court to do. GEMS-IT having demonstrated that it is not only likely to prevail on the merits, but in fact

entitled to prevail, this Court exercises its discretion to treat this matter as the trial and to treat GEMS-IT's application for a preliminary anti-suit injunction as one for permanent injunctive relief as well, thus bringing this matter to a conclusion. *See* Fed.R.Civ.P. 65(a)(2); *National Helicopter*, 952 F.Supp. at 1018; *American Train Dispatchers*, 698 F.Supp. at 1107 n. 5.

*Conclusion*

Accordingly, in light of the foregoing considerations, and this Court being fully advised in the premises and having considered the motions, memoranda of law, supporting affidavits, legal arguments and all other pertinent matters of record, it is ORDERED and ADJUDGED as follows:

1. Paramedics Electromedicina Comercial Ltda.'s Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) on its Verified Petition Seeking To Stay Arbitration (Docket No. 10) be and the same is hereby denied.
2. GE Medical Systems Information Technologies, Inc.'s Motion To Compel Arbitration (Docket No. 15) be and the same is hereby granted.
3. GE Medical Systems Information Technologies, Inc.'s Motion for Preliminary Injunction (Docket No. 16) be and the same is hereby granted.
4. This Court shall enter judgment separately in accordance with Federal Rules of Civil Procedure 58 and 65(a)(2), in a Final Judgment of Injunction.

DONE AND ORDERED.

*FINAL JUDGMENT OF INJUNCTION*
This matter came before this Court on May 22, 2003 for hearing on the Motion of Plaintiff Paramedics Electromedicina Comercial Ltda. for Judgment on the Pleadings Seeking To Stay Arbitration (Docket No. 10) and Defendant GE Medical Systems Information Technologies, Inc.'s Motion to Compel Arbitration (Docket No. 15) and Motion for Preliminary Injunction Enjoining Tecnimed from Prosecuting the Brazilian Action (Docket No. 16). This Court has considered the motions, supporting memoranda and exhibits and the rest of the record as well as the oral arguments.

This Court has entered a separate order: a) denying plaintiff's motion for judgment on the pleadings seeking to stay arbitration, b) granting defendant's motion to compel arbitration, c) granting defendant's motion for preliminary injunction, including findings of fact and conclusions of law. This Final Judgment of Injunction is entered pursuant to Rules

Case 4:05-cv-00863-JTF   Document 22-19   Filed 08/22/2005   Page 29 of 33

Not Reported in F.Supp.2d                                                    Page 15
Not Reported in F.Supp.2d, 2003 WL 23641529 (S.D.N.Y.)
**(Cite as: 2003 WL 23641529 (S.D.N.Y.))**

58 and 65(a)(2) of the Federal Rules of Civil Procedure.

**\*19** In light of the foregoing considerations, it is ORDERED and ADJUDGED as follows:

1. Paramedics Electromedicina Comercial Ltda. shall immediately cease prosecution of that certain action it filed on or about May 23, 2002, in the Tenth Civil Circuit Court of Porto Alegre. Brazil (the "Brazil Court"), entitled Tecnimed Paramedics Eletromedicina Comercial Ltda v. GE Marquette Medical Systems (now known as GE Medical Systems Information Technologies, Inc.) and General Eletric do Brasil, Case No. 110057156 (the "Brazil Action").

2. Subject only to the terms below, Paramedics Electromedicina Comercial Ltda. is hereby permanently enjoined and prohibited from prosecuting or pursuing any "Arbitral Claim" (as defined herein) in any forum other than that certain arbitration proceeding filed on April 22, 2002 before the Inter-American Commercial Arbitration Commission ("IACAC"), Case No. 50T 181 00195 02 (the "IACAC Arbitration").

3. If the arbitral tribunal in the IACAC Arbitration rules that any "Arbitral Claim" (as defined herein) is not arbitrable before it, then Paramedics Electromedicina Comercial Ltda. may petition this Court, on notice to GE Medical Systems Information Technologies, Inc. ("GEMS-IT"), for a modification of this Final Judgment of Injunction to allow it to pursue prosecution of such claims. Nothing herein shall operate to predetermine GEMS-IT's contention that the litigation of any such claims should be stayed pending the conclusion of the IACAC Arbitration.

4. As used herein, "Arbitral Claims" means any and all of the following:
i. Any and all claims and causes of action asserted by Paramedics Electromedicina Comercial Ltda. before the Brazil Court in the Brazil Action; and
ii. Any and all claims and causes of action within the scope of the arbitral clauses of either or both of the International Distributorship Agreement dated as of May 1, 1999, and/or the International Sales and Service Representative Agreement, dated as of May 1, 1999.

5. Nothing herein is intended to stay or enjoin the Office of the Attorney General of Brazil, or other Brazilian licensing and governmental authorities, from investigating and prosecuting GE Medical Systems Information Technologies, Inc., GE Marquette Medical Systems, Inc. or General Eletric do Brasil Ltda. for any alleged violations of Brazilian licensing laws or import regulations, including without limitation the investigation and prosecution by such authorities of any matters referred to them by Judge Roberto Carvalho Fraga.

6. Paramedics Electromedicina Comercial Ltda. (i) shall immediately apprise the presiding judge or judges in the Brazil Action of the entry of this Final Judgment of Injunction, and (ii) shall immediately take all steps necessary to cause dismissal of the Brazil Action without prejudice to any refiling which this Court might authorize in accordance with Paragraph 3 of this Final Judgment of Injunction. If such dismissal is not entered by June 17, 2003, then Paramedics Electromedicina Comercial Ltda. must provide a written explanation to this Court on or before June 20, 2003, and may also make any related application to this Court on or before June 24, 2003.

**\*20** 7. This Final Judgment of Injunction shall bind and enjoin Plaintiff Paramedics Electromedicina Comercial Ltda., its officers, agents, servants, employees, and attorneys and all persons in active concert or participation with them having actual notice of this Final Judgment of Injunction by personal service or otherwise.

8. This Court hereby retains jurisdiction over the cause, the parties and the subject matter of this lawsuit, in order to enforce the terms of this Final Judgment of Injunction.

9. The Clerk of this Court is directed to close this case administratively.

DONE AND ORDERED.

Not Reported in F.Supp.2d, 2003 WL 23641529 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

•          1:02cv09369          (Docket) (Nov. 22, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT C

**Westlaw.**

Slip Copy

Page 1

Slip Copy, 2005 WL 1862631 (W.D.Tex.)

**(Cite as: 2005 WL 1862631 (W.D.Tex.))**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Texas, San Antonio Division.
ALTERNATIVE DELIVERY SOLUTIONS, IND.,
a/k/a ADS Media Group, Inc., Plaintiff,
v.
R.R. DONNELLEY & SONS COMPANY and
Laboratorio Lito Color S.A. De C .V.,
Defendants.
**No. Civ.SA05CA0172-XR.**

July 8, 2005.

Edward F. Valdespino, Stephen Taylor Dennis,
Strasburger & Price, LLP, San Antonio, TX, for
plaintiff.

Brett W. Schouest, Ramon A. Molina, Michael B.
Goldberg, Cox, Smith, Matthews Incorporated,
Bennett L. Stahl, Loeffler, Jonas & Tuggey, LLP,
San Antonio, TX, for defendants.

ORDER

RODRIGUEZ, J.

**\*1** On this date, the Court considered Defendant
R.R. Donnelley & Sons Company ("Donnelley")'s
Motion to Dismiss (docket no. 5) and Defendant
Laboratorio Lito Color ("LLC")'s Motion to Dismiss
(docket no. 6) and the various responses and replies
thereto.

I. Facts & Procedural Background

On December 9, 2004, Plaintiff Alternative Delivery
Solutions a/k/a ADS Media Group, Inc ("ADS") filed
this suit against Defendants Donnelley and LLC in
state court in Bexar County alleging breach of
contract, fraud, fraudulent inducement, and negligent
misrepresentation. According to the petition, Plaintiff
and "Defendant" entered into a partnership agreement
and corresponding mutual nondisclosure agreement,
under which Donnelley and ADS would share
resources to commercialize and promote a project
called "La Canasta" and that ADS would share in
40% of the profits, while Donnelley would share in
60% of the profits. Although Plaintiff's petition refers
to Donnelley, the agreement was signed by ADS and
LLC. LLC is a Mexican company based in San Juan
Del Rio, State of Quereterro, Mexico. LLC is a wholly

owned subsidiary of R.R. Donnelley Mexico, S.A. de
C.V., another Mexican corporation, which, in turn is
a wholly owned subsidiary of Defendant Donnelley.
Under the agreement, the parties contemplated a joint
venture for the printing and distribution of high-
quality, color advertisements for distribution in
Mexican markets. LLC would print the ads at its
facility in Mexico and ADS would seek out and
secure advertisers who sell products in Mexico.
Plaintiff alleges that Donnelley has failed to perform
under the agreement, and sues for breach of contract.
In addition, Plaintiff alleges that Donnelley made
representations to ADS to induce ADS to enter into
the business opportunity, but never intended to
engage in the business opportunity. Thus, Plaintiff
sues for common-law fraud, fraudulent inducement,
and negligent misrepresentation. Plaintiff further
alleges that Donnelley and LLC are a single business
enterprise and should be held jointly and severally
liable. Last, Plaintiff alleges that Donnelley and LLC
are alter egos.

Defendant Donnelley timely removed this suit to this
federal court on the basis of diversity of citizenship.
Donnelley was served with process on its registered
agent, CT Corporation. Plaintiff attempted substitute
service for LLC via service on the Texas Secretary of
State; however, Defendants assert that LLC has not
yet been served.

Although it has not been served, Defendant LLC has
filed a motion to dismiss pursuant to Rule 12(b)(2)
for lack of personal jurisdiction, 12(b)(5) for
insufficient service of process, and 12(b)(6) based on
the existence of a forum selection clause in the
agreement requiring ADS to bring its claims in
Mexico City. Though it is not a signatory to the
agreement, Defendant Donnelley has also filed a
motion to dismiss based on the forum selection
clause, arguing that Plaintiff's suit should be
dismissed pursuant to Rule 12(b)(1) for lack of
subject matter jurisdiction, 12(b)(3) for improper
venue, 12(b)(6) for failure to state a claim, and under
28 U.S.C. § 1404(a).

II. LLC' Motion to Dismiss Based on Insufficient
Service of Process

**\*2** Plaintiff attempted to serve Defendant LLC by
utilizing the Texas long-arm statute's authorization
for substitute service on the Texas Secretary of State.
Service on a corporation in a foreign country in a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1862631 (W.D.Tex.)
(Cite as: 2005 WL 1862631 (W.D.Tex.))

federal court is governed by Federal Rule of Civil Procedure 4(h). Rule 4(h)(2) incorporates the service methods in Rule 4(f) and directs that service *in a place not within any U.S. judicial district* may be effected pursuant to any internationally agreed means, including the Hague Convention. Despite the fact that Mexico is a signatory to the Hague Convention, Plaintiff did not serve LLC pursuant to Rule 4(h)(2). [FN1] Rather, Plaintiff served process on LLC via the Texas Secretary of State pursuant to Rule 4(h)(1), which incorporates Rule 4(e)(1) and allows a plaintiff to serve a foreign corporation *within a judicial district of the United States* pursuant to the law of the state in which the district court is located. Thus, Plaintiff has attempted to serve Defendant LLC "within a judicial district of the United States" by substitute service on the Texas Secretary of State under Texas law.

> FN1. Plaintiff's petition states that Defendant LLC "may be served pursuant to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the 'Hague Convention') by delivering the Original Petition, summons and a Letter of Request for service, along with translated copies of each, to the Mexican Central Authority, the General Director of Legal Affairs of the Ministry of Foreign Affairs (la Direccion General de Asuntos Juridicos de la Secretaria de Relaciones Exteriores), Lic. Arturo Dager Gomez, Av. Ricardo Flores Magon No 1--Anexo II, Planta Alta, Colonia Tlatelolco, 06995, Mexico D.F., who will then effect service on [LLC]. In addition, pursuant to Section 17.044(a)(1) and 17.044(b) of the Texas Civil Practices and Remedies Code, the Texas Secretary of State is an agent for service of process on [LLC] because it has done substantial business in this state as set forth herein, it has not designated or maintained an agent for service of process and it does not maintain a regular place of business in this state. Therefore, [LLC] can be served through the Texas Secretary of State, who will then be directed to forward duplicate copies of the summons and this Petition by international registered mail to the corporate address of [LLC] as set forth above." Thus, though the petition alleges that both substitute service on the Secretary of State and service via the Hague Convention are proper, there is no indication that ADS has attempted to serve LLC in compliance with the Hague Convention.

Texas law provides that the Secretary of State "is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in [Texas] or a designated agent for service of process, in any proceeding that arises out of the business done in [Texas] and to which the nonresident is a party." Tex. Civ. Prac. & Rem.Code § 17.044(b). Under this law, the Secretary of State must send notice of service of process to a nonresident defendant via registered mail. *Id.* § 17.045(a), (d). Because the Secretary must mail the notice to Mexico, this transmittal of service documents abroad implicates the Hague Convention and its requirements.

Plaintiffs rely on *International Transaction, Ltd. v. Embotelladora Agral Regionmontana S.A. de C.V.*, 277 F.Supp.2d 654 (N.D.Tex.2002), in which the district court held that substitute service on the Texas Secretary of State on a Mexican corporation was permissible under the Texas Rules of Civil Procedure, comported with the Hague Convention, and did not violate the due process clause. *Id.* at 661. However, though there is disagreement among the circuits on the issue, the Fifth Circuit has held that the Hague Convention does not permit service by mail. *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 384 (5th Cir.2002). In addition, by virtue of the Supremacy Clause, the Convention preempts inconsistent methods of service prescribed by state law in all cases to which it applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). Thus, service via the Texas Secretary of State is insufficient because it requires service by mail, which fails to comply with the Hague Convention under Fifth Circuit law.

Defendant, however, does not argue that service is improper in this case because service by mail fails to comply with the Hague Convention, and thus the Court deems this argument waived. Rather, Defendant LLC argues that substitute service on the Secretary of State is insufficient in this case because LLC was not doing business in Texas such that the Secretary of State could properly be considered its agent. This argument requires an analysis of whether the Court has personal jurisdiction over Defendant LLC. Plaintiff argues that service on the Secretary as an agent for LLC was proper because LLC is subject to personal jurisdiction in Texas. However, because the Court finds the forum selection clause issue to be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1862631 (W.D.Tex.)
(Cite as: 2005 WL 1862631 (W.D.Tex.))

dispositive, it need not consider the personal jurisdiction issue. [FN2]

> FN2. The Supreme Court has said that it is permissible for courts to consider venue before personal jurisdiction. *Leroy v. Great W. United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *see also Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 589-90, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (resolving venue issues without considering the petitioner's constitutional argument as to personal jurisdiction).

### III. LLC's Motion to Dismiss based on the Forum Selection Clause

*3 Defendant LLC moves to dismiss pursuant to Rule 12(b)(6) because the dispute is subject to a valid forum selection clause. LLC contends that it is proper for the Court to consider the forum selection clause in the context of a Rule 12(b)(6) motion because ADS attached the Agreement that contains the clause to its Petition, and thus the basis for dismissal is apparent from the Plaintiff's complaint. Plaintiff argues that Defendant's forum-selection-clause defense should be held waived because, in failing to bring its motion to dismiss under Rule 12(b)(3), Defendant failed to invoke the proper procedural tool in its first responsive pleading and has thus waived the defense. Plaintiff contends that, while case law may exist from other jurisdictions stating that a 12(b)(6) motion is a proper tool to invoke dismissal based on a forum selection clause, district courts in the Fifth Circuit have found that Rule 12(b)(3) is the proper procedure for bringing such a defense. Alternatively, Plaintiff argues that if the Court finds it proper to treat the motion as one under 12(b)(3), the Court should allow it to carry its burden by setting forth facts that, taken as true, establish venue. Plaintiff contends that the Court should not enforce the forum selection clause because its incorporation into the agreement was a product of fraud, because it violates Plaintiff's fundamental constitutional right to a trial by jury, because the selected forum has no connection to any party, and because the selected forum will not provide ADS with an adequate remedy.

### A. Waiver

In 1997, the Fifth Circuit declined to reach the "enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under Fed.R.Civ.P. 12(b)(1), 12(b)(3), or 12(b)(6), or 28 U.S.C. § 1406(a)." [FN3] *Haynsworth v. The Corporation,* 121 F.3d 956, 961 (5th Cir.1997). More recently, in *Lim v. Offshore Specialty Fabricators, Inc.,* 404 F.3d 898, 902 (5th Cir.2005), the Fifth Circuit again discussed the proper procedural vehicle for asserting a motion to dismiss based on a forum selection clause:

> FN3. Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought ."

Our court has noted, but declined to address, the "enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under Fed.R.Civ.P. 12(b)(1) [or] 12(b)(3)...." In any event, our court has treated a motion to dismiss based on a forum selection clause as properly brought under Rule 12(b)(3) (improper venue). We have also affirmed, without comment on procedural posture, a district court's granting of a Rule 12(b)(3) motion to dismiss based on a forum selection clause. And, other circuits agree that a motion to dismiss based on an arbitration or forum selection clause is proper under Rule 12(b)(3).
Although circuits are split on the issue of whether Rule 12(b)(1) or 12(b)(3) is the proper motion for seeking dismissal based on a forum selection or arbitration clause, neither side has substantively briefed the merits of the question. Because *our court has accepted Rule 12(b)(3) as a proper method for seeking dismissal based on a forum selection clause,* we need not decide whether a Rule 12(b)(1) motion would be appropriate.
*4 *Id.* at 902 (citations omitted and emphasis added). Thus, the Court very recently acknowledged that it has accepted Rule 12(b)(3) as a proper method for seeking dismissal based on a forum selection clause, and this Court likewise accepts it as a proper method as Plaintiff urges.

The fact that the Fifth Circuit has accepted Rule 12(b)(3) as *a* proper method for seeking dismissal based on a forum selection clause does not rule out Rule 12(b)(6) as a possible vehicle in appropriate circumstances, however. Other circuits have concluded that Rule 12(b)(6) is a proper method for moving to dismiss pursuant to a forum selection clause. *See, e.g., Lambert v. Kysar,* 983 F.2d 1110, 1112 n. 1 (1st Cir.1993); *Instrumentation Assocs., Inc. v. Madsen Elecs.,* 859 F.2d 4, 6 n. 4 (3d Cir.1988). LLC contends that 12(b)(6) is proper in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.