# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| LAWRENCE P. ORGAN | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 1:05-cv-00867-JJF |
| MARC BYRON, BEN KAAK, and CATHERINE BARBARO | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

PRICKETT, JONES & ELLIOTT, P.A.
James L. Holzman (ID# 663)
J. Clayton Athey (ID# 4378)
1310 King Street
Wilmington, DE 19899
Telephone: (302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com

Of Counsel:

Robert B. Lovett
Christopher F. Robertson
SEYFARTH SHAW, LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
rlovett@seyfarth.com
crobertson@seyfarth.com

Dated: February 21, 2006

**Table of Contents**

Page

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT ............................................................................................................... 6

I.      PLAINTIFF'S ILLINOIS SECURITIES LAW CLAIM MUST BE DISMISSED. ........... 6

II.     THE DISMISSAL OF PLAINTIFF'S COMPLAINT SHOULD BE
        WITH PREJUDICE ...................................................................................... 8

        A.     A Claim Under the Delaware Securities Act Would Be Time Barred ................... 8

        B.     Delaware Common Law Fraud Claims Would Be Time Barred As Well............. 9

        C.     The Integration Clause In the Merger Agreement Also Bars Any
               Claims of Fraud or Fraudulent Inducement ........................................................ 12

        D.     The Contractual Limitations Period In the Merger Agreement Bars
               Any Potential Claims ........................................................................................... 14

CONCLUSION............................................................................................................ 15

i

# Table Of Authorities

Cases

*Abry Partners V, L.P. v. F & W Acquisition LLC,*
    2006 WL 358236 (Del. Ch. Feb. 14, 2006) ........................................................................ 1, 6

*Albert v. Alex. Brown Management Servs.,*
    No. Civ. A. 762-N, 2005 WL 1594085 (Del. Ch. June 29, 2005) ............................................. 9

*Benak v. Alliance Capital Mgmt.,*
    2006 WL 73440 (3d Cir. Jan. 13, 2006) ................................................................................. 11

*Brandywine One Hundred Corp. v. Hartford Fire Ins. Co.,*
    405 F. Supp. 147 (D. Del. 1975) ............................................................................................ 14

*Chaiken v. Publishing Corp.,*
    119 F.3d 1018 (2d Cir. 1997) ................................................................................................... 2

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ..................................................................................................... 3

*DeMarco v. Depotech Corp.,*
    149 F.Supp.2d 1212 (S.D. Cal. 2001) .................................................................................... 11

*Dongelewicz v. PNC Bank Nat'l Assoc.,*
    104 Fed. Appx. 811 (3d Cir. 2004) ........................................................................................... 8

*Ellis v. Great Southwestern Corp.,*
    646 F.2d 1099 (5th Cir. 1981) ................................................................................................... 6

*FDIC v. W.R. Grace & Co.,*
    No. 84 C 5031, 1987 WL 17495 (N.D. Ill. Sept. 21, 1987) ...................................................... 6

*Fike v. Ruger,*
    754 A.2d 254 (Del. Ch. 1999) ............................................................................................ 9, 10

*First Federal Sav. & Loan Assn. v. Nationwide Mut. Fire Ins. Co.,*
    460 A.2d 543 (Del. 1983) ...................................................................................................... 14

*Freedman v. Beneficial Corp.,*
    406 F. Supp. 917 (D. Del. 1975) ............................................................................................ 10

*Global Entertainment, Inc. v. New York Telephone Co.,*
    No. 00 Civ. 2959, 2000 WL 1672327 (S.D.N.Y. Nov. 6, 2000) ................................................ 6

*Great Lakes Chem. Corp. v. Pharmacia Corp.,*
    788 A.2d 544 (Del. Ch. 2001) ................................................................................................ 13

*Hill v. United States Dep't of Justice,*
    No. Civ. A. 02-250 GMS, 2003 WL 21640376 (D. Del. July 7, 2003) ...................................... 9

*H-M Wexford LLC v. Encorp.,*
    832 A.2d 129 (Del. Ch. 2003) ................................................................................................ 12

*In re Dean Witter Partnership Litig.*,
   1998 WL 442456 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999)......................... 10

*In re NAHC, Inc. Securities Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ....................................................................................... 11

*J.S. Alberici Constr. Co., Inc. v. Mid-West Conveyer Co., Inc.*,
   750 A.2d 518 (Del. 2000) .............................................................................................. 6

*Jablonski v. Pan American World Airways, Inc.*,
   863 F.2d 289 (3d Cir. 1988) .......................................................................................... 8

*Jackvony v. RIHT Fin. Corp.*,
   873 F.2d 411 (1st Cir. 1989)......................................................................................... 13

*Janice Doty Unlimited, Inc. v. Stoecker*,
   697 F. Supp. 1016  (N.D. Ill. 1988) ............................................................................... 6

*Kanematsu Corp. v. Advanced Materials Lanxide*,
   No. Civ. A. 01-190-JJF, 2002 WL 32332375 (D. Del. Sept. 30, 2002) (Farnan, J.)................. 3

*Katell v. Morgan Stanley Group, Inc.*,
   Civ. A. No. 12343, 1993 WL 10871 (Del. Ch. Jan. 14, 1993) ........................................... 8

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941)...................................................................................................... 6

*Kronos Prods., Inc. v. Sasib Bakery North America, Inc.*,
   No. 00 C 670, 2002 WL 1308637 (N.D. Ill. June 14, 2002) ............................................ 6

*Manley v. Engram*,
   755 F.2d 1463 (11th Cir. 1985) ................................................................................. 2, 6

*Martin v. Stokes*,
   623 F.2d 469 (6th Cir. 1980) ......................................................................................... 6

*Matthews v. Kidder, Peabody & Co., Inc.*,
   260 F.3d 239 (3d Cir. 2001) ......................................................................................... 11

*MBIA Ins. Corp. v. Royal Indemnity Co.*,
   426 F.3d 204 (3d Cir. 2005) ........................................................................................ 13

*Moore v. State*,
   No. Civ. A. 04-1396 JJF, 2005 WL 1799947 (D. Del. 2005) (Farnan, J.) ......................... 8

*Nedlloyd Lines B.V. v. Superior Court*,
   834 P.2d 1148 (Cal. 1992)............................................................................................. 7

*One-O-One Enters., Inc. v. Caruso*,
   848 F.2d 1283 (D.C. Cir. 1988)..................................................................................... 13

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) ........................................................................................ 11

*Playtex, Inc. v. Columbia Casualty*,
   1993 WL 390469 (Del. Super. Sept. 20, 1993) .............................................................. 9

*Pomeranz v. Museum Partners, L.P.,*
  No. Civ. A. 20211, 2005 WL 217039 (Del. Ch. Jan. 24, 2005) ............................................. 10

*Progressive Int'l Corp. v. E.I. DuPont de Nemours & Co.,*
  No. C.A. 19209, 2002 WL 1558382, (Del. Ch. July 9, 2002) ......................................... 12, 13

*Pryor v. NCAA,*
  288 F.3d 548 (3d Cir. 2002) ................................................................................................... 3

*Reading Int'l, Inc. v. St. Francis,*
  2005 WL 1654343 (Del. Super. June 17, 2005) ................................................................. 9, 10

*Rissman v. Rissman,*
  213 F.3d 381 (7th Cir. 2000) ............................................................................................... 13

*Scott v. Land Lords, Inc.,*
  616 A.2d 1214 (Del. Sept. 22, 1992) ................................................................................... 13

*Shaw v. Aetna Life Ins. Co.,*
  395 A.2d 384 (Del. Super. 1978) ......................................................................................... 14

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,*
  975 F.2d 1134 (5th Cir. 1992) ................................................................................................ 7

*Tobacco & Allied Stocks v. Transamerica Corp.,*
  143 F. Supp. 323 (D. Del. 1956), *aff'd,* 244 F.2d 902 (3d Cir. 1957) .................................. 9

*Turtur v. Rothschild Registry Int'l, Inc.,*
  26 F.3d 304 (2d Cir. 1994) ..................................................................................................... 7

*VGS, Inc. v. Castiel,*
  No. C.A. 17995, 2003 WL723285 (Del. Ch. Feb. 28, 2003)................................................... 7

*Wang Labs, Inc. v. Lee,*
  1989 WL 40916 (Del. Super. Apr. 19, 1989) ......................................................................... 8

*Woodward v. Farm Family Cas. Ins. Co.,*
  796 A.2d 638 (Del. 2002) ..................................................................................................... 14

*Wright v. Assoc. Ins. Cos. Inc.,*
  29 F.3d 1244 (7th Cir. 1994) .................................................................................................. 3

*WTM, Inc. v. Henneck,*
  125 F.Supp.2d 864 (N.D. Ill. 2000) ....................................................................................... 7

Statutes
10 Del.C. § 8106 ......................................................................................................................... 2, 10

10 Del.C. § 8121 ............................................................................................................................... 9

28 U.S.C. § 1404(a) .......................................................................................................................... 5

6 Del.C. § 7323(e) ......................................................................................................................... 2, 9

## PRELIMINARY STATEMENT

On November 23, 2005, United States District Judge James Zagel of the Northern District of Illinois transferred this case to this Court under 28 U.S.C. § 1406(a). In his Memorandum and Opinion ordering transfer (D.I. 21), Judge Zagel held that Plaintiff Lawrence Organ was bound by Article XII, Section 12.2 of the January 21, 2002 Merger Agreement he entered into with Mosaic Group, Inc., as to which the instant defendants were officers and/or directors. In addition to the forum selection clause that Judge Zagel properly invoked to transfer this case to Delaware, Section 12.2 of the Merger Agreement also contains a choice of law provision, providing that "all aspects of this Agreement will be governed by the internal laws of the State of Delaware." As discussed in detail below, the Merger Agreement not only required the Plaintiff to bring his case in Delaware, but the Delaware choice of law provision required him to bring claims related to the merger and Merger Agreement solely under Delaware law. Plaintiff's failure to do so, by asserting only a single count under the _Illinois_ Securities Law of 1953, is fatal to his Complaint, and mandates its dismissal.

The recent Delaware Chancery Court decision by Vice Chancellor Strine in _Abry Partners V, L.P._ is squarely on point. There, the court held that a Delaware choice of law provision applied not only to contract claims arising out of a stock purchase agreement, but also to claims seeking rescission of the agreement based upon claims of fraud or misrepresentation. _Abry Partners V, L.P. v. F & W Acquisition LLC_, 2006 WL 358236, at *12 (Del. Ch. Feb. 14, 2006). Judge Zagel, in transferring this matter, has already ruled that the Plaintiff's Illinois Securities Law claim, which alleges misrepresentations in connection with the merger, is "inextricably intertwined" with or "central" to the Merger Agreement. Under _Abry_, therefore,

1

Plaintiff's failure to allege any cause of action under Delaware law requires dismissal of his Illinois law Complaint.[1]

Moreover, Plaintiff's Complaint must be dismissed with prejudice because any attempt to cure its defects would be futile. Plaintiff cannot amend his claim to allege a violation of the Delaware Securities Act or any other provision of Delaware law. Those claims are time barred as a matter of law, and as a matter of contract under the Merger Agreement. Plaintiff concedes that the Merger Agreement was executed by all parties on January 21, 2002 – more than three years before he filed his original complaint on April 19, 2005. The Delaware Securities Act, 6 Del.C. § 7323, provides that "[n]o person may sue under this section more than 3 years after the contract of sale." Likewise, any Delaware common law or statutory claims are similarly governed by a three year statute of limitations. *See* 10 Del.C. § 8106. Because the omissions alleged by Plaintiff were publicly disclosed by Mosaic in January 2002, and again in February and March 2002, any common law or statutory claims are equally time-barred. Finally, as recognized by Judge Zagel the Merger Agreement contains an integration clause stating that all prior representations are subsumed into the Merger Agreement, which required any such claims to be brought on or before December 31, 2003. Merger Agreement, § 10.4. For all of these reasons, the Complaint should be dismissed with prejudice.

---

[1] It goes without saying that because the case was transferred by Judge Zagel under 28 U.S.C. § 1406(a), this Court must apply the choice of law rules of Delaware. *See, e.g., Chaiken v. Publishing Corp.*, 119 F.3d 1018, 1030 (2d Cir. 1997) (transfer under 28 U.S.C. § 1406(a) requires transferee court to apply its own choice of law rules); *Manley v. Engram*, 755 F.2d 1463, 1467 (11th Cir. 1985) (choice of law provisions of transferee court should apply).

## STATEMENT OF FACTS

Plaintiff Lawrence Organ was the Chief Executive Officer and a majority interest owner of Custom Offers LLC ("Custom Offers"), a limited liability company engaged in interstate commerce. Complaint, ¶ 2 (D.I. 1). Beginning in November 2001, Custom Offers engaged in merger discussions with Mosaic Group, Inc. ("Mosaic"), a corporation organized under the laws of the Province of Ontario, Canada. *Id.* at ¶¶ 3, 4, 17-20, 24-28. In connection with these discussions, the Plaintiff and the Defendants, directors and/or officers of Mosaic, were represented by counsel. *Id.* at ¶¶ 5-7, 17-20. On January 21, 2002, after a series of negotiations and discussions between the parties and their respective counsel and financial advisers, the parties entered into a comprehensive Merger Agreement under which Organ and the other Custom Offers interest holders exchanged their Custom Offers shares for shares of Mosaic. *Id.* at ¶¶ 3, 17-20, 24-28, 36. A copy of the Merger Agreement is attached as Exhibit A to the Defendants' Motion to Dismiss.[2] In accordance with the Merger Agreement, two Delaware corporations were established to effectuate the merger, and the merger was conducted pursuant to Delaware law. Merger Agreement, pp. 1, 59.

The Merger Agreement, signed by Organ individually and in his capacity as CEO of Custom Offers, contains a binding choice of law clause. Merger Agreement, p. 59. Specifically, Article XII, Section 12.2 of the Merger Agreement states:

> The Merger will be governed by Delaware Law to the extent applicable, and all aspects of this Agreement will be governed by the internal laws of the State of Delaware.

---

[2] Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the Plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss. *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002). *See also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (court may consider document on motion to dismiss that is referred to or is integral in allegations of the complaint); *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (same); *Kanematsu Corp. v. Advanced Materials Lanxide*, No. Civ. A. 01-190-JJF, 2002 WL 32332375, at *4 (D. Del. Sept. 30, 2002) (Farnan, J.) (considering documents referred to in complaint on motion to dismiss).

In addition, Section 12.1 of the Merger Agreement contains an integration clause, providing that the Agreement "supercedes all prior agreements, negotiations, correspondence, undertakings and communications of the parties, whether oral or written, respecting that subject matter." *Id.*

Over three years after the signing the Merger Agreement and agreeing to bring any proceedings related to the merger in Delaware under Delaware law, Organ filed suit in Illinois under the Illinois Securities Law of 1953 against the within named Mosaic officers and/or directors seeking rescission of the Merger Agreement and money damages resulting from the merger. Specifically, Organ maintains that the Defendants engaged in a course of conduct with regard to the merger that was "deceptive and created a misleading picture of Mosaic's business condition and financial performance." Complaint, ¶¶ 21, 24-28. Organ further maintains that he relied on the Defendants' allegedly false representations in agreeing to execute the Merger Agreement and sell his Custom Offers' ownership interest to Mosaic. *Id.* at ¶¶ 21-52. As a result of this alleged reliance, Organ maintains that he would not have proceeded with the merger and signed the Merger Agreement had any of the Defendants disclosed certain facts of which he was allegedly unaware at the time of the merger transaction.[3] *Id.* at ¶ 48.

On June 30, 2005, the Defendants moved in the Northern District of Illinois to dismiss Organ's Complaint, arguing that venue was improper because the forum selection clause in the Merger Agreement required Organ's claims to be brought in Delaware. After the issue was fully briefed by the parties, Judge Zagel of the Northern District of Illinois held that Section 12.2 of

---

[3] Although it is irrelevant to the present motion, the Defendants deny that they made any misrepresentations to the Plaintiff or omitted any material facts. To the contrary, each and every alleged "omission" cited by the Plaintiff was discussed with him in detail prior to his execution of the Merger Agreement. In addition, numerous publicly available documents reflect that the allegedly omitted information was known to the Plaintiff and his counsel. Mr. Organ's baseless allegations aside, he has not alleged, because he cannot, that the choice of law clause was not reviewed and understood by him and his legal and financial advisers at the time he executed the Merger Agreement, or that there is any basis whatsoever to assert a claim under Illinois law.

the Merger Agreement, which contains both the choice of law and choice of forum provisions, is enforceable against Organ, and required him to bring his claims in Delaware.  In doing so, Judge Zagel found that "all of [Organ's] claims relate directly to the execution of the Merger Agreement and are inextricably intertwined with the merger."  Memorandum and Opinion at 4. Judge Zagel then transferred the case to this Court pursuant to 28 U.S.C. § 1406(a).

## ARGUMENT

**I.     PLAINTIFF'S ILLINOIS SECURITIES LAW CLAIM MUST BE DISMISSED.[4]**

Under Delaware law, the Delaware choice-of-law provision in the Merger Agreement requires dismissal of Plaintiff's Illinois Securities Law claim.[5]  The recent decision in *Abry Partners V, L.P. v. F & W Acquisition LLC*, is on point.  In that case, Vice Chancellor Strine recognized that "[t]he courts of Delaware are bound to respect the chosen law of contracting parties, so long as that law has a material relationship to the transaction."  2006 WL 358236, at *12 (citing *J.S. Alberici Constr. Co., Inc. v. Mid-West Conveyer Co., Inc.*, 750 A.2d 518, 520 (Del. 2000)).  Applying this longstanding Delaware principle to the claims at issue in that case, the court held that a Delaware choice of law provision in a Stock Purchase Agreement required the application of Delaware law not just to breach of contract claims asserted by the plaintiff, but also to claims of rescission based upon alleged misrepresentations.  *Id.* at 13.  Quoting § 201 of the Restatement (Second) of Conflict of Law, Vice Chancellor Strine held:

---

[4] Following a transfer of an action under 28 U.S.C. § 1406(a), the transferee court "must apply the choice of law rules of the state in which it sits," in this case Delaware.  *Global Entertainment, Inc. v. New York Telephone Co.*, No. 00 Civ. 2959, 2000 WL 1672327, at *2 n.2 (S.D.N.Y. Nov. 6, 2000).  *See Martin v. Stokes*, 623 F.2d 469, 472 (6th Cir. 1980) ("following a transfer under § 1406(a), the transferee district court should apply its own state law rather than the state law of the transferor district court"); *Manley v. Engram*, 755 F.2d 1463, 1467 (11th Cir. 1985) (transferee court applies its own law when transfer is pursuant to 28 U.S.C. § 1406(a)); *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1110 (5th Cir. 1981) (transferee court receiving transfer under 28 U.S.C. § 1406(a) applies choice of law rules in the state in which it sits).  A federal court sitting in diversity also applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[5] The result would be the same under Illinois law.  *See Janice Doty Unlimited, Inc. v. Stoecker*, 697 F. Supp. 1016, 1019 (N.D. Ill. 1988) (choice of law provision in agreement required dismissal of plaintiff Illinois statutory claims); *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill.App.3d 755, 759, 509 N.E.2d 751, 754 (2d Dist. 1987) (same); *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill.2d 522, 322 N.E.2d 454 (1975) (Georgia choice of law provision in an insurance contract required the dismissal of claims under the Illinois Insurance Code, "even though the misrepresentation allegedly took place before the decedent entered into the contract for insurance"); *see also Kronos Prods., Inc. v. Sasib Bakery North America, Inc.*, No. 00 C 670, 2002 WL 1308637, at *5 (N.D. Ill. June 14, 2002) (choice of law clause designating Texas law barred claim); *FDIC v. W.R. Grace & Co.*, No. 84 C 5031, 1987 WL 17495, at *4 (N.D. Ill. Sept. 21, 1987) (dismissing Texas and Oklahoma securities claims where loan documents designated Illinois law).  Thus, applying the Delaware choice of law provision to invalidate Plaintiff's Illinois Securities Law claims also does not violate any fundamental public policy of Illinois.

> Parties operating in interstate and international commerce seek, by a choice of law provision, certainty as to the rules that govern their relationship. To hold that their choice is only effective as to the determination of contract claims, but not as to tort claims seeking to rescind the contract on grounds of misrepresentation, would create uncertainty of precisely the kind that the parties choice of law provision sought to avoid.

*Id.* (citing *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1154 (Cal. 1992)). *See VGS, Inc. v. Castiel*, No. C.A. 17995, 2003 WL 723285, at *7 n.29 (Del. Ch. Feb. 28, 2003) (citing § 201 of the Restatement (Second) of Conflict of Laws with approval and holding that the law governing the agreements between the parties also governs fraud and negligent misrepresentation claims seeking relief for fraudulent inducement of the contract); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1142 (5th Cir. 1992) (following § 201 of the Restatement (Second) of Conflict of Laws and holding that fraudulent inducement claim subject to choice of law provision in agreement); *see also Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309-10 (2d Cir. 1994) (New York choice of law provision required dismissal of Texas Securities Act claims); *WTM, Inc. v. Henneck*, 125 F.Supp.2d 864, 867-68 (N.D. Ill. 2000) (Illinois choice of law provision required dismissal of Minnesota Securities Act claims).

Judge Zagel has already opined in this case, and there can be no doubt that the Merger Agreement[6] and that its choice of law provision designating Delaware law is enforceable against the Plaintiff. Here, where the only claim asserted by the Plaintiff is an Illinois Securities Law claim seeking rescission of the Merger Agreement based upon alleged misrepresentations and fraudulent inducement, the contractual Delaware choice of law provision requires dismissal of

---

[6] As noted by Vice Chancellor Strine In *Abry*, "As a matter of commercial logic, it also makes sense that the Buyer and Seller would choose Delaware law to govern their relations. Although each was physically located in a different New England state and although the company was headquartered in Ohio, the Buyer and Seller were operating in interstate commerce and wanted a reliable body of law to govern their relationship. They therefore chose the law of the state each had looked to in choosing their judicial home and whose law they wished to have govern their entities. By this means, Buckeyes, Quahogs, and Minutemen could come together using the common language of the Blue Hen, which each embraced as setting forth a reliable and fair set of rules for their commercial relationship." 2006 WL 358236, at *13.

Plaintiff's Complaint in its entirety. *Abry*, 2006 WL 358236, at *14 (where parties to stock purchase agreement made an effective choice of law, "that law governs the Buyer's attempt to avoid the Agreement").

## II.    THE DISMISSAL OF PLAINTIFF'S COMPLAINT SHOULD BE WITH PREJUDICE

Faced with the required dismissal of his Illinois Securities Law claim, Plaintiff will no doubt seek leave to amend his complaint to allege claims under either Delaware statutory or common law. Such leave should be denied because any Delaware statutory or common law claim that might be asserted by the Plaintiff claims would be time-barred. "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (affirming denial of leave to amend where amended claims would be time-barred). *See Dongelewicz v. PNC Bank Nat'l Assoc.*, 104 Fed. Appx. 811, 815 (3d Cir. 2004) (affirming district court's denial of motion to amend where claims were barred by statute of limitations and therefore "would be futile"); *Moore v. State*, No. Civ. A. 04-1396 JJF, 2005 WL 1799947, at *2 (D. Del. 2005) (Farnan, J.) (denying leave to amend where claims barred by statute of limitations and amendment would be futile).

### A.    A Claim Under the Delaware Securities Act Would Be Time Barred

The civil liability provisions of the Delaware Securities Act, 6 Del.C. § 7323(e) state that "[n]o person may sue under this section more than 3 years after the contract of sale."[7] As

---

[7] Even if the Plaintiff could somehow argue that his Illinois Securities Act claims survive the choice-of-law provision in the Merger Agreement, those claims are also time-barred. Specifically, 10 Del.C. § 8121 provides that an action cannot be brought in a Delaware court "after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose." Thus, Delaware "statutory law expressly provides that Courts choose the *shorter* limit when such issues arise." *Katell v. Morgan Stanley Group, Inc.*, Civ. A. No. 12343, 1993

Plaintiff concedes, the "contract of sale" in this case, the Merger Agreement, was signed on January 21, 2002, well over three years before the Plaintiff filed his action in Illinois on April 19, 2005. Thus, any claim by Plaintiff under the Delaware Securities Act would be time-barred under the clear language of the statute.

## B.    Delaware Common Law Fraud Claims Would Be Time Barred As Well

Likewise, any Delaware common law claims for fraudulent inducement or fraudulent misrepresentation would also be time-barred.[8] "Delaware has a three-year 'accrual' statute of limitations for fraud." *Playtex, Inc. v. Columbia Casualty*, 1993 WL 390469, at *3 (Del. Super. Sept. 20, 1993). "A cause of action for fraud accrues at the time the fraud is perpetrated." *Reading Int'l, Inc. v. St. Francis*, 2005 WL 1654343, at *1 (Del. Super. June 17, 2005) (dismissing claim as time barred). *See Tobacco & Allied Stocks v. Transamerica Corp.*, 143 F. Supp. 323, 328 (D. Del. 1956) ("a cause of action for fraud accrues, and the period begins to run, when the fraud is successfully perpetrated"), *aff'd*, 244 F.2d 902 (3d Cir. 1957). Moreover, "a cause of action accrues under 10 Del.C. § 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action." *Albert v. Alex. Brown Management Servs.*, No. Civ. A. 762-N, 2005 WL 1594085, at *13 (Del. Ch. June 29, 2005); *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999) ("a cause of action accrues at the moment of the wrongful act, even if plaintiff is ignorant of the wrong"). In this case, the alleged fraud was perpetrated, and the cause of action accrued, on January 21, 2002. Well over three years had passed before Plaintiff brought his action on April 19, 2005.

---

WL 10871, at *7 (Del. Ch. Jan. 14, 1993). *See also Wang Labs, Inc. v. Lee*, 1989 WL 40916, at *6 (Del. Super. Apr. 19, 1989) ("the Court must choose the shorter limitation period between Delaware and the State in which the cause of action arises"). Here, where the Delaware Securities Act clearly bars Plaintiff's claim, the limitations period under Illinois law is irrelevant. Nonetheless, the Illinois statute also has a three year period in which to bring a claim, under which the claim would be equally barred.

[8] The limitations period for contract actions is also three years. *See Hill v. United States Dep't of Justice*, No. Civ. A. 02-250 GMS, 2003 WL 21640376, at *2 n.6 (D. Del. July 7, 2003) ("the statute of limitations for contractual actions in Delaware is three years") (citing 10 Del.C. § 8106).

Nor can Plaintiff toll the statute of limitations to resurrect a claim under Delaware law. The burden of showing that the statute should be tolled rests with the party asserting the tolling. *See Pomeranz v. Museum Partners, L.P.*, No. Civ. A. 20211, 2005 WL 217039, at *2 (Del. Ch. Jan. 24, 2005) (party asserting the tolling "bear[s] the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled.") (quoting *In re Dean Witter Partnership Litig.*, 1998 WL 442456, at *6 n.44 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999); *Freedman v. Beneficial Corp.*, 406 F. Supp. 917 (D. Del. 1975). In meeting that burden, the Plaintiff must demonstrate that there were no facts available that would have raised concerns or suspicions that he a cause of action might exist. *See Reading Int'l*, 2005 WL 1654343, at *2 (facts raising a "suspicion" puts party "on notice for purposes of the statute of limitations"); *Pomeranz*, 2005 WL 217039, at *12 ("having all the facts necessary to articulate the wrong is not required"); *see also Benak*, 2006 WL 73440, at *4 (plaintiffs cannot avoid the time bar by simply claiming they lacked knowledge of the details or "narrow aspects" of the alleged fraud). A plaintiff seeking to avoid the limitations bar must further demonstrate that he did not fail to "exercise his right to obtain information." *Fike v. Ruger*, 754 A.2d at 262.

Here, the foundation of Plaintiff's fraud claim is that the Defendants failed to inform him of the termination of Mosaic's contract with AT&T Wireless, and the resulting "churn chargeback" caused by the termination of that agreement. *See* Complaint, *passim*. Plaintiff alleges that had he known these facts, he would not have completed the merger. Mosaic, however, publicly disclosed the termination of the AT&T Wireless contract in a filing with the Ontario Securities Commission on January 24, 2002.[9] Moreover, Mosaic's publicly filed

---

[9] These documents are filed as Exhibits B and C to the Motion to Dismiss. Further disclosure was contained in Mosaic's 2001 Annual Report, filed with the OSC in March 2002, and attached as Exhibit D. Although numerous documents demonstrate that Mr. Organ had full and complete disclosure of the status of the AT&T Wireless negotiations and agreement prior to his decision to close the merger, for purposes

financial statements for fiscal 2001, filed with the Ontario Securities Commission on February 28, 2002, further disclosed "an aggressive restructuring" that included the termination of Mosaic's "direct marketing customer acquisition contract with AT&T Wireless."[10] This public disclosure also discussed in detail the "churn chargeback" issue, disclosing that Mosaic "records the estimated churn chargeback as a reduction in revenues at the time revenue is first recognized." Mosaic also disclosed that the contract was terminated in the fourth quarter, and that it might have "a resulting negative impact on the Company's working capital position."[11] The very facts, therefore, that Plaintiff alleges were withheld from him were disclosed publicly by the Company no later than the end of February 2002, still well over three years before he filed the present action.[12] *See, e.g., Benak,* 2006 WL 73440, at *4 (Investors are "charged with knowledge of publicly available news articles and analyst's reports to the extent that they constitute storm warnings sufficient to trigger inquiry notice"); *Matthews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 239, 252 (3d Cir. 2001) ("[I]nvestors are presumed to have read prospectuses,

___

of the present motion the Defendants are citing only to publicly filed documents of which the Court may take judicial notice, such as filings with the Ontario Securities Commission found at www.sedar.com/homepage_en.htm. Irrespective of what information Mr. Organ possessed before this time, he was certainly aware of the termination of the AT&T Wireless agreement and "churn chargeback" issue no later than February 28, 2002, well over three years before he filed the present complaint.

[10] It is well settled that courts may take judicial notice of publicly filed documents such as those filed by Mosaic with the Ontario Securities Commission. *See, e.g., In re NAHC, Inc. Securities Litig.,* 306 F.3d 1314, 1331 (3d Cir. 2002) (taking judicial notice of documents filed with SEC); *Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir. 2000) (courts are permitted to take judicial notice of properly authenticated public disclosure documents filed with the SEC); *DeMarco v. Depotech Corp.,* 149 F.Supp.2d 1212, 1218-19 (S.D. Cal. 2001) (taking judicial notice of notice issued by Canadian regulatory agency). Judicial notice of these documents is particularly appropriate when they are offered to demonstrate "what was in the public realm at the time." *Benak v. Alliance Capital Mgmt.,* 2006 WL 73440, at *4 n.15 (3d Cir. Jan. 13, 2006) (affirming district court's judicial notice of newspaper articles for the purpose of demonstrating that plaintiffs were on inquiry notice of certain facts relating to their claims).

[11] The termination of the AT&T Wireless contract was also disclosed again in March 2002 in the Company's annual report to shareholders. *See* Exhibit D.

[12] To the extent that the Plaintiff would argue that this publicly available information did not constitute a storm warning, he need look no further than his own complaint, in which he states that one of the core reasons he sold his business to Mosaic was because of its contract with AT&T Wireless. An argument that the disclosure a month later that this contract was terminated did not raise any "suspicions" or "concerns" with the Plaintiff is simply not credible.

quarterly reports, and other information relating to their investments"). Even giving Plaintiff every benefit of the doubt, under no set of circumstances could the limitations period be tolled beyond February 2002. Thus, were Plaintiff allowed to amend his complaint, any Delaware claims he might bring would be subject to dismissal as untimely, rendering such amendment futile.[13]

### C.    The Integration Clause In the Merger Agreement Also Bars Any Claims of Fraud or Fraudulent Inducement

Likewise, any claims of misrepresentation or fraud preceding the merger would be subject to dismissal under Delaware law as barred by the integration clause contained in the Merger Agreement. As noted by Judge Zagel, Section 12.1 of the Merger Agreement provides that the Merger Agreement "supercedes all prior communications among the parties, which would include some of the communications alleged in the Complaint, and Article V provides the specific representations and warranties given by Mosaic to Plaintiff." Memorandum and Opinion, at 7 n.5. Any fraud or fraudulent inducement claims are therefore subject to dismissal under Delaware law.

"Absent fraud or other unconscionable circumstances not present here, the existence of an integration clause between sophisticated parties is conclusive evidence that the parties intended the written contract to be their complete agreement." *Progressive Int'l Corp. v. E.I. DuPont de Nemours & Co.*, No. C.A. 19209, 2002 WL 1558382, at *7 (Del. Ch. July 9, 2002) (dismissing claims and finding that reliance on alleged prior oral statements was unreasonable as a matter of law in light of integration clause). *See also H-M Wexford LLC v. Encorp.*, 832 A.2d 129, 141 (Del. Ch. 2003) (integration clause required dismissal of claims based on

---

[13] Because none of the Defendants in this case signed the Merger Agreement individually, Plaintiff could not allege breach of contract claims against them. Nonetheless, such contract claims would also be time barred, because the Merger Agreement contained a contractual limitations period, requiring that any claims for breach of the agreement be brought on or before December 31, 2003.

communications not expressly incorporated into agreement); *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 552 (Del. Ch. 2001) (integration clause prohibits claims based on alleged prior oral representations); *Scott v. Land Lords, Inc.*, 616 A.2d 1214 (Del. Sept. 22, 1992) (integration clause reflected that written document evidenced complete agreement between the parties and prior oral statements were not actionable).

There is no question the parties to the Merger Agreement were sophisticated and represented by counsel, as Judge Zagel already held in enforcing the Merger Agreement against the Plaintiff.   As such, Plaintiff must overcome a significant burden regarding his alleged reliance on prior oral statements by non-parties to the agreement.  *See MBIA Ins. Corp. v. Royal Indemnity Co.*, 426 F.3d 204, 216-17 (3d Cir. 2005) (affirming dismissal of fraud in the inducement claim based upon integration clause).  In *MBIA Ins. Corp.*, for example, the Third Circuit cited *Progressive* as "persuasive" and held that even integration clauses that lack specificity are fully enforceable to defeat fraudulent inducement claims, where "the method of identification is hammered out by sophisticated parties aided by consummate legal professionals."  426 F.3d at 218 (citing *Progressive*, 2002 WL 1558382, at *10).  *See, e.g., AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 180-181 (3d Cir. 2003) (recognizing that a sophisticated party represented by counsel in extensive negotiations will have to "show more to justify its reliance" in the face of an integration clause); *Rissman v. Rissman*, 213 F.3d 381, 384 (7th Cir. 2000) (recognizing that sophistication of parties creates higher burden to show reasonable reliance in face of integration clause); *Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411 (1st Cir. 1989) (sophistication of parties and representation by counsel significant factor in assessing reliance in face of integration clause); *One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283 (D.C. Cir. 1988) (dismissing fraud claims in face of integration clause where sophisticated parties conducted

13

extensive negotiations aided by counsel and advisers). Here, Plaintiff has alleged no facts that would provide a basis for him to avoid the integration clause contained in the Merger Agreement.

**D.    The Contractual Limitations Period In the Merger Agreement Bars Any Potential Claims**

Judge Zagel previously held that the Plaintiff's fraudulent inducement claims were "inextricably intertwined" with the Merger Agreement.   Moreover, Judge Zagel noted that Articles V and XII of the Merger Agreement require that all claims alleging misrepresentations by the Defendants must flow through the express representations in the Merger Agreement.  As such, any potential claims alleging misrepresentations would be subject to the contractual limitations period in the Merger Agreement, including Article X's requirement that all such claims be brought on or before December 31, 2003. *See Woodward v. Farm Family Cas. Ins. Co.*, 796 A.2d 638, 642-43 (Del. 2002) (enforcing contractual limitations period contained in insurance agreement); *First Federal Sav. & Loan Assn. v. Nationwide Mut. Fire Ins. Co.*, 460 A.2d 543, 546 (Del. 1983) (rejecting arguments by insured that it could avoid contractual limitations period in insurance agreement); *Shaw v. Aetna Life Ins. Co.*, 395 A.2d 384, 386 (Del. Super. 1978) (contractual limitations periods shorter than statutory period are valid id reasonable); *Brandywine One Hundred Corp. v. Hartford Fire Ins. Co.*, 405 F. Supp. 147, 151 (D. Del. 1975) (dismissing case filed after one-year contractual limitations period in agreement). Thus, in addition to all of the other reasons set forth above, any fraud or fraudulent inducement claims that might be brought by Plaintiff would further be barred by this contractual limitations period.

## CONCLUSION

For all of the foregoing reasons, the Defendants respectfully request that this Court dismiss the Plaintiff's Complaint. Moreover, because any amendment would be futile, the Complaint should be dismissed with prejudice.

PRICKETT, JONES & ELLIOTT, P.A.

James L. Holzman (ID#663)
J. Clayton Athey (ID#4378)
1310 King Street
Wilmington, DE 19899
Telephone: (302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com

Of Counsel:

Robert B. Lovett
Christopher F. Robertson
SEYFARTH SHAW, LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
rlovett@seyfarth.com
crobertson@seyfarth.com

Dated: February 21, 2006

15

## CERTIFICATE OF SERVICE

I, J. Clayton Athey, hereby certify that on this 21st day of February, 2006, I caused a copy

of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO

DISMISS to be served on counsel for the parties via e-file:

> Jeffrey S. Goddess, Esquire
> Rosenthal Monhait Gross & Goddess
> 919 Market Street
> Suite 1401
> Wilmington, DE 19801

J. Clayton Athey (ID#4378)