EXHIBIT 1

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1996 WL 717464 (N.D.Ill.)

**(Cite as: 1996 WL 717464 (N.D.Ill.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
Mary Jane ASHENDEN, et al., Plaintiffs,
v.
LLOYD'S OF LONDON, et al., Defendants.
**No. 96 C 852.**

Dec. 9, 1996.

*MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

**\*1** This action is one of the many suits brought against Lloyd's of London by U.S. investors or former investors. The circumstances surrounding these suits against Lloyd's are more fully set forth in *Bonny v. Society of Lloyd's,* 3 F.3d 156, 158-59 (7th Cir. 1993); see also generally *Ashenden v. Lloyd's of London,* 934 F. Supp. 992 (N.D. Ill. 1996). The plaintiffs here are Illinois residents who are or were Members of Lloyd's and who allege that Lloyd's fraudulently induced them to invest in high-risk insurance syndicates in the Lloyd's market. Presently pending before the court is Lloyd's motion to dismiss for improper venue based on a forum selection clause included in Lloyd's membership contracts with the plaintiffs. For the following reasons, we grant the motion to dismiss.

RELEVANT FACTS

The plaintiffs in this action are all Illinois residents who are current or former members of Lloyd's of London and investors in Lloyd's insurance syndicates. [FN1] The plaintiffs, who were solicited in Illinois by Lloyd's Member Agents, allege that they were induced by Lloyd's to make extremely risky investments without being apprised of that risk.

> FN1. Since this motion was filed, 36 of the plaintiffs have settled with Lloyd's and have been dismissed from the case. This Order applies only to the remaining nine plaintiffs' claims.

As part of obtaining or retaining their membership in Lloyd's, each plaintiff signed an agreement with Lloyd's called a General Undertaking. *See* Def.'s Br. in Supp. of Mot. Dismiss, Ex. A, ¶ 7. The General Undertaking specified that any dispute arising out of their membership in Lloyd's or their investments in a Lloyd's syndicate must be litigated in England, and would be governed by English law. *Id.; see also* Mot. to Dismiss, Ex. B (General Undertaking), ¶ 2.2.

The plaintiffs originally brought this action in the Circuit Court of Cook County, Illinois, alleging violations of the Illinois Securities Act by Lloyd's and certain Member's Agents. In their nine count complaint, the plaintiffs allege that Lloyd's sold unregistered securities, failed to register its securities, failed to register itself as a dealer of securities, and failed to file an application to register as a dealer. In addition, the plaintiffs allege that Lloyd's' sale of securities worked a fraud on investors, that Lloyd's made material misrepresentations and omissions in the sale of securities, that Lloyd's employed a scheme to defraud investors, that Member's Agents engaged in fraudulent business practices while acting as investment advisors, and that Lloyd's violated the Illinois Consumer Fraud and Deceptive Business Practices Act.

Lloyd's removed this action to the United States District Court, and we denied the plaintiffs' motion to remand. *See Ashenden v. Lloyd's of London,* 934 F. Supp. 992 (N.D. Ill. 1996). Lloyd's now moves to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 2

Not Reported in F.Supp., 1996 WL 717464 (N.D.Ill.)

**(Cite as: 1996 WL 717464 (N.D.Ill.))**

dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), based on the forum selection clause contained in the General Undertaking and the doctrine of forum non conveniens.

### LEGAL STANDARDS

A motion to dismiss based on a forum selection clause is properly brought under Federal Rule of Civil Procedure 12(b)(3). *Frietsch v. Refco, Inc.,* 56 F.3d 825, 830 (7th Cir. 1995). In deciding a 12(b)(3) motion, "the court may examine facts outside the complaint in order to determine if venue is proper." *Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgesellschaft MbH,* 699 F. Supp. 669, 670 (N.D. Ill. 1988); *see also Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996). Indeed, motions based on forum selection clauses often apply summary judgment standards, and thus the Court does not pass on the truth or merit of the allegations. *See Argueta,* 87 F.3d at 324; *Bank Melli Iran v. Pahlavi,* 58 F.3d 1406, 1408 (9th Cir. 1995). Generally, plaintiffs have the burden of establishing proper venue. *First Financial Leasing Corp. v. Hartge,* 671 F. Supp. 538, 542 (N.D. Ill. 1987).

### ANALYSIS
### THE FORUM SELECTION CLAUSE

*2 The primary basis for Lloyd's' motion to dismiss is the forum selection clause included in the General Undertaking agreement entered into by Lloyd's and each of the plaintiffs. Lloyd's argues that the forum selection clause specifying English courts must be enforced, and this lawsuit dismissed for improper venue. The plaintiffs assert that venue is proper in Illinois because the forum selection clause is unenforceable for two reasons. They first contend that enforcement of the clause would violate important policies behind Illinois' securities laws and would deprive them of substantive rights under Illinois law. The plaintiffs also argue that Illinois law allows them to void their membership agreements with Lloyd's, and that this would necessarily void the forum selection clause as well. We address these arguments in turn.

*A. The Forum Selection Clause Is Not*

*Unreasonable*

The enforceability of forum selection clauses in international agreements is governed by *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972), in which the Supreme Court held that forum selection clauses are "prima facie valid and should be enforced" unless shown to be unreasonable under the circumstances. As construed by the Seventh Circuit in *Bonny,* forum selection clauses are "unreasonable" only:

(1) if their incorporation into the contract was the result of fraud, undue influence or overweening bargaining power; (2) if the selected forum is so 'gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court' ... ; or (3) if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*Bonny v. Society of Lloyd's,* 3 F.3d 156, 160 (7th Cir. 1993) (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 591 (1991) and *The Bremen,* 407 U.S. at 12-13, 15, 18).

The plaintiffs assert that the forum selection and choice of law clauses contained in the General Undertaking are unreasonable under the third of these principles--that enforcement would contravene a strong public policy of the original forum--because the application of English law would undermine the plaintiffs' substantive rights under Illinois' securities laws, thereby violating Illinois public policy. The fundamental flaw with the plaintiffs' assertions is that the Seventh Circuit addressed and dismissed similar arguments while enforcing identical forum selection and choice of law clauses in *Bonny.*

In *Bonny,* the plaintiffs complained that Lloyd's forum selection and choice of law clauses operated as a prospective waiver of statutory remedies for federal securities law violations. *Bonny,* 3 F.3d at 159. The court noted that because of the anti-waiver provisions in the securities laws, allowing "Lloyd's to avoid liability for putative violations ... would contravene important American policies unless

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 3

Not Reported in F.Supp., 1996 WL 717464 (N.D.Ill.)

(Cite as: 1996 WL 717464 (N.D.Ill.))

remedies available in the selected forum do not subvert the public policy of that Act." *Id.* at 161. The court found, however, that a variety of possible remedies would be available to the plaintiffs under English law, including common law actions for fraud, rescission, breach of fiduciary duty and breach of contract, in addition to some statutory remedies. While the Lloyd's Act of 1982 grants Lloyd's immunity from suit in many circumstances, there is no immunity if Lloyd's acted in bad faith--which the plaintiffs in *Bonny* and in this case alleged. The Seventh Circuit thus found that English law "vindicate[d] plaintiffs' substantive rights while not subverting the United States' policies of insuring full and fair disclosure by issuers and deterring the exploitation of United States investors." [FN2] *Id.*

> FN2. Other circuits have also concluded that the remedies available under English law satisfy the policies behind federal securities laws. *See Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1365-66 (2nd Cir. 1993); *Allen v. Lloyd's of London,* 94 F.3d 923, 929 (4th Cir. 1996); *Shell v. R.W. Sturge, Ltd.,* 55 F.3d 1227, 1231 (6th Cir. 1995); *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 958 (10th Cir. 1992). Indeed, no circuit addressing this issue has held English law to be inadequate.

*3 *Bonny* did not directly address this policy issue with respect to Illinois securities law claims, which were not present in that case. The plaintiffs assert that the policy behind the Illinois securities laws, unlike that behind federal securities laws, "is the prevention of unregulated sales of securities in Illinois to Illinois residents," and that this policy would be frustrated if the forum selection clause were enforced. This description of Illinois' policy interests is too narrow, however. Preventing unregulated sales of securities in Illinois is merely a means to an end--protecting investors-- and that end is what we must focus on. In this regard, the Court believes that the ultimate policy behind Illinois securities laws is the same as that behind the federal laws. "Rule 10b-5 and the Illinois Act share similar purposes. It is a well-established principle that the

objective of the Illinois Securities Act is to protect innocent investors who are induced to invest in highly speculative securities." *Norville v. Alton Bigtop Restaurant, Inc.,* 22 Ill. App. 3d 273, 280, 317 N.E.2d 384, 388 (5th Dist. 1974). This policy of ensuring full and fair disclosure and deterring exploitation of investors underlies both the federal and the Illinois securities laws.

Indeed, federal securities laws arguably demonstrate an even greater commitment to protecting investors than Illinois securities laws. For example, the federal securities laws have specific anti-waiver provisions preventing purchasers from waiving their statutory remedies, which make it "clear that the public policy of these laws should not be thwarted." *Bonny,* 3 F.3d at 161. By comparison, Illinois securities laws have no such anti-waiver provision. To the contrary, they make non-complying sales of securities voidable at the purchaser's option, implying that a purchaser can choose to waive his or her statutory remedies. *See* 815 ILCS § 5/13(A) (1996). Since federal policy supported by an anti-waiver provision is not undermined by enforcing the General Undertaking's forum selection clause, this Court finds that Illinois policy, which is not strengthened by an anti-waiver provision, likewise is not undermined by the forum selection clause. This Court can discern no relevant differences between the policies served by the federal securities laws addressed in *Bonny* and those served by the Illinois securities laws at issue here. The *Bonny* decision thus effectively closes the door on the plaintiffs' policy argument regarding the Illinois securities laws.

Moreover, even if this case were not effectively governed by *Bonny,* this Court would not find that requiring the plaintiffs to bring suit in England, under English law, contravenes the public policy of Illinois. While English law may deprive the plaintiffs of specific rights under Illinois law, the plaintiffs are not left without possible recourse. The same English remedies discussed in *Bonny* are presumably available to the plaintiffs here. So long as there are remedies available in England, Illinois policy will not be contravened by enforcing the forum selection clause. The mere fact that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 4

Not Reported in F.Supp., 1996 WL 717464 (N.D.Ill.)

**(Cite as: 1996 WL 717464 (N.D.Ill.))**

plaintiffs will be deprived of specific rights under Illinois law will not prevent this Court from enforcing the forum selection clause. *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 958 (10th Cir. 1992) ("The fact that an international transaction may be subject to laws and remedies different or less favorable than those of the United States is not a valid basis to deny enforcement" of forum selection clauses).

*4 The Seventh Circuit adopted the reasoning of the Second Circuit in this regard:

It defies reason to suggest that a plaintiff may circumvent forum selection ... clauses merely by stating claims under laws not recognized by the forum selected in the agreement. A plaintiff simply would have to allege violations of his country's tort law or his country's statutory law or his country's property law in order to render nugatory any forum selection clause that implicitly or explicitly required the application of the law of another jurisdiction. We refuse to allow a party's solemn promise to be defeated by artful pleading.

*Hugel v. Corporation of Lloyd's,* 999 F.2d 206, 211 (7th Cir. 1993) (quoting *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1360 (2nd Cir. 1993)). Here, although the plaintiffs chose to cast their claims as violations of state rather than federal securities laws, this "artful pleading" cannot save them from the effect of the General Undertaking's forum selection clause. The Court holds that this forum selection clause is enforceable and is not "unreasonable" as controverting the public policy behind Illinois securities laws.

*B. Illinois Law Does Not Void The General Undertaking*

The plaintiffs also argue that the forum selection clause should not be given effect because their Lloyd's memberships are voidable under Illinois securities laws. Illinois securities law requires that all securities be registered with the state before their sale, and forbids the sale of unregistered securities. 815 ILCS §§ 5/5, 5/12(A) (1996). The plaintiffs assert that the Illinois Securities Commission has already determined that memberships in Lloyd's are

securities within the definition of the Illinois act. The plaintiffs allege that Lloyd's did not register its memberships as securities with the state before offering them for sale, and therefore have violated Illinois securities law. Since Illinois securities law allows a purchaser of securities sold in violation of the law to rescind the sale, *see* 815 ILCS § 5/13(A), the plaintiffs request that this Court allow them to void their memberships in Lloyd's and rescind the General Undertaking, including its forum selection clause. Although this argument is intriguing, it fails because the plaintiffs have not met the statutory requirements to rescind their membership securities in Lloyd's.

The Illinois securities act requires that someone who wants to void a sale of securities must give notice to the seller within six months of discovering that the sale is voidable. *Id.* § 5/13(B). Notice is to be given through registered or certified mail, or by personal service. *Id.*

The plaintiffs argue that they have complied with the notice requirements by notifying Lloyd's through the filing and service of their complaint that they are seeking rescission. It is true that courts have allowed notice to be served in the form of a complaint where the complaint stated expressly that rescission was sought and that less than six months had passed between the time plaintiffs acquired knowledge that the sales were voidable and the filing of the complaint. *See, e.g., Norville v. Alton Bigtop Restaurant, Inc.,* 23 Ill. App. 3d 273, 284, 317 N.E.2d 384, 391 (5th Dist. 1974). More recent cases have adhered to the pleading requirements *Norville* established. The court in *Endo v. Albertine,* 812 F. Supp. 1479, 1496 (N.D. Ill. 1993), dismissed the plaintiffs' count seeking rescission because the complaint failed to specify that rescission was sought or that less than six months had passed since the plaintiffs acquired knowledge that the sale was voidable. Similarly, in *Denten v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 887 F. Supp. 176 (N.D. Ill. 1995), the plaintiff's count seeking rescission was dismissed because it did not meet the pleading requirements: the plaintiff alleged only that she had acquired knowledge of the sale's voidability "within the year prior to the filing of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 5

Not Reported in F.Supp., 1996 WL 717464 (N.D.Ill.)

**(Cite as: 1996 WL 717464 (N.D.Ill.))**

complaint." *Id.* at 180. The plaintiffs in the case before us requested rescission in their prayer for relief, but did not state when they acquired knowledge that the sales were voidable. Accordingly, the plaintiffs have not met the pleading requirements of the statute.

**\*5** If this were the only problem with the rescission argument, the plaintiffs might be able to replead their complaint to add allegations that would make out a valid claim for rescission. The rescission argument is subject to another, more fatal flaw as well, however. That flaw is in the plaintiff's assumption that the voiding of the securities transactions themselves would necessarily entail the cancellation of the General Undertaking and its forum selection and choice of law provisions. While the Securities Department of the Illinois Secretary of State has found that "membership interests" in Lloyd's were securities within the purview of the Illinois Securities Act, [FN3] nothing in the record supports the conclusion that the General Undertaking must be viewed as the purchase agreement for the "sale" of those "securities." The General Undertaking itself is not an investment contract. Rather, the General Undertaking is just one of several agreements that the plaintiffs were required to enter into in order to invest in the Lloyd's market. As was stated in a court order cited by the plaintiffs, "No Name [member of Lloyd's] is involved in the underwriting of insurance until he or she has agreed to participate in a syndicate. It is at that point that the investment contract is entered into and the sale of a security is consummated." *See* Pl.'s Mem. in Opp. to Mot. Dismiss, Ex. C, *In re R.W. Sturge, Ltd,* No. 94-203, Findings of Fact, Conclusions of Law, and Recommendations of the Hearing Officer, Ohio Dep't of Commerce, Div. of Securities, at 20 (March 7, 1996). The plaintiffs have cited no cases in Illinois or elsewhere that support the voiding of a contract that is so tangentially related to the sale of securities. The only federal appeals court to consider this issue, the Sixth Circuit, dismissed the argument that the voidability of the memberships would prevent the enforcement of the forum selection clause in the General Undertaking. *Shell v. R.W. Sturge, Ltd.,* 55 F.3d 1227, 1232 (6th Cir. 1995). In that case, the

plaintiffs contended that Lloyd's forum selection clause could not be enforced without first determining whether the contracts were void under an Ohio securities law allowing rescission that is substantially similar to Illinois law. [FN4] The court refused to entertain this argument, noting that it was "essentially another way of restating plaintiffs' argument that enforcement of the forum selection clauses deprives plaintiffs of a hearing on the merits of their claim." *Id.* This Court agrees that 815 ILCS § 5/13 does not operate to void the forum selection and choice of law provisions of the General Undertaking. Accordingly, this Court will uphold the forum selection provision, and dismiss this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

> FN3. The Securities Department also found that the plaintiffs' participation interests in the insurance syndicates that operate in Lloyd's marketplace are securities. However, Lloyd's of London (the only defendant here) is an entity separate and distinct from those syndicates. See our prior opinion in this case, *Ashenden v. Lloyd's of London,* 934 F. Supp. 992 (N.D. Ill. 1996).

> FN4. Ohio's statute outlining the remedies for purchasers of noncomplying securities provides in pertinent part that "[e]very sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser." Ohio Rev. Code Ann. § 1707.43 (Banks-Baldwin 1996).

### FORUM NON CONVENIENS
Having decided above that the forum selection clause is enforceable, this Court finds it unnecessary to rule on the forum non conveniens argument advanced in the motion to dismiss.

### CONCLUSION
**\*6** For the foregoing reasons, Lloyd's motion to dismiss for improper venue is granted. This lawsuit is hereby dismissed without prejudice to its refiling in an appropriate English court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 6

Not Reported in F.Supp., 1996 WL 717464 (N.D.Ill.)

**(Cite as: 1996 WL 717464 (N.D.Ill.))**

Not Reported in F.Supp., 1996 WL 717464
(N.D.Ill.)

   **Motions, Pleadings and Filings (Back to top)**

• 1:96cv00852 (Docket) (Feb. 14, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 2

Westlaw.

1987 WL 17495                                                    Page 1

Not Reported in F.Supp., 1987 WL 17495 (N.D.Ill.)

**(Cite as: 1987 WL 17495 (N.D.Ill.))**

**H**
Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
FEDERAL DEPOSIT INSURANCE
CORPORATION, a federal corporation, Plaintiff,
v.
W.R. GRACE & COMPANY, a Connecticut
corporation, Grace Petroleum Corporation, a
Delaware corporation Sourgasco II Corporation, a
Delaware corporation,
Defendants.
**No. 84 C 5031.**

September 21, 1987.

MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

BACKGROUND [FN1]
**\*1** This case involves allegations of fraud in
inducing a loan from the Continental Illinois
National Bank ('Bank'). The Federal Deposit
Insurance Corporation, as successor in interest to
the Bank, brings this suit against W.R. Grace &
Company ('Grace'), Grace Petroleum Corporation
('GPC') and Sourgasco II Corporation.

In 1980 defendant Grace, through its subsidiary
GPC, secured a production payment loan for the
purpose of acquiring interests in certain oil and gas
properties from Centex Corporation ('Centex'). An
intermediary not-for-profit organization called the
Leadership Foundation ('Leadership') was
established to facilitate the loan. GPC conveyed the
production payment it acquired from Centex to
Leadership and the Bank made a loan to Leadership
which was secured by a mortgage of the production
payment. Leadership subsequently executed a note
and mortgage and deed in trust and assignment to

the Bank. The non-recourse loan was in the amount
of seventy-five million dollars and was structured so
that repayment of the principal would come entirely
from the production of the property. In recovering
its principal the bank was to be entitled to the lesser
of two amounts: the principal amount or the value
of the properties' production.

The oil and gas wells have proven to be dry and
plaintiff has no prospect of repayment of the
principal from the production of the property.
Plaintiff alleges that defendants knew that the
properties had no value as gas-producing properties
yet insisted on proceeding with the loan.

Plaintiff has filed an eight-count complaint alleging
violations of federal securities law; violations of the
state securities laws of Illinois, Texas and
Oklahoma; common law fraud and conspiracy to
defraud; violations of the Texas Business and
Commerce Code; and breach of warranty; and has
asked for imposition of a constructive trust. The
cause is before the court on defendants' motion for
summary judgment. For the reasons stated herein,
the motion is granted in part and denied in part.

DISCUSSION
I. Federal Securities Law
In Count I of its complaint plaintiff alleges that the
production payment and the seventy-five million
dollar non-recourse note transferred by Grace to the
Bank each constitutes a security as defined by
federal securities law and that defendants have
acted in violation of Sections 12(2) and 17(a) of the
1933 Securities Act, 15 U.S.C. §§ 77e, 77a; Section
10(b) of the 1934 Act, 15 U.S.C. § 78j; and SEC
Rule 10b-5. [FN2] It is appropriate to consider this
issue on a motion for summary judgment.
Cocklereece v. Moran, 532 F. Supp. 519, 525
(E.D.Mo. 1982).

A. Investment Contract
In their motion for summary judgment defendants

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1987 WL 17495                                                                                      Page 2

Not Reported in F.Supp., 1987 WL 17495 (N.D.Ill.)

**(Cite as: 1987 WL 17495 (N.D.Ill.))**

argue, inter alia, that the production payment and note do not constitute securities under federal law. In the second amended complaint plaintiff uses the following language in describing the instruments as securities:

> 'The production payment and the $75 million non-recourse note transferred by Grace to the Bank each constitutes a 'security' as that term is defined under Section 2(1) of the 1933 Act, 15 U.S.C. § 77b(1), and Section 3(10) of the 1934 Act, 15 U.S.C. § 78c(10). The transaction among Grace and the Bank, and other participants in the drilling and exploration ventures relating to the Deep Gas Properties, constitutes an investment by the Bank in a common enterprise with the expectation of profits to come principally, if not solely, from the managerial efforts of others that were given full control of operations.' (second amended complaint at 14)

**\*2** This language suggests that plaintiff is only contending that the instruments involved are investment contracts.

> '[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.

SEC v. Howey Co., 328 U.S. 293, 299 (1986). In order for an investment contract to exist each prong of the Howey test must be satisfied.

The first element of the test requires the distinction of investments from commercial transactions. Kansas State Bank v. Citizens Bank, 737 F.2d 1490, 1495 (8th Cir. 1984). If a bank or other commercial lender makes a loan to finance business transactions and takes a note in return, the parties could not be said to have participated in a securities transaction. Hussinger v. Rockford Business Credits, Inc., 745 F.2d 484, 493 (7th Cir. 1984). The Seventh Circuit has held that in resolving the commercial/consumer-investment issue emphasis

should be placed on the economic realities of the transaction. Emisco Industries, Inc. v. Pro's, Inc., 543 F.2d 38, 40 (1976). Although use of this test was restricted by the Supreme Court in Landreth Timber Co. v. Landreth, 105 S.Ct. 2297, 2304-05 (1985), Landreth leaves open this test in cases involving unusual instruments not easily characterized as securities. Id. at 2304. Landreth further points out 'that the economic reality test was designed to determine whether a particular instrument is an 'investment contract." Id. at 2305. The court finds that the economic realities of the instant case indicate that the transaction was indeed a commercial loan--the Bank is in the business of making loans, the parties treated the transaction as a loan, the deal was structured as a loan and the relevant documents described it as such, the interest rate was set at a fixed percentage over the prime rate, and the impetus for the transaction apparently came from the borrower.

Accordingly, the court finds plaintiff has failed to meet the first requirement of the Howey test.

The second prong of the test requires that there be a common venture. With regard to this requirement the Seventh Circuit 'has strictly adhered to a 'horizontal' test of common enterprise, under which multiple investors must pool their investments and receive pro rata profits.' Stenger v. R.H. Love Galleries, Inc., 741 F.2d 144, 146 (7th Cir. 1984). In the instant case there are no allegations of a pooling of funds or a sharing of profits with other investors and there are no facts alleged from which any such inference could be drawn. Plaintiff therefore fails to meet this element of the Howey test as well. [FN3]

Plaintiff must next show that it had a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. 'Profit, however, does not mean any return beyond principal. Rather, it is profit of the type typically associated with investment. This includes 'capital appreciation resulting from the development of the initial investment . . . or a participation in earnings resulting from the use of investors' funds. . . .' United Housing Foundation, Inc. v. Forman, 421

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1987 WL 17495                                              Page 3

Not Reported in F.Supp., 1987 WL 17495 (N.D.Ill.)

**(Cite as: 1987 WL 17495 (N.D.Ill.))**

U.S. 852, 853 (1975); Canadian Imperial Bank of Commerce U. Fingland, 615 F.2d 465, 469 (7th Cir. 1980). In the instant case the bank had no prospect of capital appreciation. The most it could have expected to recover from any increase in the value of the wells was the full amount of the principal plus the stated interest. Although the argument might be made that the production payment structure of the loan constituted a participation in earnings, the extent of such 'participation' by plaintiff would be limited to the principal amount, just as it would under a recourse loan. Repayment of the interest, which was stated as a fixed amount over the prime rate, was in no way dependent on earnings resulting from the use of investors' funds but was to be repaid regardless of earnings. Therefore plaintiff has also failed the third prong of the Howey test.

*3 Under theses circumstances, where plaintiff has failed to meet the Howey standards, the court will find that no security exists in the form of an investment contract.

### B. Fractional Undivided Interest in Oil or Gas Rights

In its brief in opposition to the motion for summary judgment plaintiff first raised the argument that the production payment represents a 'fractional undivided interest in oil, gas or other mineral rights' as is also included in the definition of a security. This definition is intended to include 'only that form of splitting up of mineral interests which had been most utilized for speculative purposes.' S.E.C. v. Joiner Corp., 320 U.S. 344, 352 (1943). Such an interest arises when a lessee of mineral rights sells part [FN4] of his interest in the rights in order to finance the development of the minerals. Penturelli v. Spector, Cohen, Gadon & Rosen, 779 F.2d 160, 165 (3rd. Cir. 1985). Fractionalized undivided working interests 'give the investor rights to a percentage of the actual minerals 'worked' from the lease or the proceeds therefrom and are subject to at least part of the expense of development, operation or maintenance.' Id. at 160.

The instant case involves the mortgage from Leadership to the Bank of its entire interest for a potentially limited period of time, that is, until repayment of the principal. It does not involve the right to a fractional share or a specific percentage of the proceeds so as to constitute that form of splitting up of mineral interests most utilized for speculative purposes. Therefore the production payment does not constitute a fractional undivided interest in the oil and gas rights. [FN5]

Since neither an investment contract nor a fractional undivided interest in oil and gas rights have been found to exist under federal securities law, summary judgment will be granted as to Count I. [FN6]

### II. Illinois Securities Law

In Count II of the complaint plaintiff alleges violations of the Illinois securities laws. The definition of a security under Illinois law (Ill.Rev.Stat., ch.121-1/2, § 137.2-1) is essentially identical to that found in the federal statues. Illinois courts attempt to apply Illinois securities law consistently with federal securities law. See, Witter v. Buchanan, 476 N.E.2d 1123, 1132, 132 Ill.App.3d 273 (1985). One difference, however, is that the Illinois courts have permitted vertical commonality and do not require a pooling of investors in order for an investment contract to exist under state securities law. Ronnett v. American Breeding Herds, Inc., 464 N.E.2d 1201, 1204-05; Anderson v. Grand Bahama Development Co., 384 N.E.2d 981 (1979). Assuming arguendo that sufficient vertical commonality exists, the production payment still does not meet the Howey test in that no investment or profits have been shown.

Illinois law also contemplates that a fractional undivided interest in oil or gas rights would 'entitle[ ] plaintiffs to a fractional share of the proceeds from any sale of any oil [or gas].' Witter, 476 N.E.2d at 1133. The court has previously discussed the inability of plaintiff to meet the requirements of fractional undivided interests in oil and gas rights under federal law. In conformance with its ruling under federal law, the court finds that the production payment and note underlying the loan do not constitute securities under Illinois law. [FN7]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1987 WL 17495                                                                Page 4

Not Reported in F.Supp., 1987 WL 17495 (N.D.Ill.)

**(Cite as: 1987 WL 17495 (N.D.Ill.))**

Accordingly, summary judgment is granted as to Count II.

### III. Choice of Law
*4 In Counts III, IV and VI of the complaint plaintiff alleges violations of Oklahoma and Texas law. In the motion for summary judgment defendants argue that the parties included choice of law provisions in the loan documents, designating that Illinois law should govern the contracts. Under such circumstances this circuit applies the law of the forum state to determine whether such provisions should apply. Int'l. Administrators v. Life Ins. Co. of No. America, 753 F.2d 133, 1377 (7th Cir. 1985). Illinois law provides that '[g]enerally, the law applicable to a contract is that which the parties intended . . . when that intent is expressed, it should be followed.' Hofeld v. Nationwide Life Ins. Co., 322 N.E.2d 454, 458 (1975). In the instant case the parties have expressed the intent that Illinois law should govern in the loan documents.

Plaintiff argues that where fraud is alleged a choice of law agreement contained in a fraudulently induced underlying contract should not be honored. However the court finds persuasive the rulings of other courts that have considered the enforcement of clauses where fraud has been alleged in the underlying contract. See, Hoffman v. Burroughs Corp., 571 F. Supp. 545 (N.D. Ill. 1982). In such cases the disputed clause is unenforceable only if 'the inclusion of that clause in the contract was the product of fraud or coercion.' Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974). Here no fraud as to the inclusion of the clause in the contract has been alleged. Therefore the court will enforce the choice of law clauses and summary judgment will be granted as to Counts III, IV and VI, which purport to bring claims under the laws of states other than Illinois.

### IV. Common Law Fraud and Conspiracy to Defraud
In Count V of the complaint plaintiff alleges common law fraud and conspiracy to defraud. In light of our previous rulings as to the securities claims, the fraud claim now constitutes the bulk of plaintiff's case. Plaintiff contends that defendants

intentionally and recklessly made material omissions and misrepresentations with the intention of inducing the Bank to transfer funds to defendants. Defendants argue that it had no obligation to disclose the condition of the wells since the loan agreement was binding at the time defendants discovered the condition of the well. The court finds that there are genuine issues of material fact as to the binding nature of the loan agreements and the intent of defendants to mislead the Bank. Under these circumstances summary judgment will be denied as to Count V.

### V. Breach of Warranties and Representations
Count VII of the complaint alleges breach of warranty. Plaintiff argues that defendants have breached warranties and representations made in the mortgage deed of trust and assignment as to whether there is any threatened or pending litigation affecting the properties in question. Plaintiff contends that a non-waiver agreement between Grace and Centex, entered into after Grace learned that the wells were unproductive, indicated that the parties were considering litigation. According to plaintiff this constituted 'threatened' litigation. The court disagrees with this analysis. Under the circumstances described by plaintiff no suit would have been threatened against the Grace properties but against Centex. Accordingly, summary judgment will be granted as to Count VII.

### VI. Constructive Trust
*5 In Count VIII of the complaint plaintiff requests imposition of a constructive trust with regard to the amounts received by GPC from Centex pursuant to the settlement agreement between them. Since a constructive trust will be imposed only where there is wrongdoing on the part of the legal owner of the property in question, see, Commodities Futures Trading Commission v. Heritage Capital Advisory Services, Ltd., No. 86-2763, slip op. at 3 (7th Cir. June 22, 1987), the court will reserve judgment on the constructive trust count until after a decision is made by the jury as to the alleged wrongdoing.

### CONCLUSION
The motion for summary judgment is granted as to Counts I, II, III, IV, VI and VII and denied as to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1987 WL 17495 (N.D.Ill.)

**(Cite as: 1987 WL 17495 (N.D.Ill.))**

Counts V and VIII.

IT IS SO ORDERED.

FN1 In this order the court will only briefly summarize the facts. For any further elaboration of the facts the court will adopt the statement of facts set forth by plaintiff in its brief in opposition to the motion.

FN2 Under the Securities Act of 1933, 15 U.S.C. § 77b(1), a security is defined as follows:
'When used in this subchapter, unless the context otherwise requires--
(1) The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilegee on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.'
The 1934 Act, 15 U.S.C. 78c(10) provides essentially the same definition:
'(10) The term 'security' means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any

collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

FN3 Plaintiff points to John Hopkins University v. Hutton, 422 F.2d 1124 (4th Cir. 1970), in which a production payment was found to be an investment contract. John Hopkins, however, involved a pooling of investors and did not involve the investment in securities under the guise of a bank loan.

FN4 'If the seller transfers the whole of what he owns, there can be no creation of a fractional undivided interest in oil and gas, and this is so even though what he sold was a fractional interest therein.' Woodward v. Wright, 266 F.2d 108, 112 (10th Cir. 1959).

FN5 In its brief in opposition to the motion for summary judgment (at p.46), plaintiff parenthetically indicates that the production payment may constitute evidence of indebtedness. The test of evidence of indebtedness has also been

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1987 WL 17495

Not Reported in F.Supp., 1987 WL 17495 (N.D.Ill.)

**(Cite as: 1987 WL 17495 (N.D.Ill.))**

subject to the commercial/investment distinction. Cocklereece v. Moran, 532 F. Supp. 519, 528-29 (E.D.Mo. 1982). As has been discussed in the context of the investment contract, the court is unwilling to find that the documents underlying the commercial loan are securities.

FN6 Defendants also contend that plaintiff's claim under Section 12(2) of the 1933 Act is barred by the statute of limitations and that plaintiff has no private right of action under Section 17(a) of the 1933 Act. Because of the ruling on the securities issue, the court will decline to address these defenses.

FN7 Defendants also contend that plaintiff failed to tender notice of recission and that this claim is barred by the statute of limitations. Because of its court's ruling on the securities issue, the court will decline to address these limitations issues which raise questions of fact as to when the Bank knew of the alleged fraud.

Not Reported in F.Supp., 1987 WL 17495 (N.D.Ill.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 3

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)

**(Cite as: 2003 WL 21960406 (D.Del.))**

C

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Thomas J. HADLEY, in his capacity as the Former
Shareholders Representative of
the shareholders of Kiamichi Railroad Company,
Inc ., Plaintiff
v.
James S. SHAFFER, individually, Kiamichi
Railroad Company, L.L.C., and
Statesrail, L.L.C., Defendants/Third-Party
Plaintiffs/Counterclaim Plaintiffs
v.
Jack L. HADLEY and Thomas J. Hadley,
individually. Third-Party Defendants.
**No. Civ.A. 99-144-JJF.**

Aug. 12, 2003.

Jesse E. Finkelstein, Frederick K. Cottrell, III,
Anne Shea Gaza, of Richards, Layton & Finger,
Wilmington, Delaware, for Defendants/Third Party
Plaintiffs/Counterclaim Plaintiffs, Michael E.
Schonberg, and James Berglund, of Thompson &
Knight, P.C., Dallas, Texas, of counsel.

Robert Jacobs, Vincent J.X. Hedrick, of Jacobs &
Crumplar, P.A., Wilmington, Delaware, for Third
Party Defendants, Weldon Stout, of Wright, Stout,
Fite & Wilburn, Muskogee, Oklahoma, of counsel.

OPINION

FARNAN, J.

*1 Presently before the Court is Third Party
Defendants' Motion to Dismiss for Lack of
Jurisdiction. (D.I.92). For the reasons discussed
below, the motion to dismiss (D.I.92) will be denied.

I. Introduction

In June, 1995, StatesRail L.L.C. ("StatesRail"), a
Delaware limited liability company, and Kiamichi
Railroad Company ("Kiamichi"), a Delaware
corporation, (collectively referred to as "Third Party
Plaintiffs") entered into an Agreement and Plan of
Merger (the "Merger Agreement"). (D.I.95, Exh.
A). The merger was completed effective June 30,
1995. (D.I. 95, Exh. A at 1). Before the merger,
Kiamichi was a closely-held corporation with
approximately 16 shareholders. (D.I.95, Exh. C).
Jack Hadley and his wife were the majority
shareholders of Kiamichi. (D.I.95, Exh. C). Under
the Merger Agreement, Kiamichi created a
subsidiary under the laws of Delaware, Kiamichi
Acquisition, L.L.C. ("KRR Acquisition"). (D.I. 95,
Exh. A at 1). Pursuant to the terms of the Merger
Agreement, KRR Acquisition acquired Kiamichi's
stock and Kiamichi ceased to exist.

At the time of closing, $1.4 million of the total
purchase price was placed into an escrow account
by the parties for indemnification purposes (the
"Indemnity Escrow Account"). (D.I. 33 at 7, ¶ 4).
Pursuant to the Merger Agreement, funds in the
Indemnity Escrow Account not returned to
StatesRail as indemnity payments are to be
disbursed to the former shareholders of Kiamichi
according to a schedule in the Merger Agreement.
(D.I. 95, Exh. A at §§ 2.3(b), 2.6(e)). A Former
Shareholder Representative ("Representative") was
appointed to administer the indemnity claims
asserted by Third Party Plaintiffs. (D.I. 95, Exh. A
at 25, 48). Initially, Jack Hadley served as the
Representative, but Thomas J. Hadley later assumed
the position. (D.I. 95, Exh. B at ¶ 6).

Following the merger, StatesRail filed a lawsuit in
Texas against Thomas J. Hadley, in his capacity as
Representative, alleging that Hadley had failed to
release indemnity payments to States Rail in
accordance with the terms of the Merger
Agreement. (D.I.95, Exh. E). Thomas J. Hadley
filed a Motion to Dismiss, claiming that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)

**(Cite as: 2003 WL 21960406 (D.Del.))**

mandatory forum selection clause in § 11.11 of the Merger Agreement provided that the Delaware courts had exclusive jurisdiction. (D.I. 95, Exh. F at 6). As a result of Section 11.11's mandatory forum selection clause, Hadley argued that the Texas court lacked jurisdiction. (D.I. 95, Exh. F at 6). Hadley's Motion to Dismiss was granted on June 29, 1998. (D.I.95, Exh. H).

On July 10, 1998, Thomas J. Hadley, in his capacity as Representative, filed a lawsuit in an Oklahoma state court alleging various breaches of the Merger Agreement. (D.I. 95 at 5). Third Party Plaintiffs removed the suit to federal court and subsequently requested and obtained a change of venue to this Court, based on Section 11.11's forum selection clause. (D.I. 92 at 1-2). Third Party Plaintiffs then filed a Counterclaim and Third Party Complaint against Thomas J. Hadley and Jack Hadley, individually, disputing the ownership of certain life insurance policies related to the Merger Agreement. (D.I. 98 at 2-3).

*2 The parties do not dispute that the instant claims are based upon the Merger Agreement. However, Jack Hadley and Thomas J. Hadley, individually, (the "Hadleys") have moved to dismiss the claims against them for lack of in personam jurisdiction. (D.I.92).

II. Standard of Review

Third Party Defendants Jack Hadley and Thomas J. Hadley contend that the Third Party Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over them in their individual capacities. Rule 4(e) of the Federal Rules of Civil Procedure provides that a federal court may exercise personal jurisdiction over a nonresident "to the extent permissible under the law of the state where the district court sits." *Mesalic v. Fiberloat Corp.,* 897 F.2d 696, 698 (3d Cir.1990); *Mobil Oil Corp. v. Advanced Envtl. Recycling Tech., Inc.,* 833 F.Supp. 437, 440 (D.Del.1993).

Once a defendant has properly raised the jurisdictional defense, the plaintiff has the burden of establishing by a preponderance of the evidence that the defendant has had minimum contacts with the forum state. *Patterson v. F.B.I.,* 893 F.2d 595, 604 (3d Cir.1990), *cert. denied,* 498 U.S. 812 (1990). If the plaintiff is able to make a prima facie case supporting the exercise of personal jurisdiction, the burden shifts to the defendant to "present a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Grand Entm't Group v. Star Media Sales,* 988 F.2d 476, 483 (3d Cir.1993). In the context of a motion to dismiss, the record must be viewed in the light most favorable to the non-moving party. *See Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 192 (D.Del.1996) (holding that the court must accept as true all well-pled facts).

III. Parties' Contentions

The Hadleys contend that the Court lacks in personam jurisdiction over them for the purposes of this litigation. (D.I.92). The Hadleys rely on three assertions: (i) that they are not bound by the Merger Agreement's forum selection clause; (ii) that they have taken no acts within the state of Delaware that would subject them to statutory jurisdiction; and (iii) that to subject them to jurisdiction would be inconsistent with Due Process.

First, the Hadleys contend that, as non-signatories to the 1995 Merger Agreement, they are not bound by the Merger Agreement's mandatory forum selection clause. (D.I. 98 at 8). Because they are not bound by the forum selection clause, they argue that they have not consented to the exercise of personal jurisdiction over them by the Court. (D.I. 98 at 8-9). Further, the Hadleys contend that the forum selection clause cannot be enforced against them in their individual capacities as third-party beneficiaries. (D.I. 98 at 12- 13). The Hadleys contend that third-party beneficiary status can only be conferred upon the party bringing the suit. (D.I. 98 at 13). Because they are not Plaintiffs in the Third Party Complaint, the Hadleys contend that they are not third-party beneficiaries to the Merger Agreement such that they should be deemed to have consented to this Court's jurisdiction.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)

**(Cite as: 2003 WL 21960406 (D.Del.))**

**\*3** The Hadleys further contend that they have not committed any acts in their individual capacities that would subject them to personal jurisdiction in this Court under Delaware's long-arm statute, 10 *Del. C.* § 3104(c)(1-6). (D.I. 92 at 6). Finally, the Hadleys contend that because they have not had the requisite minimum contacts with the State of Delaware, the constitutional Due Process requirement has not been met. (D.I. 92 at 7). In support of this assertion, the Hadleys submit affidavits which state that they have not been in the State of Delaware regarding the subject matter of this action. (D.I. 92 at 7). For all these reasons, the Hadleys contend that they are not subject to the jurisdiction of this Court. (D.I.92).

In response, Third Party Plaintiffs contend that the Hadleys have expressly consented to and waived any objections to the exercise of personal jurisdiction by this Court pursuant to the Merger Agreement's forum selection clause. (D.I. 95 at 10). Third Party Plaintiffs argue that, as intended third-party beneficiaries of the Merger Agreement, the Hadleys are bound by the forum selection clause. (D.I. 95 at 12-13). In support of this contention, Third Party Plaintiffs point out that Thomas J. Hadley had previously attempted to enforce the terms of the Merger Agreement in an Oklahoma court, by asserting his standing as the Former Shareholders Representative. (D.I. 95 at 4, 15). Further, Thomas J. Hadley successfully argued to the Texas state court that all causes of action arising out of the Merger Agreement must be brought in Delaware. (D.I. 95 at 16). By having previously used the forum selection clause to his benefit, Third Party Plaintiffs argue that Thomas J. Hadley is now bound by the terms of that clause. (D.I. 95 at 15).

Alternatively, Third Party Plaintiffs contend that this Court has specific jurisdiction over the Hadleys. Plaintiffs assert that under a properly expansive reading of the Delaware long-arm statute, the Hadleys have, in fact, transacted business in Delaware sufficient to satisfy § 3104(c)(1). (D.I. 95 at 17-18).

Further, Third Party Plaintiffs assert that the

exercise of jurisdiction by this Court over the Hadleys comports with Due Process. (D.I. 95 at 21). In support of this contention, Third Party Plaintiffs argue that the Hadleys: (i) purposely availed themselves of Delaware state laws; (ii) could have reasonably anticipated being called into the courts of Delaware; and (iii) would bear a minimal burden if made to defend this action in this jurisdiction. (D.I. 95 at 21). In sum, Plaintiffs contend that the Hadleys are subject to the exercise of personal jurisdiction by this Court. (D.I.95).

IV. Discussion

A. Whether the Hadleys Have Expressly Consented to Jurisdiction in Delaware Pursuant to the Forum Selection Clause?

The first question in an evaluation of whether the Hadleys can be properly subjected to the jurisdiction of this Court, is whether they have consented to jurisdiction as a result of the Merger Agreement's forum selection clause. When a party is bound by a forum selection clause, the party is considered to have expressly consented to personal jurisdiction. *Res. Ventures, Inc. v. Res. Mgmt Int'l, Inc.,* 42 F.Supp.2d 423, 431 (D.Del.1999). An express consent to jurisdiction, in and of itself, satisfies the requirements of Due Process. *Sternberg v. O'Neil,* 550 A.2d 1105, 1116 (Del.1987). Such consent is deemed to be a waiver of any objection on Due Process grounds and an analysis of minimum contacts becomes unnecessary. *See Hornberger Mgmt. Co. v. Haws & Tingle General Contractors, Inc.,* 685 A.2d 724, 727 (Del.Super.Ct.2000) (stating "[a] party may expressly consent to jurisdiction by agreeing to a forum selection clause ... If a party consents to jurisdiction, a minimum contacts analysis is not required."); *USH Ventures v. Global Telesystems,* Inc. C.A. No. 97C-08-086, 1998 Del. Super Lexis 167, at *22 (Del.Super.Ct. May 21, 1998) (same). Thus, if the Court determines that the Hadleys are bound by the forum selection clause, the Court can exercise in personam jurisdiction over them.

**\*4** In order to determine whether the Hadleys are bound by the forum selection clause, three questions

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 4

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)

**(Cite as: 2003 WL 21960406 (D.Del.))**

must be resolved. These questions are: (1) whether the forum selection clause is valid; (2) whether the Hadleys are either parties, third-party beneficiaries, or closely related to the Merger Agreement; and (3) whether the present claim arises from their standing relating to the Merger Agreement. Only where all three questions are answered in the affirmative, can the Hadleys be bound by the forum selection clause and found to have consented to the Court's jurisdiction.

1. Is the Forum Selection Clause Valid?

Both Delaware and federal decisional law acknowledge that, as a general principle, private parties may agree to conduct all potential litigation arising out of a contract in a single jurisdiction. *Process and Storage Vessels, Inc. v. Tank Servs., Inc.,* 541 F.Supp. 725, 733 (D.Del.1982). Such Merger Agreements are presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes: (i) it is a result of fraud or overreaching; (ii) enforcement would violate a strong public policy of the forum; or (iii) enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *Coastal Steel Corp. v. Tilghman Wheelabrator, LTD.,* 709 F.2d 190, 202 (3d Cir.1983), *overruled on other grounds by, Lauro Lines v. Chasser,* 490 U.S. 495 (1989). Generally put, forum selection clauses are enforced so long as enforcement at the time of litigation would not place any of the parties at a substantial and unfair disadvantage or otherwise deny a litigant his day in court. *See Process,* 541 F.Supp. at 733 (citing *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972)). Because the Hadleys have made no assertion regarding the validity of the clause, they have not overcome the presumption in favor of validity. Accordingly, the Court concludes that the forum selection clause is valid.

2. Are the Hadleys Subject to the Forum Selection Clause As Third-Party Beneficiaries?

The Court must next determine whether the Hadleys are subject to the terms of the forum

selection clause. If the Hadleys are found to be either parties, third-party beneficiaries, or closely related to the Merger Agreement, they will necessarily be bound by the forum selection clause. The Court will first turn to whether the Hadleys can be considered parties to the Merger Agreement.

The Hadleys correctly assert that they are not parties to the original 1995 Merger Agreement. (D.I. 98 at 8). They are not listed as parties on the Merger Agreement's cover page. Further, neither Thomas nor Jack Hadley signed the Merger Agreement in any capacity. (D.I. 95 at Exh. A). The Hadleys, however, stop short of a full analysis. The parties executed an amendment to the Merger Agreement (the "Amendment") on October 3, 1995. Jack Hadley, in his capacity as Chairman of the Board of Directors of Kiamichi, was a signatory to the Amendment. As such, Jack Hadley would be bound by the forum selection clause in his capacity as chairman. *See Resource Ventures, Inc.,* 42 F.Supp.2d at 432 (finding that a signatory to an amendment of a contract is bound by the forum selection clause in the original contract). However, Jack Hadley is not bound by the clause in his individual capacity. *See, e.g., Packer v. TDI Systems,* 959 F.Supp. 192, 195 n. 2 (S.D.N.Y.1997) (stating "[t]he forum selection clause, of course, applies to the parties to the contracts, the corporate entities, and not to the individual signatories."). Accordingly, the Court concludes that the Hadleys, in their individual capacities, are not parties to the Merger Agreement.

**\*5** The next inquiry is to determine whether the Hadleys can be considered third-party beneficiaries to the Merger Agreement. To qualify as a third-party beneficiary, it must be shown that the contract was "made for the benefit of that third party within the intent and contemplation of the contracting parties." *Grand St. Artists v. Gen'l Electric. Co.,* 19 F.Supp.2d 242, 253 (D.N.J.1998) (citing *Grant v. Coca-Cola Bottling Co.,* 780 F.Supp. 246 (D.N.J.1991)); *Pierce Associates, Inc. v. Nemours Foundation,* 865 F.2d 530, 535 (3d Cir.1988) (applying Delaware law); *Browne v.. Robb,* 583 A.2d 949, 954-955 (Del.1990) (requiring the contracting parties to intend to confer a benefit

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)

**(Cite as: 2003 WL 21960406 (D.Del.))**

on the third party). To determine whether the parties intended to make an individual a third-party beneficiary, the Court must look to the terms of the contract and the surrounding circumstances. *Grand St. Artists,* 19 F.Supp.2d at 253.

Under Delaware law, the intention of the contracting parties is paramount in determining whether others have standing as third-party beneficiaries. *See E.I. DuPont & Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.,* 269 F.3d 187, 197 (3d Cir.2001). Thus, if it was not the promisee's intention to confer direct benefits upon a third party, but rather such third party happens to benefit from the performance of the promise either coincidentally or indirectly, then the third party will have no enforceable rights under the contract. *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d 1378, 1386 (Del.Super.Ct.1990).

The Court concludes that the Hadleys are intended third-party beneficiaries of the Merger Agreement. As consideration for the sale of shares in Kiamichi, the Merger Agreement provided that the shareholders (including the Hadleys) would receive the payments set forth in paragraph 2.3(a). (D.I. 95, Exh. A at 5). Paragraph 8.6 of the Merger Agreement required the approval of the Hadleys and other shareholders before the Merger Agreement became final. (D.I. 95, Exh. A at 36). The Hadleys also consented to the stock purchase and merger. (D.I. 95 at Exh. D, E, K). The Hadleys, as shareholders, were undoubtedly intended to receive a benefit from the sale of their stock through the Merger Agreement. *See DuPont,* 269 F.3d at 196. In fact, Jack Hadley and his wife were majority shareholders of Kiamichi, owning approximately 60% of the shares. (D .I. 95 at Exh. C. Schedule 3.4 of Stock Purchase Merger Agreement). Further, Jack Hadley was actively involved in the negotiations that led to the Merger Agreement. *See* Kleifgen Decl. at ¶¶ 3-4.

Thomas J. Hadley has exhibited his status as a third-party beneficiary in at least two ways. First, when faced with the Texas suit, initiated by StatesRail, Mr. Hadley was granted a 12(b)(2) Motion to Dismiss after he successfully argued that

"... by Section 11.11 of the Merger Agreement the parties irrevocably submitted and consented to the jurisdiction and venue of the courts of the State of Delaware and the federal courts located in Delaware." (D.I. 95, Exh. F at ¶ 6). The case was dismissed based on Mr. Hadley's assertion that the forum selection clause was enforceable in "any dispute arising out of or relating to the Merger Agreement." (D.I. 95, Exh. F at ¶ 6). Two weeks after the Texas court granted Mr. Hadley's Motion to Dismiss, Mr. Hadley instituted suit against Third Party Plaintiffs in Oklahoma. There, Mr. Hadley used his third-party beneficiary status to his benefit by seeking compensation for alleged breaches of the Merger Agreement. The Oklahoma court agreed with the Texas court's conclusion that the forum selection clause was binding and transferred the case to this Court.

*\*6* Delaware law prohibits third-party beneficiaries from reaping the benefits of a contract they seek to enforce, while, at the same time, avoiding the burdens or limitations of the contract, such as a forum selection clause. *Process,* 541 F.Supp. at 733 . For example, in *Rumsey Elec. Co. v. Univ. of Del.,* the Delaware Supreme Court held that:

> When plaintiff seeks to secure benefits under a contract as to which he is a third-party beneficiary, he must take that contract as he finds it .... the third party cannot select the parts favorable to him and reject those unfavorable to him.

358 A.2d 712, 714 (Del.1976) (quoting *Sanders v. Amer. Cas. Co.,* 269 Cal.App.2d 306, 310 (Cal.Ct.App.1969)). *See also, Coastal Steel,* 709 F.2d at 203 (holding that third-party beneficiary status does not permit the avoidance of contractual provisions otherwise enforceable); *Barrett v. Picker Int'l Inc.,* 589 N.E.2d 1372, 1376 (Ohio Ct.App.1990) ("Therefore, plaintiffs' status as third-party beneficiaries cannot be used as both a sword to reap the benefits of the [contract] and a shield to protect them from enforcement of the forum selection clause."). Thomas J. Hadley cannot use the forum selection clause to his advantage, as he did in the Texas and Oklahoma litigations, and then assert that he is not bound by its terms in this Court. Based on the above cited factors, the Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)

**(Cite as: 2003 WL 21960406 (D.Del.))**

Page 6

concludes that the Hadleys are third-party beneficiaries to the Merger Agreement. As third-party beneficiaries, the Hadleys are bound by the terms of the Merger Agreement, including the forum selection clause.

Even if the Hadleys are not third-party beneficiaries to the Merger Agreement, the Court concludes that they are closely related to the Merger Agreement, and therefore, reasonably bound by its forum selection clause. "Forum selection clauses bind nonsignatories that are closely related to the contractual relation or that should have foreseen governance by the clause." *Jordan v. SEI Corp.,* 1996 U.S. Dist. LEXIS 7627, at *18-19 (E.D. Pa. June 4, 1996). *See also Hugel v. Corporation of Lloyd's,* 999 F.2d 206, 209-210 (7th Cir.1993) (binding corporations owned and controlled by contracting party); *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 n. 5 (9th Cir.1988) (binding parent companies of contracting party and individual directors); *Coastal Steel,* 709 F.2d at 202 (binding a third-party beneficiary). In the instant case, the Hadleys are closely related to the Merger Agreement for the reasons discussed in the context of the Court's third-party beneficiary analysis. Accordingly, the Court concludes that the Hadleys should have foreseen governance by the forum selection clause.

3. Do the Claims Against the Hadleys Arise from their Status Relating to the Merger Agreement?

In order for the Hadleys to be bound by the terms of the forum selection clause, the claims asserted must arise from the Merger Agreement at issue. *See DuPont,* 269 F.3d at 197; *see also Indus. Elec. Corp. v. Power Distrib. Group, Inc.,* 215 F.2d 677, 680 (7th Cir.2000) (holding that a third-party beneficiary was not compelled to arbitrate claims because the claims did not arise out of the contract from which it derived its third-party status). Here, the Hadleys concede that the present claim arises out of the Merger Agreement. Because the claim is based on the Merger Agreement to which the Hadleys are bound, the Court concludes that the Hadleys are bound by the terms of the forum selection clause contained within the Merger Agreement.

*7 In sum, the Court concludes that Jack Hadley and Thomas J. Hadley are third-party beneficiaries, or at the very least, closely related to the Merger Agreement, which contains a valid forum selection clause such that the Hadleys are bound by the forum selection clause. Because the Hadleys are bound by the forum selection clause, the Court concludes that they have expressly consented to the jurisdiction of this Court.

B. Whether the Hadleys are Subject to Personal Jurisdiction Under Specific Jurisdiction Principles?

In the alternative, even if the Hadleys were not bound by the forum selection clause such that they cannot be said to have consented to jurisdiction in this Court, the Court would conclude that the Hadleys are subject to the Court's jurisdiction under the principles of specific jurisdiction. In the absence of consent to jurisdiction, the determination of whether personal jurisdiction exists is a two-step process under Delaware law. *Jeffreys v. Exten,* 784 F.Supp. 146, 150 (D.Del.1992). First, in personam jurisdiction must exist under the applicable state long-arm statute. *See* 10 *Del. C.* § 3104 (2003). Second, the exercise of jurisdiction must comport with the Due Process Clause of the Federal Constitution under the standards announced in *International Shoe Company v. Washington,* 326 U.S. 310 (1945). *See Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984) ; *Hercules, Inc. v. Leu Trust and Banking (Bahamas) Ltd.,* 611 A.2d 476 (Del.1992), *cert. dismissed,* 507 U.S. 1025 (1993).

In order to determine whether in personam jurisdiction over the Hadleys exists, the Court must determine whether "the alleged conduct of a defendant comes within one of the provisions of the long-arm statute." *Blue Ball Props., Inc. v. McClain,* 658 F.Supp. 1310, 1315 (D.Del.1987). Third Party Plaintiffs assert that jurisdiction exists under 10 *Del. C.* § 3104(c)(1). This subsection of Delaware's long-arm statue provides that a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 7

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)

**(Cite as: 2003 WL 21960406 (D.Del.))**

an agent "transacts any business or performs any character of work or service in the State." 10 *Del.C.* § 3104(c)(1). When applying the statute, it must be construed liberally, to "confer jurisdiction to the maximum extent possible under the Due Process Clause." *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,* 863 F.Supp. 186, 188 (D.Del.1993) ; *accord LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986).

Subsection (c)(1) has been interpreted to be a specific jurisdiction provision. *Intel Corp. v. Broadcom Corp.,* 167 F.Supp.2d 692, 700 (D.Del.2001). Specific jurisdiction requires that there be a nexus between the plaintiff's cause of action and the conduct of the defendant. *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 n. 8 (1983). Therefore, personal jurisdiction can be asserted over a defendant on the basis of a single act related to the state, if the claim has its basis in the asserted transaction. *Blue Ball,* 658 F.Supp. at 1316; *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1466 (D.Del.1991); *Tristrata Tech., Inc. v. Neoteric Cosmetics, Inc.,* 961 F.Supp. 686, 690 (D.Del.1997) . The relatedness requirement only provides that the plaintiff cannot assert personal jurisdiction over a defendant on claims that are unrelated to the defendant's jurisdictional contacts. *Intel,* 167 F.Supp.2d at 704; *Int'l Shoe,* 326 U.S. at 317-18. The analysis then rests on two questions: (i) whether the Hadleys "transacted business" in Delaware to satisfy subsection (c)(1); and (ii) if so, whether those contacts in Delaware gave rise to the present controversy.

1. Whether the Hadleys Transacted Business in Delaware?

*8 Because Third Party Plaintiffs assert jurisdiction over the Hadleys in their individual capacities based on actions taken in their capacities as corporate agents, the fiduciary shield doctrine is implicated. The fiduciary shield doctrine is a judicially created doctrine that immunizes acts performed by an individual in the individual's capacity as a corporate employee from serving as the foundation for the exercise of personal jurisdiction over that

individual. *Res. Ventures,* 42 F.Supp.2d at 434. In the past, this Court has concluded that the fiduciary shield doctrine is not an absolute bar to personal jurisdiction over a corporate agent. *Mobil Oil,* 833 F.Supp. at 443. As such, the mere fact that the defendant has acted through his corporation is insufficient to bar jurisdiction over the defendants individually. *Tristrata,* 961 F.Supp. at 690. Thus, the Court must read § 3104(c)(1) broadly and consider all forum related contacts of the individual defendants, even those taken in their fiduciary capacities. *Res. Ventures,* 42 F.Supp.2d at 434; *Brady v. Preferred Florist Network, Inc.,* 791 A.2d 8, 12 (Del. Ch.2001).

In support of their argument that the Hadleys are subject to this Court's jurisdiction, Third Party Plaintiffs point to the Delaware Chancery Court's decision in *NRG Barriers, Inc. v. Jelin,* C.A. No. 15013, 1996 Del. Ch. LEXIS 81 (Del. Ch. July 1, 1996). This Court finds *NRG* to be on point factually and is persuaded by the *NRG* Court's analysis. In *NRG,* the Chancery Court denied defendant-shareholder's Motion to Dismiss for lack of in personam jurisdiction. 1996 Del. Ch. LEXIS 81, at *6. The court found that the actions of defendant-shareholders constituted the "transact[ion] of business" sufficient to subject them to jurisdiction under Subsection (c)(1) of Delaware's long-arm statute. *Id.* The court pointed to the following four facts as support for its finding: (i) defendants were shareholders in a closely-held Delaware corporation; (ii) defendants entered into a Stock Purchase Merger Agreement, a contract with a Delaware corporation to sell their stock in the Delaware close corporation; (iii) the parties expressly agreed Delaware law governed the Stock Purchase Merger Agreement; and (iv) Delaware lawyers participated in drafting the Merger Agreement and rendered legal advice with respect to Delaware law. *Id.* at *7.

The Court finds that three of the four factors cited in *NRG* are present in this case. As to the first factor, the Hadleys were shareholders in Kiamichi, a closely-held Delaware corporation. Second, the Hadleys, as shareholders, entered into the Merger Agreement, which provided for a stock purchase

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 8

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)

**(Cite as: 2003 WL 21960406 (D.Del.))**

and merger. Third, as the Court has previously discussed, the parties consented to the Merger Agreement, which contained a Governing Law Clause and provided that the Merger Agreement would be enforced in accordance with the laws of Delaware. (D.I. 95, Exh. A. at § 11.5).

**\*9** In support of their contention that the statutory requirements of Delaware's long-arm statute have not been met, the Hadleys have provided the Court with affidavits that assert that they have not been in Delaware regarding the subject matter of this action. (D.I. 92 at 7). However, the Hadleys fall short in their effort to avoid jurisdiction by relying too heavily on physical ties to Delaware. As noted in *NRG*, the court is not limited to a "personal, physical presence ... within the borders of a state" when determining whether personal jurisdiction exists. 1996 Del. Ch. LEXIS 81, at \*10.

The Court concludes that the Chancery Court's holding in *NRG* should be followed, and therefore, concludes that the Hadleys' actions satisfy the minimum contacts required by Subsection (c)(1) of the Delaware long-arm statute. Having concluded that the Hadleys transacted business in Delaware sufficient to satisfy the Delaware long-arm statute, the Court must next determine whether the Hadleys' contacts with Delaware are related to the present controversy. Because neither party disputes that the Merger Agreement and resulting stock purchase and merger gave rise to the present controversy, the Court concludes that the statutory requirement of specific jurisdiction has been met.

2. Due Process Requirements

Having determined that the Hadleys have satisfied the statutory basis for establishing personal jurisdiction, the Court must next consider whether the exercise of personal jurisdiction comports with the constitutional requirements. Due process requires that a defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." ' *Int'l Shoe*, 326 U.S. at 319. In *Hanson v. Denckla*, the Supreme Court noted that "it is essential that in each case there be

some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253 (1958).

In addition, the defendant's conduct and connection with the forum State must be such that he should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). A Due Process analysis requires the court to examine the relationship between the forum, the litigation, and the defendant to determine whether a defendant can be fairly subjected to the court's personal jurisdiction. *Sternberg v. O'Neil,* 550 A.2d 1105, 1120 (Del.1988).

After reviewing the facts in light of the applicable principles, the Court concludes that the exercise of personal jurisdiction in this case comports with due process. The Hadleys purposely availed themselves of Delaware law. As shareholders, they approved the Merger Agreement, which explicitly stated that Delaware law would govern all disputes arising from the Merger Agreement after the merger. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). Further, Jack Hadley was instrumental in the negotiations that led to the Merger Agreement. Both Jack and Thomas J. Hadley voted their shares in favor of the Merger Agreement. By approving the Merger Agreement, the Hadleys could have reasonably anticipated being haled into the Delaware courts. *See World-Wide Volkswagen,* 555 U.S. at 291-292.

**\*10** Finally, the burden on the Hadleys to litigate the present claim in Delaware is minimal when weighed against the interests of Third Party Plaintiffs and the State of Delaware. Because this claim arises out of Thomas J. Hadley's breach of contract claims, which are also being litigated in Delaware, he cannot contend that he would be unduly burdened by being made to litigate the instant claims in Delaware, as well. Further, the State of Delaware has a strong interest in adjudicating related claims in the same court. Finally, the Hadleys have failed to present the Court with any factual support for why jurisdiction would

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 9

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)

**(Cite as: 2003 WL 21960406 (D.Del.))**

violate Due Process or be unduly burdensome. Accordingly, the Court concludes that the Due Process requirements are satisfied.

V. Conclusion

In sum, the Court concludes that the forum selection clause contained within the Merger Agreement is valid and enforceable against the Hadleys in their individual capacities. Additionally, the Court concludes that the exercise of personal jurisdiction over the Hadleys is proper under the Delaware long-arm statute and comports with Due Process. Accordingly, the Third Party Defendants' Motion to Dismiss (D.I.92) will be denied.

An appropriate Order will be entered.

*ORDER*

NOW THEREFORE, for the reasons stated set forth in the Opinion issued this date, IT IS HEREBY ORDERED this *12th* day of August 2003, that the Third Party Defendants' Motion to Dismiss for Lack of Jurisdiction (D.I.92) is *DENIED*.

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 4

## Westlaw.

Not Reported in F.Supp.2d                                                          Page 1

Not Reported in F.Supp.2d, 2003 WL 22769051 (D.Del.)

**(Cite as: 2003 WL 22769051 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
In re: DAIMLERCHRYSLER AG SECURITIES
LITIGATION
TRACINDA CORPORATION, a Nevada
Corporation, Plaintiff,
v.
DAIMLERCHRYSLER AG, a Federal Republic of
Germany corporation; Daimler-Benz AG,
a Federal Republic of Germany corporation; Jürgen
Schrempp, a citizen of the
Federal Republic of Germany; and Manfred Gentz,
a citizen of the Federal
Republic of Germany, Defendants.
**No. Civ.A. 00-993-JJF.**

Nov. 19, 2003.
A. Glichrist Sparks, III, Alan J. Stone, and Brian J.
McTear, of Morris, Nichols, Arsht & Tunnell,
Wilmington, Delaware. William G. McGuinness,
and Julie E. Kamps, of Fried, Frank, Harris, Shriver
& Jacobson, New York, New York. Terry
Christensen, Mark G. Krum, of Christensen, Miller,
Fink, Jacobs, Glaser, Well & Shapiro, LLP, Los
Angeles, California, for Plaintiff Tracinda
Corporation, of counsel.

Thomas J. Allingham II, Robert S. Saunders, and
Stephen D. Dargitz, of Skadden, ARPS, Slate,
Meagher & Flom LLP, Wilmington, Delaware.
Jonathan J. Lerner, Lea Haber Kuck, Joseph N.
Sacca, and Jacob E. Hollinger, of Skadden, ARPS,
Slate, Meagher & Flom LLP, New York, New
York, for Defendants DaimlerChryler AG,
Daimler-Benz AG, Jürgen Schrempp and Manfred
Gentz, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Defendants DaimlerChrysler AG, Daimler-Benz
AG, Jürgen Schrempp and Manfred Gentz
(collectively, "Defendants") have filed a Motion To
Strike Tracinda's Jury Demand (D.I.802) pursuant
to Federal Rule of Civil Procedure 39(a)(2)
requesting that the jury trial demanded by Plaintiff
Tracinda Corporation ("Tracinda") be stricken as it
pertains to its claims against the Individual
Defendants, Defendants Schrempp and Gentz, and
the Corporate Defendants, Defendants
DaimlerChrysler AG ("DaimlerChrysler") and
Daimler-Benz AG ("Daimler-Benz"). For the
reasons discussed, I will grant Defendants' Motion
and strike Tracinda's jury demand.

I. The Parties' Contentions

By their Motion, Defendants contend that Tracinda
waived, expressly and in writing, any rights it may
have had to a jury trial in connection with claims
arising out of the merger between Daimler-Benz
and Chrysler Corporation ("Chrysler") to form
DaimlerChrysler. Defendants' argument is rooted in
the provisions of the Stockholder Agreement
entered into by Daimler-Benz, Chrysler, and Kirk
Kerkorian in connection with the Business
Combination Agreement ("BCA") which
effectuated the merger. The Stockholder Agreement
specifically recites that Tracinda and Kerkorian
entered into the Stockholder Agreement to induce
Daimler-Benz to enter into the BCA and waives the
parties' rights to a jury trial "with respect to any
claim, counterclaim or action arising out of or in
connection with [the Stockholder Agreement] or the
transactions contemplated hereby." Stockholder
Agreement § 4.7.

Defendants contend that the jury waiver provision
of the Stockholder Agreement is valid and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22769051 (D.Del.)

**(Cite as: 2003 WL 22769051 (D.Del.))**

enforceable and that Tracinda has recognized the validity of this provision because it demanded a jury trial against the Individual Defendants, and not against the Corporate Defendants. Defendants also contend that the express language of the waiver is broad and encompasses all of Tracinda's claims in this action. Although Defendants recognize that the Individual Defendants did not sign the Stockholder Agreement, Defendants contend that the Individual Defendants are entitled to enforce the waiver clause as agents of the Corporate Defendants and third party beneficiaries of the Stockholder Agreement. In addition, Defendants contend that Tracinda is equitably estopped from denying the scope of the waiver clause.

In response, Tracinda contends that Defendants Schrempp and Gentz cannot invoke the jury waiver provision of the Stockholder Agreement, because they were not parties to that agreement. Tracinda contends that, in order to effectuate the right to a jury trial guaranteed by the Seventh Amendment of the United States Constitution, every reasonable presumption against waiver should be indulged and the waiver provision should be narrowly construed. Tracinda further contends that if it is entitled to a jury trial with respect to its claims against Defendants Schrempp and Gentz, then the entire case should be tried to a jury to prevent any conflict with Tracinda's Seventh Amendment rights which may arise as a result of a simultaneous bench and jury trial.

## II. DISCUSSION

**\*2** The right to a jury trial is a fundamental right guaranteed by the Seventh Amendment of the United States Constitution and governed by federal law. *Simler v. Conner,* 372 U.S. 221, 221-222 (1963). However, this right can be waived by contract if the waiver is knowing, voluntary and intelligent. *See e.g. Telum, Inc. v. E.F. Hutton Credit Corp.,* 859 F.2d 835, 837 (10th Cir.1988) (recognizing that "[a]greements waiving the right to trial by jury are neither illegal nor contrary to public policy"); *First Union Nat'l Bank v. United States,* 164 F.Supp.2d 660, 663 (E.D.Pa.2001). As a general matter, courts construe jury trial waivers

narrowly and "indulge every reasonable presumption against waiver." *Collins v. Government of Virgin Islands,* 366 F.2d 279, 284 (3d Cir.1966). Nevertheless, courts routinely enforce jury trial waivers. *See e.g. Wechsler v. Hunt Health Sys., Ltd.,* 2003 WL 21878815, \*2 (S.D.N.Y. Aug. 8, 2003); *Today's Man, Inc. v. Nationsbank, N.A.,* 2000 WL 822500, \*4 (E.D. Pa. June 23, 2000).

Examining the jury trial waiver provision of the Stockholder Agreement in light of these principles and the facts and circumstances of this case, I conclude that Tracinda waived its right to a jury trial. In pertinent part, Section 4.7 of the Stockholder Agreement provides:

> Each of the parties hereto ... agrees to waive any right to a trial by jury with respect to *any claim,* counterclaim or *action arising out of or in connection with this Agreement or the transactions contemplated hereby.*

(emphasis added). Reading the plain and unambiguous language of the Stockholder Agreement, I find, without question, that the jury trial waiver is enforceable as to the Corporate Defendants. With regard to the Individual Defendants, I am likewise persuaded that the plain language of the Stockholder Agreement supports Tracinda's waiver of its right to a jury trial. The waiver is broadly worded and applies to any claim or any action "arising out of or in connection with this Agreement or the transactions contemplated hereby" without limitation as to whom that action is brought against. *See e.g. Curtis Center L.P. v. Sumitomo Trust & Banking Co.,* 1995 WL 365411, \*2 (E.D. Pa. June 15, 1995) (recognizing that waiver of all claims "arising out of or relating to this Agreement or the transactions contemplated hereby" was "sweeping" waiver which encompassed claims for fraud, bad faith, tortious interference and misappropriation of trade secrets). Because Tracinda's claims against the Individual Defendants arise out of and in connection with the Stockholder Agreement and the merger, which is the major transaction contemplated by the Stockholder Agreement, I conclude that they are encompassed by the plain language of the waiver.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22769051 (D.Del.)

**(Cite as: 2003 WL 22769051 (D.Del.))**

Tracinda suggests that Defendants have offered no proof that Tracinda knowingly, voluntarily or intelligently waived its right to a jury trial against Defendants Schrempp and Gentz. In the circumstances of this case, I am not persuaded by Tracinda's argument. In determining whether a waiver was entered into knowingly, intentionally and voluntarily, courts consider such factors as: (1) the negotiability of the contract terms; (2) any disparity in bargaining power between the parties; (3) the business acumen of the party opposing the waiver; and (4) the conspicuousness of the jury waiver provision. *See e.g., Wechsler v. Hunt Health Systems, Ltd.,* 2003 WL 21878815 at *3 (citations omitted). Tracinda is a sophisticated and experienced business entity that was represented by sophisticated counsel during the negotiation of the Stockholder Agreement. The jury waiver clause is plainly worded and there is no suggestion that Tracinda lacked any bargaining power during the negotiations. Accordingly, I cannot find that Tracinda entered into the jury trial waiver unknowingly, unintelligently or involuntarily. *See e.g. Telum,* 859 F.2d at 838; *Russell-Stanley Holdings, Inc. v. Buonanno,* 2002 WL 655162, *4 (S.D.N.Y. Apr. 22, 2002); *Phoenix Four Grantor Trust # 1 v. 642 N. Broad St. Assocs.,* 2000 WL 1717261, *2 (E.D.Pa. Nov. 15, 2000).

*3 Tracinda also contends that the waiver is unenforceable as to Defendants Gentz and Schrempp, because they are not parties to the Stockholder Agreement. In support of its position, Tracinda advances the Third Circuit's decision in *Dayhoff, Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1296 (3d Cir.1996), a case involving an arbitration clause. In *Dayhoff,* the Third Circuit held that arbitration clauses "can be enforced only by the signatories to those agreements." *Id.* at 1296. However, the Third Circuit also recognized the continuing validity of its decision in *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110 (3d Cir.1993) that " '[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." ' *Dayhoff,* 86 F.3d at 1296-1297 (citing *Pritzker,* 7 F.3d at 1121).

In this case, I am persuaded that the jury trial waiver is enforceable as to Defendants Schrempp and Gentz. Defendants Schrempp and Gentz are agents of the Corporate Defendants, and Tracinda's Complaint is based upon the actions of those Defendants as agents of the Corporate Defendants. *See e.g. Pritzer,* 7 F.3d at 1121; *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1281 (6th Cir.1990) (applying arbitration clause to securities claims against nonsignatory officers of corporation). In addition, Tracinda has alleged that all Defendants acted in concert with each other, and therefore, I conclude that Tracinda is equitably estopped from arguing that the jury waiver applies to only certain defendants. *See e.g. MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947-948 (11th Cir.1999) (acknowledging in context of arbitration provision that equitable estoppel applies where signatory to contract raises allegations of substantially interdependent and concerted misconduct by both nonsignatories and signatories to contract and holding that non-signatory could enforce arbitration agreement); *Hoffman v. Deloitte & Touche, LLP,* 143 F.Supp.2d 995, 1004 (N.D.Ill.2001) (holding that plaintiffs were equitably estopped from avoiding arbitration where they raised "allegations of substantially interdependent and concerted misconduct by both the signatory ... and the non-signatories").

Tracinda disputes the applicability of the aforementioned cases on the basis that those cases involve arbitration clauses and not jury trial waiver clauses. However, Tracinda itself raises *Dayhoff,* a case which involves an arbitration clause. While there are certainly differences between arbitration clauses and jury waiver clauses, courts have also recognized the interrelatedness of arbitration and jury waiver clauses, because an agreement to arbitrate necessarily results in the loss of the right to a jury trial. *See e.g. Snowden v. Checkpoint Check Cashing,* 290 F.3d 631, 638 (4th Cir.) (rejecting argument that an agreement to arbitrate did not constitute a jury waiver), *cert. denied,* 537 U.S.1987 (2002); *In re Currency Conversion Fee Antitust Litig.,* 265 F.Supp.2d 385, 414 (S.D.N.Y.2003) (holding that plaintiff who enters into arbitration agreement is deemed to have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4

Not Reported in F.Supp.2d, 2003 WL 22769051 (D.Del.)

**(Cite as: 2003 WL 22769051 (D.Del.))**

forgone right to jury trial). Thus, courts have found cases involving arbitration clauses to be instructive in matters pertaining to jury waiver clauses. *See Telum,* 859 F.2d 838 (analogizing jury waiver clauses to arbitration clauses); *Gurfein v. Sovereign Group,* 826 F.Supp. 890, 921 (E.D.Pa.1993) (recognizing the propriety of analogy to arbitration clauses in context of cases involving jury waiver provisions).

*4 In this case, I find that the above-referenced arbitration cases have particular relevance here, because of the position of Defendants as agents of the Corporate Defendants involved in an action which directly relates to the Stockholder Agreement and the merger transaction expressly contemplated by the Agreement. To allow the Individual Defendants to be subject to a jury trial on the same claims and issues related to the Corporate Defendants would, in my view, deprive the Corporate Defendants of the benefit that the jury trial waiver provision of the Stockholder Agreement was intended to provide. This view is not inconsistent with the law as it pertains to jury trial waivers, despite the legal differences between jury waiver provisions and arbitration provisions. *See Okura & Co. v. Careau Group,* 783 F.Supp. 482, 488-490 (C.D.Cal.1991) (holding that contractual jury waiver clause applied to counterclaims against non-signatories of contract where counterclaims were related to or derived from agreement in question); *Leav v. Weitzner,* 51 N.Y.S.2d 775, 777 (N.Y.App.Div.1944) (holding that jury trial waiver in lease agreement applied to nonsignatory defendants where action arose out of lease agreement).

In sum, I conclude that the jury demand should be stricken as it pertains to the Individual Defendants, as well as the Corporate Defendants. Tracinda has recognized the validity of the jury waiver clause as it pertains to the Corporate Defendants, and I conclude that Defendants Schrempp and Gentz as agents of the Corporate Defendants should be encompassed in that waiver. The waiver is broadly worded and applies without restriction to all claims and actions relating to the Stockholder Agreement and the merger contemplated by the Stockholder

Agreement.

III. CONCLUSION

For the reasons discussed, Defendants' Motion To Strike Tracinda's Jury Demand will be granted.

An appropriate Order will be entered.

*ORDER*
At Wilmington, this 19th day of November 2003, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion To Strike Tracinda's Jury Demand (D.I.802) is GRANTED.

Not Reported in F.Supp.2d, 2003 WL 22769051 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 1224634 (Trial Motion, Memorandum and Affidavit) Plaintiff Tracinda Corporation's Answering Post Trial Brief (May. 14, 2004)

• 2004 WL 1224637 (Trial Motion, Memorandum and Affidavit) Defendants' Responsive Post-Trial Brief (May. 14, 2004)

• 2004 WL 1224635 (Trial Motion, Memorandum and Affidavit) Defendants' Post-Trial Memorandum of Law and Memorandum in Support of Their Motion for Judgment as a Matter of Law (Apr. 23, 2004)

• 2004 WL 1224636 (Trial Motion, Memorandum and Affidavit) Plaintiff Tracinda Corporation's Opening Post Trial Brief (Apr. 23, 2004)

• 2004 WL 481714 (Trial Pleading) Tracinda Corporation's Reply Memorandum in Support of its Motion for Award of Sanctions Against Defendants for Late Production of Documents (Feb. 20, 2004)

• 2004 WL 481713 (Trial Pleading) Tracinda Corporation's Memorandum of Points and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22769051 (D.Del.)

**(Cite as: 2003 WL 22769051 (D.Del.))**

Authorities in Support of its Motion for Award of Sanctions Against Defendants for Late Production of Documents (Jan. 23, 2004)

• 2004 WL 353914 (Trial Motion, Memorandum and Affidavit) Plaintiff Tracinda Corporation's Objections to the Report and Recommendations of Special Master Collins J. Seitz, Jr., Esq. (Jan. 21, 2004)

• 2003 WL 23180946 (Trial Filing) Statement of Plaintiff Tracinda Corporation in Connection With Proceedings Before the Special Master With Respect to Certain Belatedly Produced Documents (Dec. 19, 2003)

• 1:00CV00993 (Docket) (Nov. 28, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.