IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LAWRENCE P. ORGAN,                          :
                                            :
        Plaintiff,                          :
                                            :
    v.                                      : Civil Action No. 05-867-JJF
                                            :
MARK BYRON, BEN KAAK and                    :
CATHERINE BARBARO,                          :
                                            :
        Defendants.                         :

Jeffrey S. Goddess, Esquire, of ROSENTHAL, MONHAIT & GODDESS,
P.A., Wilmington, Delaware.
Of Counsel: Jack L. Haan, Esquire, of SHAHEEN, NOVOSELSKY, STAAT,
FILIPOWSKI & ECCLESTON, P.C., Chicago, Illinois.
Attorneys for Plaintiff.

James L. Holzman, Esquire, and J. Clayton Athey, Esquire, of
PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware.
Of Counsel: Robert B. Lovett, Esquire, and Christopher F.
Robertson, Esquire, of SEYFARTH SHAW, LLP, Boston, Massachusetts.
Attorneys for Defendants.

**MEMORANDUM OPINION**

June 5, 2006
Wilmington, Delaware

Farnan, District Judge

Presently before the Court is Defendants' Motion to Dismiss (D.I. 30) pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court will grant Defendants' Motion.

## BACKGROUND

Plaintiff originally filed this action in the United States District Court for the Northern District of Illinois. He alleged that when he entered into an agreement to sell his 54.1% interest in his company, Custom Offers LLC, to Mosaic Group, Inc., Defendants, directors and officers of Mosaic, failed to disclose "critical, adverse facts relating to Mosaic's business and financial future." (D.I. 22 Att. 1 at 1.) Claiming that Defendants had violated Section 12 of the Illinois Securities Law of 1953, 815 ILCS 5/12 (2005), Plaintiff sought rescission of the merger transaction, $27,100,000 in damages, attorney's fees, interest and costs. (Id. at 2.) Pursuant to a forum selection clause in the Merger Agreement, Defendants moved the Illinois court to dismiss the case for improper venue under Fed. R. Civ. P. 12(b)(3). Judge Zagel agreed with Defendants that the forum selection clause precluded Plaintiff from litigating his claims in Illinois, and ordered the case transferred to this Court pursuant to 28 USC §1406(a). (D.I. 22, Att. 23.)

## DISCUSSION

**I. Standard of Law**

1

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). To that end, the Court assumes that all factual allegations in Plaintiff's pleading are true, and draws all reasonable factual inferences in the light most favorable to Plaintiff. Amiot v. Kemper Ins. Co., 122 Fed. Appx. 577, 579 (3d Cir. 2004). However, the Court should reject "unsupported allegations," "bald assertions," or "legal conclusions." Id. The motion to dismiss should be granted only "when it appears beyond doubt that the plaintiff[] can prove no set of facts which would entitle [him] to relief." In re Great Atl. & Pac. Tea Co. Sec. Litig., 103 Fed. Appx. 465, 468 (3d Cir. 2004).

**II. Analysis**

Defendants contend that the Delaware choice of law provision in the Merger Agreement precludes Plaintiff from making a claim based on Illinois Securities Law ("ISL"), and that such a claim would in any event be time-barred under 10 Del.C. §8121. They further argue that any attempt to amend the complaint to state a claim under Delaware law would be time-barred under the statute of limitations in the Delaware Securities Act, 6 Del.C. §7323(e),

under Delaware's general statute of limitations for fraud, and under a contractual limitations period provision in the Merger Agreement. Finally, Defendants argue that any claims for fraud or misrepresentation are barred under the Merger Agreement's integration clause, which on their reading bars claims based on communications not explicitly included in the agreement.

Plaintiff replies that the Merger Agreement's choice of law provision does not apply to ISL claims, both by its terms and on public policy grounds. He also contends that Defendants, themselves not signatories to the Merger Agreement, do not have standing to enforce the choice of law provision as they are not third-party beneficiaries. He disputes that either the agreement's integration clause or its contractual limitations period provision precludes him from pursuing an ISL claim, and that §8121 would bar his ISL claims in Delaware. Plaintiff's answer does not respond to Defendants' arguments that any claims under Delaware law would be time-barred, explicitly disclaiming any intention of seeking leave to amend his complaint to state a claim under Delaware law.

Because the Court concludes that Defendants have standing to enforce the Delaware choice of law provision, and that the provision applies to Plaintiff's ISL claims, the Court will grant Defendants' Motion to Dismiss.

A.  Contractual Choice of Law Provisions Generally.

Upon a transfer of a suit under §1406(a), the transferee court applies the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941); Chadwick v. Arabian American Oil Co., 656 F.Supp. 857, 860 (D.Del. 1987). Delaware courts will generally recognize a valid choice of law provision in a contract, as long as "the jurisdiction selected bears some material relationship to the transaction." Annan v. Wilmington Trust Co. Trustee, 559 A.2d 1289, 1292 (Del. 2000). Here, the merger transaction itself was to take place in Delaware, a process that included the creation of two Delaware companies. (D.I. 33 at 16.) Therefore, the Court will recognize the choice of law provision in the contract as long as it is otherwise valid and applicable to the case at bar.

B.  Defendants' Standing to Enforce the Choice of Law Provision.

In his Memorandum and Opinion Order, Judge Zagel held that Defendants had standing to enforce the Merger Agreement's forum selection clause despite not being signatories or beneficiaries. (D.I. 22 Att. 23.) He reached this conclusion on an equitable estoppel theory, reasoning that "[p]laintiff bargained for and agreed to [the forum selection clause] as part of his contract with Mosaic," and therefore, Defendants, who were officers of Mosaic, do not lack standing to bind Plaintiff to that promise.

4

(Id. at 5.) Otherwise, Plaintiff could simply sidestep the forum selection clause by suing officers of the corporation rather than the corporation itself. (Id. at 4.)

The law of the case doctrine constrains this Court from reconsidering issues already litigated in a coordinate district court. Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir 1982). Third Circuit case law does not directly address the proposition that in certain circumstances a non-signatory has standing to bind a signatory to the provisions of a contract. However, the principle has been recognized by other federal courts. The Fifth Circuit has held, for example, that a nonsignatory may bind a signatory to an arbitration clause in a contract when warranted by the principle of equitable estoppel. Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527-28 (3d Cir 2000). In the case principally relied upon by Judge Zagel, Judge Posner held that a plaintiff could not avoid a forum selection clause in a contract simply "by suing an affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates." American Patriot Ins. Agency, Inc. V. Mut. Risk Mgt. Ltd., 364 F.3d 884, 889 (7th Cir. 2004).

In his answer to Defendants' Motion to Dismiss, Plaintiff repeats the contention that because Defendants are not signatories to the agreement and, according to Plaintiff, cannot

5

be considered third party beneficiaries, they lack standing to enforce any contractual provisions. That argument did not avail Plaintiff in Illinois with respect to the forum selection clause and it will not avail him here with respect to the choice of law provision. There is no relevant semantic difference between the two, nor a policy rationale for distinguishing them. The result of allowing the Plaintiff to avoid a choice of law provision to which he is contractually bound by filing a complaint against an employee of the signatory rather than the signatory itself is no less unfair than allowing him to dodge the forum selection clause in the same manner. Plaintiff bargained for the choice of law provision, and should be bound to it in court. Accordingly, the Court concludes that Defendants have standing to enforce the choice of law clause against Plaintiff.

    C.    <u>Application of the Choice of Law Provision to an Illinois Securities Law Claim.</u>

Plaintiff first insists that "[d]efendants cannot justifiably argue that only Delaware law applies, because general choice of law principles do not apply to the broad coverage of the blue sky laws." (D.I. 33 at 6.) Plaintiff is correct only insofar as he argues that choice of law principles do not inextricably bind courts in considering the issue of which jurisdiction's blue sky laws to apply. "The understanding of the parties in a transaction whether it falls within the purview of a particular blue sky law is not determinative of its legal effect

6

. . . and a contractual choice of law provision is not binding on the court." 69A Am. Jur. 2d Securities Regulation - State §18 (2006). However, after examining the relevant case law and evaluating Plaintiff's policy arguments, the Court concludes that the choice of law provision in question here should nonetheless apply.

The purview of a contractual choice of law provision is not limited to contract claims; such a clause can govern "claims in tort . . . on the grounds that false contractual representations were made." Abry Partners V, L.P. v. F&W Acquisition LLC, 891 A.2d 1032 (Del. Ch. 2006). Plaintiff argues that the choice of law clause by its terms excludes state securities laws claims as it does not include language indicating that it would encompass claims "arising out of or relating to" the Agreement. The clause, however, explicitly states that not only will "the Merger" be governed by Delaware Law, but so will "all other aspects of this Agreement." (D.I. 31 Ex. A at 59.) Had the parties wished to limit the choice of law clause to the merger and the resulting corporate entity, they could have done so without inserting the broad provision mandating the application of Delaware Law to "all . . . aspects of [the] agreement." Furthermore, Judge Zagel concluded that "without question, the claims and the relief sought are closely related to the Merger Agreement if not central to the claims and defenses in this

7

case," (D.I. 22, Att. 23 at 7), and the Court in <u>Abry</u> applied an almost identically worded choice of law provision to a misrepresentation claim. <u>Abry</u>, 891 A.2d at 1046. As such, Plaintiff's contention that the choice of law clause does not apply because his claim does not implicate either the "merger transaction itself" nor the "enforcement and interpretation" of the Agreement is not tenable. Giving force to such ambiguous semantic arguments in the application of a choice of law clause would contradict Delaware's policy "to respect the chosen law of contracting parties, so long as that law has a material relationship to the transaction." <u>Id</u>.

Plaintiff points to <u>Gloucester Holding Corp. v. U.S. Tape and Sticky Products LLC</u>, 832 A.2d 116 (Del. Ch. 2003), which held that a particular choice of law clause was insufficiently broad to cover a tort claim "arising out of" the agreement. <u>Id</u>. at 124. There, however, the clause expressly limited its reach to the "'rights of the parties' derived from the contract." <u>Id</u>. Such a provision is relevantly different from one extending to "all . . . aspects of the Agreement," indicating a desire by the parties to restrict the clause to specifically contractual claims. In another case, a court refused to apply an Illinois choice of law provision to a tort claim because the parties had expressly limited it to govern the agreement's "validity, construction and enforcement." <u>State Nat'l Bank v. Academia,</u>

8

Inc., 802 S.W.2d 282, 289 (Tex. Ct. App. 1990). Plaintiff's arguments would have far more persuasive force had the clause in question here been phrased in a similar way instead of broadly.

Next Plaintiff argues that applying the choice of law clause to ISL claims would contradict Illinois public policy, as the laws were passed to protect Illinois citizens from securities fraud. A choice of law clause can be held "unreasonable" if, inter alia, "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). Delaware adopts the choice of law principles set out in Restatement 2d, Conflict of Laws, Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc., 564 A.2d 681 (Del. 1978), §288 and §6 of which add that "the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue" must be considered. Restatement (Second) of Conflict of Laws §§ 6, 288 (1971). Thus, in making a choice of law determination, Delaware courts must also consider "the public policy of the jurisdiction in which the actions of the [tortfeasor] cause harm," in this case Illinois. Playtex Family Products, Inc. v. St. Paul Surplus Lines Ins. Co., 564 A.2d 681, 689 (Del. 1989).

Defendants argue, correctly, that the decisions of Illinois courts preclude Plaintiff's argument that enforcement of the

choice of law provision would contravene Illinois public policy. In Ashenden v. Lloyd's of London, the United States District Court for the Northern District of Illinois dismissed the plaintiff's argument that enforcement of the forum selection and choice of law clauses would be unreasonable because it would violate Illinois public policy. Ashenden v. Lloyd's of London, 1996 U.S. Dist. LEXIS 18336, at *7 (N.D. Ill. Dec. 9, 1996). Relying on the Seventh Circuit's decision in Bonny v. Society of Lloyd's, 3 F.3d 156 (7th Cir 1996), the Court expressly stated that "Illinois policy . . . is not undermined" by forcing the plaintiffs to sue under English securities law pursuant to the contractual forum selection and choice of law provisions. Ashenden, 1996 U.S. Dist. LEXIS 18336 at *11. Even if Bonny did not govern, the Court stated, requiring the plaintiffs to sue under English law would not contravene Illinois public policy because it would not leave them without any recourse. Id. at 12. "So long as there are remedies available in England, Illinois policy will not be contravened by enforcing the forum selection clause," which would, in that case, also have mandated the use of English rather than Illinois law. Id. Other Illinois decisions employ a similar principle. One court held that a Bermuda choice of law clause could not be against Illinois public policy "if Bermuda law and Illinois law do not differ." Joy v. Hay Group, Inc., 2003 U.S. Dist. LEXIS 16045, at *21 (N.D. Ill. Sept. 11,

10

2003).

The securities fraud provision in Delaware securities law is virtually identical to Illinois', making it unlawful to (1) "employ any device, scheme or artifice to defraud"; (2) "to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"; and (3) "to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser or seller thereof." 6 Del. C. §7303 (2006). Compare 815 ILCS 5/12(G) (2005) (making it a violation (1) "to engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof"; (2) "[t]o obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"; and (3) "to employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly"). Read together with 6 Del. C. §7323, §7303 has been held to create a cause of action for misrepresentation. Singer v. Magnavox Co., 367 A.2d 1349, 1361 (Del. Ch. 1976). Thus, not only does the

Plaintiff have recourse under Delaware law, but the Delaware Securities Law provisions are essentially identical to the Illinois provisions Plaintiff is using. Under <u>Ashenden</u>, therefore, enforcing the choice of law clause would not contravene Illinois public policy. Because no other significant public policy considerations have been raised, the Court concludes that Plaintiff's public policy arguments are insufficient to withstand the Motion to Dismiss. For the reasons discussed, the Court concludes that the contractual choice of law provisions should be enforced in this case because such enforcement would violate neither the terms of the clause nor public policy.

### III. Conclusion

Because the Court concludes that Plaintiff's Illinois law claim is barred by the choice of law clause in the Merger Agreement, it is unnecessary to discuss Defendants' arguments that Plaintiff's claim would also be barred under 10 Del.C. §8121, the contractual limitations period provision and the Agreement's integration clause. Because Plaintiff explicitly disclaimed any intention of seeking leave to amend his complaint to state a claim under Delaware law, (D.I. 33 at 23), the Court will grant Defendants' motion to dismiss with prejudice.

An appropriate order will be entered.